## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

CHARLES BRAINARD,

                    *Plaintiff*,

v.

KENYON & KENYON LLP, the KENYON & KENYON PENSION PLAN, and GEORGE BADENOCH, MICHAEL LOUGHNANE, and ROBERT TOBIN (all individuals),

                    *Defendants.*

Case No. 07 CIV 8535 (LBS)

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO (1) DISMISS COUNTS I & II OF THE COMPLAINT OR, IN THE ALTERNATIVE, (2) STAY COUNT I AND REFER COUNT II TO ARBITRATION

Kay Kyungsun Yu (KY 7807)
PEPPER HAMILTON LLP
The New York Times Building
37th Floor
620 Eighth Avenue
New York, NY 10018-1405
Tel.:  215.981.4188
Fax:  215.689.4515
E-mail:  yukay@pepperlaw.com

*Counsel for Defendants, Kenyon & Kenyon LLP; the Kenyon & Kenyon Pension Plan; George Badenoch; Michael Loughnane; and Robert Tobin*

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     ARGUMENT — MOTION TO DISMISS ............................................................. 3

        A.      Brainard Lacks Statutory Standing To Bring an ERISA Cause of
                Action........................................................................................................ 3

        B.      Brainard Seeks Relief That is Not Available Through an ERISA
                Action........................................................................................................ 8

        C.      This Court Should Decline to Exercise Pendent Jurisdiction Over
                the State Law Contract Claim if the ERISA Claim is Dismissed ............. 12

III.    ARGUMENT — MOTION TO STAY AND REFER TO ARBITRATION ....... 13

        A.      The Breach of Contract Claim is Subject to Mandatory and
                Binding Arbitration................................................................................... 13

        B.      This Court Should Enforce the Broad Arbitration Provision
                Contained in the Partnership Agreement .................................................. 16

        C.      Even if it is Properly Before This Court, the ERISA Claim Should
                Be Stayed Pending the Result of the Related Arbitration
                Proceeding................................................................................................ 17

IV.     CONCLUSION ................................................................................................. 20

Defendants, Kenyon & Kenyon LLP ("Kenyon & Kenyon" or "the Firm"), the Kenyon & Kenyon Pension Plan ("the Plan"), and George Badenoch, Michael Loughnane, and Robert Tobin (collectively, "the Fiduciaries"), move pursuant to Federal Rules 12(b)(1) and 12(b)(6) to dismiss Counts I and II of the Complaint as asserted by plaintiff, Charles Brainard ("Brainard").  In the alternative, Kenyon & Kenyon requests, pursuant to the Federal Arbitration Act, that this Court stay all claims of this action in favor of arbitration because Brainard and the Firm are parties to a mandatory arbitration agreement that is applicable to the key issues raised in this case.  The Plan and the Fiduciaries join in that request.

Count I is based on the ERISA statute and should be dismissed for lack of standing and for failure to state a claim upon which relief may be granted under Fed. R. Civ. P. 12(b)(6).  Count II is a contract claim that should be dismissed for lack of pendent jurisdiction.  In the alternative, all claims should be stayed pending compulsory arbitration of the contract claim (Count II), which when decided (either way) will entirely resolve the contract dispute between the parties and moot any claim under ERISA.

The grounds for the two motions are set forth more fully below.

## I.    INTRODUCTION

This case is not about Brainard's right to collect benefits under the Plan, nor has the Plan asked Brainard to "forfeit" any portion of the more than $1 million final lump sum distribution the Plan made to him in June 2005.  Brainard, a long-serving member of Kenyon & Kenyon, has received every dollar of benefits owed to him under the Plan, and

even he would acknowledge that he is not owed any further monies from the Plan itself. Rather, his dispute is a contract dispute with his former firm.

As a consequence, this is *not* an ERISA case. Instead, this case is a run-of-the-mill contract dispute between a law firm and one of its former partners about monies alleged to be owed—which Brainard acknowledges through his assertion in Count II of a state law breach of contract claims against the Firm. *See Complaint* (attached as Exhibit E), ¶¶2, 28. It is apparent, however, that Brainard seeks to avoid the mandatory arbitration provision in the Firm Partnership Agreement that governs such disputes between the Firm and its partners and former partners, which contract provision Brainard himself repeatedly endorsed and agreed to while a member of the Firm. Instead, Brainard is attempting to convert a routine dispute into a "federal case" (both literally and figuratively).

The existence of a contract, however, cannot be wished away, nor can a federal claim be crafted out of thin air. The ERISA statute includes specific statutory standing requirements that Brainard has not met and cannot meet. In addition, the relief Brainard seeks—that the Plan reimburse him for the more than $142,000 that *the Firm* has withheld from his post-retirement share of firm distributions; *see Complaint*, p. 9 (¶1)—is not available under the ERISA statute, which the U.S. Supreme Court has confirmed permits only equitable relief.

Count I should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6), thus removing the Plan and the Fiduciaries from this action (Count II is alleged only against the Firm). In addition, the pendent state law breach of contract claim (Count II) should be dismissed outright because dismissal of Count I removes the basis for the exercise of

subject matter jurisdiction by this Court.  Alternatively, Count II should be referred to

arbitration (and Count I then stayed) because the contract claim involving the Firm

Partnership Agreement is subject to mandatory arbitration.

## II.    ARGUMENT — MOTION TO DISMISS

### A.    Brainard Lacks Statutory Standing To Bring an ERISA Cause of Action

The U.S. Supreme Court has repeatedly described the ERISA statute (29 U.S.C.

§1001 *et seq.*) as a "comprehensive and reticulated statute [that is] the product of a

decade of congressional study of the Nation's private employee benefit system." *Great-*

*West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (quoting *Mertens v.*

*Hewitt Associates*, 508 U.S. 248, 251 (1993)).  The Court has been "especially reluctant

to tamper with the enforcement scheme embodied in the statute by extending remedies

not specifically authorized by its text," noting that "ERISA's carefully crafted and

detailed enforcement scheme provides strong evidence that Congress did *not* intend to

authorize other remedies that it simply forgot to incorporate expressly."  *Great-West*, 534

U.S. at 209 (quotation marks omitted, emphasis in original).

By its terms, ERISA only authorizes civil actions brought by "participants,

beneficiaries, or fiduciaries of an employee benefit plan."  *Coan v. Kaufman*, 457 F.3d

250, 255 (2d Cir. 2006); *see also* 29 U.S.C. §1132(a); *cf. Connecticut v. Physicians*

*Health Servs. of Conn., Inc.*, 287 F.3d 110, 121 (2d Cir. 2002) ("[N]on-enumerated

parties lack statutory standing to bring suit under [ERISA] even if they have a direct

stake in the outcome of the litigation.").  The ERISA statute defines a "participant" as

"any employee or former employee of an employer . . . who is or may become eligible to

receive a benefit of any type from an employee benefit plan."  *Coan*, 457 F.3d at 455

(quoting 29 U.S.C. §1002(7)).  The Supreme Court has clarified, however, that as applied to "former employees" the term "participant" means only those individuals who "have a reasonable expectation of returning to covered employment or who have a colorable claim to vested benefits."[1] *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989).  "A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.'"  *Id.* at 118 (quoting *Saladino v. I.L.G.W.U. National Retirement Fund,* 754 F.2d 473, 476 (2d Cir. 1985).

Brainard, a former partner of the Firm, alleges that he meets the statutory standing requirement because he supposedly continues to be a "participant" of the Plan.  *See Complaint*, ¶4; *see also id.*, ¶2.  Brainard, however, does not assert that he expects to return to active employment at the Firm.  His claimed status as a "participant" therefore turns on whether he has alleged "a colorable claim to vested benefits."  *See Firestone*, 489 U.S. at 117; *Saladino,* 754 F.2d at 476.  This is where his action fails.

In a defined benefit plan, as the name implies, the "benefits" to which vested plan participants[2] are entitled are "defined" in the plan documents.  Specifically, participants "have a right to a certain defined level of benefits, known as 'accrued benefits,' [which] term, for purposes of a defined benefit plan, is defined as '*the individual's accrued benefit determined under the plan* [and ordinarily is] expressed in the form of an annual

---

[1]  For a former employee to have a "colorable claim" that he or she may become eligible for vested benefits, he or she must be able to show that "(1) he or she will prevail in a suit for benefits, or that (2) eligibility requirements will be fulfilled in the future."  *Firestone*, 489 U.S. at 117-118 ("This view attributes conventional meanings to the statutory language since all employees in covered employment and former employees with a colorable claim to vested benefits 'may become eligible.'") (quotation marks omitted).

benefit commencing at normal retirement age.'"[3]  *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 440 (1999) (quoting 29 U.S.C. §1002(23)(A) (statutory definition of "accrued benefit")) (emphasis added).  Defined benefit plan participants are not entitled to recover any monies from their plan that are *in excess of* their accrued benefits, even if the plan may have a monetary surplus resulting in part from the investment growth of a participant's contribution.  *See id.* at 440-441.

Brainard admits that the benefits that accrued to him during his participation in the Plan were properly calculated using a prescribed "benefits formula," which took into account factors such as his length of service and his past compensation  *See Complaint*, ¶9; *see also* Exhibit A, pp. DBP51-53(§5.1), DBP117-118 (§3.01), DBP192-193 (§3.01). As of the date Brainard withdrew from the Plan, those calculated accrued benefits amounted to $1,019,817.66.  *See Complaint*, ¶20.  On June 30, 2005, however, Brainard withdrew *the full amount* of his accrued benefits under the Plan.  *Id.*  As a result, he is not entitled to claim any further "benefits" under the Plan, *see Hughes Aircraft*, 525 U.S. at 440-441, and thus no longer qualifies as a "participant" under ERISA.  *See, e.g., Firestone*, 489 U.S. at 117-18; *Saladino*, 754 F.2d at 476.

When this Court addressed this same issue before, it reached the same conclusion, agreeing that former employees who have received lump sum distributions equal to the full amount of their accrued benefits owed to them under a defined benefit plan no longer qualify as "participants" under ERISA and thus lack statutory standing to pursue a claim.

---

[2]  Brainard's entitlement to his accrued benefits was fully vested.

[3]  Participants are also entitled to a "floor" of benefits.  *See Hughes Aircraft*, 525 U.S. at 440 (citing applicable statutory sections).  That "floor," however, was exceeded here.

*In re J.P. Morgan Chase Cash Balance Litigation*, 242 F.R.D. 265, 271 (S.D.N.Y. 2007) ("former employees that have received their lump sum payment do not have standing to sue under ERISA").  Decisions from other Circuits are in accord.  *See, e.g., Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986) (plaintiffs were not "participants" because they were "former employees whose vested benefits under the plan have already been distributed in a lump sum") (*per curiam*) (cited with approval by the Supreme Court in *Firestone*, 489 U.S. at 117), *abrogated in part on other grounds*, *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995); *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 474 (10th Cir. 1990) ("participant" under ERISA "excludes . . . former employees who have received a lump-sum payment of all their vested benefits because these erstwhile participants have already received the full extent of their benefits and are no longer eligible to receive future payments") (quotation marks omitted); *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1535-36 (10th Cir. 1993) (same) (collecting and citing cases); *see also Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 952 (6th Cir. 1990) (plaintiffs lacked standing where they "accepted the payment of everything due them under the [p]lan at the time their participation in it terminated, albeit in the form of an annuity and not in a lump sum") (quote omitted); *Saladino*, 754 F.2d at 476 (foretelling the above holdings by concluding that "[a] former employee who [lacks] … a colorable claim to vested benefits … does not fit within the term "may become eligible.""")

As it is beyond dispute that Brainard has received all of his benefits under the Plan, he attempts to salvage his ERISA claim by characterizing the actions of the *Firm* in reducing his post-retirement share of Firm profits as an attempt *by the Plan* to secure the

"return" of part of his full lump sum distribution. *See Complaint*, ¶¶23-26. This sleight-of-hand fails, however, for it is undeniable that *the Plan* has not (nor is it alleged to have) taken any actions to recover any benefits distributed to Brainard. From the Plan's point of view, Brainard accrued $1,019,817.66 in benefits, *see id.*, ¶20, and he has received and is entitled to keep every penny of the Plan's lump sum payment to him. Moreover, as regards the dispute between Brainard and the Firm as to whether Brainard is obligated to repay *the Firm* monies he owes pursuant to the partners' September 1990 Agreement (*see id.*, ¶10) or to any other subsequent Firm expense-sharing agreement, the Plan is a disinterested party because the Firm remains legally and contractually obligated to fund the Plan *regardless* of how the Firm's contractual dispute with Brainard is resolved. *See* 29 U.S.C. §1082(c)(11)(A); *see also* Exhibit A (collection of operative Plan documents)[4], pp. DBP50 (§4.1), DBP143-144 (§§7.01, 7.04), DBP207-208 (§§7.01, 7.04).

Brainard therefore lacks "a colorable claim to vested benefits" under the Plan, *even if* he may have a colorable claim to recover the portion of firm profits that the Firm has withheld from him as part of those two parties' ongoing contractual dispute (although he cannot support that claim either). As such, he does not qualify as a Plan "participant" and he lacks statutory standing to bring an ERISA claim. *Accord Firestone*, 489 U.S. at

---

[4] Because Brainard cites to the Plan terms in his pleadings, *see Complaint*, ¶¶6, 8-9, 11, 23, this Court may refer to the Plan documents in effect during Brainard's participation without having to convert this motion to dismiss to a motion for summary judgment. *See, e.g., Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated."); *Chambers v. Time Warner, Inc.,* 282 F.3d 147, 153 (2d Cir. 2002).

117-118; *Saladino,* 754 F.2d at 476; *In re J.P. Morgan*, 242 F.R.D. at 271.  This Court

should therefore dismiss Count I under Rule 12(b)(6) for failing to state a proper claim.

### B.    Brainard Seeks Relief That is Not Available Through an ERISA Action

Even if Brainard were to be deemed a plan "participant" for purposes of satisfying

the statutory standing requirement, Count I still must be dismissed because the relief that

Brainard seeks is not available under the ERISA statute.  Specifically, Brainard seeks to

have the Plan pay him an amount of money equal to the amount of money that the Firm

has withheld from him, including his share of Firm profits.  *See Complaint*, p. 9 (¶1).

However, because the relief Brainard seeks is legal in nature, it is not available through

an ERISA action and the claim must therefore be dismissed.

Equitable relief is the only form of relief available to a "participant" who brings a

claim under Section 502(a)(3) of the ERISA statute (29 U.S.C. §1132(a)(3)).  As the

Supreme Court has explained, however, the phrase "equitable relief" as used in the

statute "must mean *something* less than *all* relief," otherwise the term "equitable" would

be rendered superfluous.  *Mertens*, 508 U.S. at 257-258 n.8 (emphasis in original).  Thus,

the Court has interpreted "equitable relief" as used in Section 502(a)(3) to refer only to

"those categories of relief that were *typically* available in equity (such as injunction,

mandamus, and restitution, but not compensatory damages)."  *Id.* at 256 (emphasis in

original); *see also Great-West*, 534 U.S. at 209-210.

"Money damages are, of course, the classic form of *legal* relief."  *Mertens*, 508

U.S. at 255 (emphasis in original).  As the Court noted, "[a]most invariably . . . suits

seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay

a sum of money to the plaintiff are suits for 'money damages,' as that phrase has

traditionally been applied, since they seek no more than compensation for loss resulting from the defendant's breach of legal duty." *Id.* (quoting *Bowen v. Massachusetts*, 487 U.S. 879, 918-919 (1988) (Scalia, J, dissenting)) (ellipses in original). Thus, plaintiffs who seek to recover money damages through an ERISA claim constantly "struggle to characterize the relief sought as 'equitable' under the standard set by *Mertens*," often to no avail. *Great-West*, 534 U.S. at 210 ("We are not persuaded."). Such is the case here.

Brainard is asking this Court to order the Plan to "repay" him some $142,000 that the Firm (which, of course, is a *separate* legal entity) supposedly withheld from his compensation and post-retirement share of Firm profits and "turned over" to the Plan as part of its Plan contributions.[5]  *See Complaint*, p. 9 (¶1).  By his choice of language—*i.e.*, "repay," "return," "recover"; *see id.*, ¶¶2, 23, p.9 (¶1)—Brainard evidently seeks to cast his claim as one for equitable restitution.  However, that is not the case.

As the Supreme Court observed in *Great-West*, "not all relief falling under the rubric of restitution is available in equity," explaining that "[i]n the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity." 534 U.S. at 212-213.  The Court then sought to untangle those two legal strands.  *See id.* The key is traceability.  Historically, the Court noted, if an asset that has been identified as belonging in good conscience to the plaintiff "could clearly be traced to particular funds or property in the defendant's possession," then the plaintiff "could seek restitution *in equity,* ordinarily in the form of a constructive trust or an equitable lien," and "[a] court

---

[5]  Actually, no such monies were "turned over" to the Plan.  Each year, the Firm is required to make a minimum contribution to the Plan, which amount is prescribed by statute (*see* 29 U.S.C. §1082) and must be made irrespective of whether the Firm collects any money from Brainard or any of the other contracting partners.

of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to [the] plaintiff who was, in the eyes of equity, the true owner." *Id.* at 213 (emphasis in original; multiple cites omitted). However, "where the property sought to be recovered or its proceeds have been dissipated so that no product remains," the Court explained that "the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant." *Id.* at 214 (quoting and modifying *Restatement of Restitution,* §215, Comment *a,* p. 867 (1936))

Thus, for a claim for restitution to sound in equity—and therefore be permitted under ERISA; *see Mertens*, 508 U.S. at 255-256—the action generally "must seek not to impose personal liability on the defendant, but to restore to the plaintiff *particular funds or property* in the defendant's possession." *Great-West*, 534 U.S. at 214 (emphasis added). In *Great-West*, where the petitioners sought to impose general liability on the respondent and to recover from the respondent's assets generally, the Court held that the relief requested was legal and not available under the ERISA statute. *See id.* ("The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable….") (emphasis in original). In contrast, in *Sereboff v. Mid Atlantic Medical Services, Inc.*, ___U.S. ___, 126 S. Ct. 1869 (2006), a case in which the petitioner sought to recover funds that had been "set aside and preserved" in a special account prior to trial, and thus could be traced directly to their source, the Court permitted an ERISA claim for restitution, explaining that the petitioner had "sought its

recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [respondent's] assets generally, as would be the case with a contract action at law." 126 S. Ct. at 1873, 1874.

Here, Brainard seeks to "recover" more than $140,000 (a number that evidently is increasing each month) from *the general assets* of the Plan, and not from any specific, identifiable account where "traceable" funds may reside. *See Complaint*, p. 9 (¶1). The reason for this is because like all defined benefit plans, the Kenyon & Kenyon Plan "consists of *a general pool of assets* rather than individual dedicated accounts." *See Hughes Aircraft*, 525 U.S. at 439 (emphasis added); *see also* 26 U.S.C. §401(a)(26)(A) (for the trust in a defined benefit plan to be "qualified," it must benefit multiple employees). The Plan is thus unlike a defined contribution plan (such as a 401(k) plan), which has at least one or more specifically identifiable account associated with each plan participant. *See Hughes Aircraft*, 525 U.S. at 439; *see also* 29 U.S.C. §§1002(34)-(35).

Because the money Brainard seeks to "recover" does not reside in a specifically identifiable account within the Plan, it cannot be subject to a constructive trust or an equitable lien. *See Great-West*, 534 U.S. at 213-214; *Sereboff*, 126 S. Ct. at 1874. Put another way, the money is not "traceable," and were Brainard to prevail in this action, any judgment against the Plan would have to be paid out of the Plan's general assets, which is not permitted under the ERISA statute. *See id.* Thus, even if this Court finds Brainard to be a proper Plan "participant," *but see* Section II.A., *supra*, Count I should still be dismissed as the relief he seeks is not properly deemed to be "equitable."

### C.    This Court Should Decline to Exercise Pendent Jurisdiction Over the State Law Contract Claim if the ERISA Claim is Dismissed

If the ERISA claim is dismissed for either of the reasons discussed above, the state law claims that Brainard seeks to assert in Count II should be dismissed as well.  As the Second Circuit has noted, "it is axiomatic that a court should decline to exercise jurisdiction over state-law claims when it dismisses the federal claims prior to trial." *Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").  Although the Supreme Court has clarified that this is not "a mandatory rule to be applied inflexibly in all cases," the Court has stressed that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."  *Carnegie-Mellon*, 484 U.S. at 350 n.7; *see also Gibbs*, 383 U.S. at 726 (listing factors to consider).

Here, at the incipient stages of litigation, all the *Gibbs* factors strongly suggest that pendent jurisdiction should not be accepted if the ERISA claim, which is the sole basis of Brainard's assertion of "federal question" jurisdiction; *see Complaint*, ¶2, is dismissed.  Consequently, this Court should decline to exercise pendent jurisdiction over the state law contract claims, which would remove any possible impediments to the parties pursuing binding arbitration, as they previously agreed (and as discussed below).

-12-

### III.    ARGUMENT — MOTION TO STAY AND REFER TO ARBITRATION

#### A.    The Breach of Contract Claim is Subject to Mandatory and Binding Arbitration

Even if Brainard has properly pleaded a federal claim under the ERISA statute, *but see* Sections II.A., B., *supra*, this matter still does not belong in federal court. Brainard's primary complaint is that the Firm is "unilaterally withholding" monies he contends are owed to him as a result of his past service to the Firm, most significantly upwards of $300,000 from his partner "memo account." This account, the calculation of which is set forth in detail in the Firm Partnership Agreement (attached as Exhibit B), can be thought of as an accumulation of money "left in" the Firm by a partner upon his or her leaving the Firm. The Firm Agreement specifies when and how that money is to be paid to the departed partner out of the Firm's net income. *See Complaint*, ¶¶24, 27-28, p. 9 (¶¶1-2); *see also generally* Exhibit B, §§4.d, 14.d.2-14.d.4.[6]

The Firm's decision to withhold a portion of the distributions of money that otherwise would have been paid to Brainard as part of the disposition of his memo account stems from the Firm's belief that Brainard, while working at the Firm, failed to reimburse the Firm for expenses relating to the Plan that the partnership agreed would be borne most heavily by those partners (like Brainard) who participated in (and thus directly benefited from) the Plan. The Firm's basis for taking those actions are not to be debated here, and may, of course, be challenged by Brainard in an appropriate forum. This Court, however, is not the appropriate forum to hear such a dispute.

---

[6]  Although money was also temporarily withheld from Brainard's "of counsel" compensation, he will have received all of the "of counsel" compensation owed to him by
(continued)

While he was a partner at the Firm, Brainard expressly agreed that any dispute over the Firm's withholding of monies from his memo account payments would be settled by binding arbitration. This agreement is unambiguously set forth in the Firm's "Continuing Firm Partnership Agreement" (Exhibit B), which governed Brainard's relationship with the Firm from October 1996 until his withdrawal from the Firm on September 30, 2003.[7] *See* Exhibit B, pp. 1, 7-8, 21-22, 26, 28; Exhibit D (Brainard's "Withdrawal Agreement"), p. 1 (referencing the Firm Partnership Agreement).

Specifically, the Firm Partnership Agreement, the terms of which established and governed the partner memo accounts, provided that when a partner (such as Brainard) withdrew from the Firm after age 65, he or she would "be paid his or her Partner's Memo Account balance in five equal annual installments." Exhibit B, §14.d.3. However, in the next substantive subsection that discusses payments to withdrawing (or retiring; *see* Exhibit B, §14.c.1.) partners, the Firm Agreement clarifies that "[a]ny payment due a withdrawing partner … *shall be reduced* by the amount of any other financial obligation owing by the withdrawing partner to the partnership." *Id.*, §14.d.5 (emphasis added). Thus, the Firm's actions in reducing its payments to Brainard so as to satisfy the financial obligation of Brainard to the partnership with regard to past expenses associated with the administration of the Plan constitute acts taken pursuant to the authority granted the Firm in Section 14.d.5 of the Firm Partnership Agreement.

---

mid-January 2008. Instead, the full amount of Brainard's debt to the Firm is being withheld from his memo account payments, as authorized by the Firm Agreement.

[7] Prior to October 1, 1996, the Firm did not have individual "memo accounts." *See generally* Exhibit C (discussing establishment of memo accounts). Rather, the creation of such accounts were authorized by the terms Continuing Firm Partnership Agreement, which also governed their administration. *See generally, e.g.,* Exhibit B, pp. 7-13.

The Firm Partnership Agreement further provides that any dispute that in any way concerns or is connected or related to a party's performance under the Agreement (*e.g.*, the paying of memo account balances or the withholding of monies from such payments to satisfy other debts) must be settled by mandatory and binding arbitration:

### 17.    Arbitration

The parties agree that this Agreement shall be construed, and all questions relating thereto shall be determined, in accordance with the laws of the State of New York.  Except as provided otherwise herein, *any and all disputes arising from or under or in connection with or relating to or for the breach of this Agreement or its performance, shall be settled by confidential arbitration* before an arbitration board of three members in accordance with the Rules for Arbitration of Dispute Between Lawyers of the Committee on Arbitration and Alternative Dispute Resolution of the Association of the Bar of the City of New York then in effect.  Judgment upon the award rendered may be entered in any court having jurisdiction thereof *and the award shall be final, conclusive and binding upon all the parties to such arbitration* without any right of appear from the decision of the arbitration board or any right to appellate or other review.

Exhibit B, §17 (emphasis added).

As a result, Brainard's allegation in Count II that the Firm has breached its contractual obligation to pay him his memo account balance by withholding from such payments monies for expenses that the Firm contends Brainard is liable for as a result of his participation in the Plan is subject to arbitration.  *See Complaint*, ¶¶24, 28 (Mr. Brainard alleges that the Firm, "[b]y engaging in the conduct described in paragraph 24"—which conduct includes the Firm withholding more than $190,000 from Mr. Brainard's memo account in payment of Brainard's debt—has "breached its Withdrawal Agreement[8] with Brainard") (note added); *see also* Exhibit B, §17 ("any … dispute[]

---

[8]  The fact that Brainard terms this a breach of the "Withdrawal Agreement" rather than of the Firm Partnership Agreement, *see Complaint*, ¶28, is immaterial.  The Withdrawal Agreement merely states that the Firm is to pay Brainard his "memo account" and other
(continued)

arising from or under or in connection with or relating to or for the breach of this

Agreement or its performance, shall be settled by confidential arbitration").

### B. This Court Should Enforce the Broad Arbitration Provision Contained in the Partnership Agreement

The Federal Arbitration Act (9 U.S.C. §1 *et seq.*) provides that a written

agreement to arbitrate a dispute "shall be valid, irrevocable, and enforceable." 9 U.S.C.

§2. Whether an agreement to arbitrate governs a particular dispute is a matter of contract

interpretation and is invariably for the court to decide. *See Collins & Aikman Products

Co. v. Building Sys., Inc.,* 58 F.3d 16, 19-20 (2d Cir. 1995); *see also, e.g., In re American

Express Merchants Litigation*, 2006 WL 662341, *3 (S.D.N.Y. 2006).

Federal policy strongly favors arbitration, and any doubts about the scope of

arbitrable issues should be resolved in favor or arbitration. *Collins,* 58 F.3d at 19 (citing

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983)).

"Another way of expressing this is to say that arbitration must not be denied unless a

court is positive that the clause it is examining does not cover the asserted dispute."

*Spear, Leeds & Kellogg v. Central Life Assur. Co., et al.,* 85 F.3d 21, 28 (2d Cir. 1996)

(citing *AT & T Technologies, Inc. v. Communications Workers of America, et al.,* 475

U.S. 643, 650 (1986)). As a result, a court must compel arbitration "unless it may be said

with positive assurance that the arbitration clause is not susceptible of an interpretation

that covers the asserted dispute." *Collins*, 58 F.3d at 19.

---

monies "in the manner and subject to the limitations and possible modifications contained *in the Continuing Firm Agreement*." *See* Exhibit D, ¶2(a) (emphasis added). Brainard is ultimately alleging that the Firm has breached its obligations to pay him under the Partnership Agreement, thus implicating the arbitration clause.

A court's first task when evaluating the issue of arbitrability is to determine "whether 'the arbitration agreement [is] broad or narrow.'" *Id.* at 20 (quoting *Prudential Lines, Inc. v. Exxon Corp.,* 704 F.2d 59, 63 (2d Cir. 1983)). "If broad, then there is a presumption that the claims are arbitrable." *Collins*, 58 F.3d at 20. The Second Circuit has described a provision that submits to arbitration "any claim or controversy arising out of or relating to" an agreement as being "the paradigm of a broad clause." *Id.*; *see also David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 251 (2d Cir. 1991).

Here, the arbitration provision is exceptionally broad, requiring that "any and all disputes arising from or under or in connection with or relating to or for the breach of [the Firm Partnership Agreement] or its performance, shall be settled by confidential arbitration." *See* Ex. A, §17; *cf. Collins*, 58 F.3d at 20 (setting forth "the paradigm of a broad clause"). Thus, any disputes relating to post-retirement payments made (or not made) by the Firm to Brainard are "presumptive arbitrable" and the parties must therefore proceed with arbitration in accordance with the terms of the Firm Partnership Agreement. *Accord Collins*, 58 F.3d at 20; 9 U.S.C. §4.

## C.  Even if it is Properly Before This Court, the ERISA Claim Should Be Stayed Pending the Result of the Related Arbitration Proceeding

Because the parties have agreed to binding arbitration for any breach of contract claim, further proceedings as to Count II must be stayed. *See, e.g.*, *WorldCrisa Corp. v. Armstrong,* 129 F.3d 71, 74 (2d Cir. 1997) ("[A] district court must stay proceedings if satisfied that the parties have agreed in writing to arbitrate an issue or issues underlying the district court proceeding. The [Federal Arbitration] Act leaves no place for the exercise of discretion by a district court ….) (cites and quote omitted); *see also* 9 U.S.C. §3. Moreover, even though the Federal Arbitration Act does not *mandate* that

-17-

proceedings with regard to related claims—such as the ERISA claim (assuming it survives)—also be stayed pending arbitration, the Second Circuit has emphasized that related claims should *also* be stayed, which would then bring this litigation to a halt.

Specifically, the Second Circuit has stated that when a case presents with both arbitrable and nonarbitrable claims, "[t]he decision to stay the balance of the proceedings pending arbitration is a matter largely within the district court's discretion to control its docket." *Genesco, Inc. v. T. Kakiuchi & Co., Ltd.*, 815 F.2d 840, 850 (2d Cir. 1987) (citing *Moses H. Cone Memorial Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 20 n.23 (1983)). The Court of Appeals has clearly advised, however, that "[b]road stay orders *are particularly appropriate* if the arbitrable claims predominate the lawsuit and the nonarbitrable claims are of questionable merit." *Id.* (emphasis added). When ruling on a request to stay nonarbitrable claims, lower courts tend to consider such factors as whether the arbitration "might at least partially determine issues forming the basis" of the nonarbitrable claims; whether the process "may provide the court with insight into the issues of fact and law involved" in the nonarbitrable claims; and whether "[a] stay of the [nonarbitrable] claims … would promote judicial economy, avoidance of confusion and possible inconsistent results, and would not work undue hardship or prejudice against [the party asserting the claims]." *See Meadows Indem. Co. Ltd. v. Baccala & Shoop Ins. Services, Inc.*, 760 F. Supp. 1036, 1045 (E.D.N.Y. 1991) (citing cases); *see also, e.g., General Media, Inc. v. Shooker*, 1998 WL 401530, *11 (S.D.N.Y. 1998) ("Generally, a stay of remaining claims has been found appropriate where such action would promote judicial economy, avoidance of confusion and possible inconsistent results and would not work undue hardship or prejudice against the parties.") (quotes omitted).

Here, the ERISA claim should be stayed.  The question to be resolved through arbitration will be whether Kenyon & Kenyon has been justified in withholding certain post-retirement payments otherwise owed to Brainard in order to fulfill his financial obligation to the partnership for his share of the Firm's expenses relating to the Plan.  *See* Exhibit B, §§14.d.5, 17.  If that question is resolved in the Firm's favor, then Brainard's ERISA claims against the Plan and the Fiduciaries would be moot because the whole basis for the alleged ERISA violation is *those same acts* by the Firm.  *See Complaint*, ¶¶25-26 (relying on "the conduct described in paragraph 24").  Conversely, if Brainard succeeds in arbitration and is awarded the monies he seeks, then the relief he seeks under ERISA—namely, the return of the monies the Firm has withheld; *see id.*, p. 9 (¶1)— would have been satisfied, similarly rendering the ERISA claim moot.

Absent a stay in the ERISA proceedings, the parties would be forced to conduct two simultaneous and highly related proceedings where common legal and factual issues would predominate.  *Compare Complaint*, ¶¶21-26 *with id.*, ¶¶27-28 (Count II incorporates and relies on the factual allegations that support Count I, especially Paragraph 24).  Further, multiple proceedings would risk inconsistent results and would waste party and judicial resources, especially as Brainard cannot claim that pursuing arbitration would result in an undue hardship or prejudice against him.  Thus, in addition to staying or dismissing Count II pending arbitration, this Court should also stay or dismiss Count I, thus suspending this matter while arbitration is pursued.

## IV.    CONCLUSION

For the reasons set forth above, Brainard's ERISA claim is critically deficient and cannot form the basis for any successful action against any of the defendants.  This Court should therefore dismiss Count I for failing to state a claim and then decline to exercise pendent jurisdiction of the related state law claim, allowing that matter instead to proceed to arbitration.  In the alternative, this Court should stay all proceeding in this case while the parties proceed with mandatory arbitration as required under the terms of the Firm Partnership Agreement that has governed the parties' relationship for years.

Respectfully submitted,

Dated:  December 10, 2007

 /s/ Kay Kyungsun Yu
Kay Kyungsun Yu (KY 7807)
PEPPER HAMILTON LLP
The New York Times Building
37th Floor
620 Eighth Avenue
New York, NY 10018-1405
Tel.:  215.981.4188
Fax:  215.689.4515
E-mail:  yukay@pepperlaw.com

*Counsel for Defendants, Kenyon & Kenyon LLP; the Kenyon & Kenyon Pension Plan; George Badenoch; Michael Loughnane; and Robert Tobin*

**CERTIFICATE OF SERVICE**

I, Kay Kyungsun Yu, hereby certify that on December 10, 2007, the

foregoing Memorandum of Law in Support of Defendants' Motion to (1) Dismiss

Counts I & II of the Complaint or, in the alternative, (2) Stay Count I and Refer Count II

to Arbitration was filed electronically and is available for viewing and downloading from

the ECF system.  In addition, the foregoing was served via First-Class Mail upon the

following:

> Debra L. Raskin
> James Wasserman
> Vladeck, Waldman, Elias & Engelhard, P.C.
> 1501 Broadway, Suite 800
> New York, NY  10036


　　　　　　　　　　　　　 /s/ Kay Kyungsun Yu
　　　　　　　　　　　　　Kay Kyungsun Yu