# KENYON & KENYON PENSION PLAN

TABLE OF CONTENTS

ARTICLE I
DEFINITIONS

ARTICLE II
ADMINISTRATION

| 2.1 | POWERS AND RESPONSIBILITIES OF THE EMPLOYER | 14 |
| 2.2 | DESIGNATION OF ADMINISTRATIVE AUTHORITY | 15 |
| 2.3 | POWERS AND DUTIES OF THE ADMINISTRATOR | 15 |
| 2.4 | RECORDS AND REPORTS | 16 |
| 2.5 | APPOINTMENT OF ADVISERS | 17 |
| 2.6 | PAYMENT OF EXPENSES | 17 |
| 2.7 | CLAIMS PROCEDURE | 17 |
| 2.8 | CLAIMS REVIEW PROCEDURE | 17 |

ARTICLE III
ELIGIBILITY

| 3.1 | CONDITIONS OF ELIGIBILITY | 18 |
| 3.2 | EFFECTIVE DATE OF PARTICIPATION | 18 |
| 3.3 | DETERMINATION OF ELIGIBILITY | 19 |
| 3.4 | TERMINATION OF ELIGIBILITY | 19 |
| 3.5 | REHIRED EMPLOYEES AND BREAKS IN SERVICE | 19 |
| 3.6 | ELECTION NOT TO PARTICIPATE | 20 |
| 3.7 | OWNER-EMPLOYEE LIMITATION | 20 |

ARTICLE IV
CONTRIBUTION AND VALUATION

| 4.1 | PAYMENT OF CONTRIBUTIONS | 20 |
| 4.2 | ACTUARIAL METHODS | 20 |
| 4.3 | QUALIFIED MILITARY SERVICE | 21 |

ARTICLE V
BENEFITS

| 5.1 | RETIREMENT BENEFITS | 21 |
| 5.2 | MINIMUM BENEFIT REQUIREMENT FOR TOP HEAVY PLAN | 23 |

5.3    PAYMENT OF RETIREMENT BENEFITS .............................................24

5.4    DISABILITY RETIREMENT BENEFITS .............................................24

5.5    DEATH BENEFITS.................................................................................24

5.6    TERMINATION OF EMPLOYMENT BEFORE RETIREMENT ...............27

5.7    DISTRIBUTION OF BENEFITS ............................................................28

5.8    DISTRIBUTION OF BENEFITS UPON DEATH ..................................34

5.9    TIME OF SEGREGATION OR DISTRIBUTION...................................36

5.10   DISTRIBUTION FOR MINOR OR INCOMPETENT BENEFICIARY ........37

5.11   LOCATION OF PARTICIPANT OR BENEFICIARY UNKNOWN.............37

5.12   EFFECT OF SOCIAL SECURITY ACT ...............................................37

5.13   QUALIFIED DOMESTIC RELATIONS ORDER DISTRIBUTION .............38

5.14   LIMITATION OF BENEFITS ON TERMINATION ...............................38

## ARTICLE VI
## CODE SECTION 415 LIMITATIONS

6.1    ANNUAL BENEFIT.................................................................................39

6.2    MAXIMUM ANNUAL BENEFIT ............................................................40

6.3    ADJUSTMENTS TO ANNUAL BENEFIT AND LIMITATIONS...............41

6.4    ANNUAL BENEFIT NOT IN EXCESS OF $10,000 ...............................43

6.5    PARTICIPATION OR SERVICE REDUCTIONS .....................................43

6.6    MULTIPLE PLAN REDUCTION ............................................................43

6.7    ELIMINATION OF MULTIPLE PLAN REDUCTION ...............................46

## ARTICLE VII
## RESERVED

## ARTICLE VIII
## PLAN AMENDMENT

8.1    AMENDMENT ........................................................................................46

## ARTICLE IX
## PLAN TERMINATION

9.1    TERMINATION .....................................................................................47

9.2    LIMITATION OF BENEFITS ON PLAN TERMINATION.........................50

DBP 000029

ARTICLE X
MERGER, CONSOLIDATION OR TRANSFER OF ASSETS

10.1    REQUIREMENTS ......................................................................................50

ARTICLE XI
TOP HEAVY

11.1    TOP HEAVY PLAN REQUIREMENTS ....................................................51
11.2    DETERMINATION OF TOP HEAVY STATUS .......................................51

ARTICLE XII
MISCELLANEOUS

12.1    PARTICIPANT'S RIGHTS .......................................................................54
12.2    ALIENATION ...........................................................................................54
12.3    CONSTRUCTION OF PLAN ...................................................................56
12.4    GENDER AND NUMBER .......................................................................56
12.5    LEGAL ACTION ......................................................................................56
12.6    PROHIBITION AGAINST DIVERSION OF FUNDS .............................56
12.7    EMPLOYER'S PROTECTIVE CLAUSE ..................................................56
12.8    INSURER'S PROTECTIVE CLAUSE ......................................................57
12.9    RECEIPT AND RELEASE FOR PAYMENTS .........................................57
12.10   ACTION BY THE EMPLOYER ...............................................................57
12.11   NAMED FIDUCIARIES AND ALLOCATION OF RESPONSIBILITY .....57
12.12   HEADINGS ...............................................................................................58
12.13   APPROVAL BY INTERNAL REVENUE SERVICE ................................58
12.14   UNIFORMITY ..........................................................................................58

DBP 000030

KENYON & KENYON PENSION PLAN

WITNESSETH:

WHEREAS, the Employer heretofore established a Pension Plan and Trust effective October 1, 1989, (hereinafter called the "Effective Date") known as Kenyon & Kenyon Pension Plan (herein referred to as the "Plan") in recognition of the contribution made to its successful operation by its employees and for the exclusive benefit of its eligible employees; and

WHEREAS, under the terms of the Plan, the Employer has the ability to amend the Plan;

NOW, THEREFORE, effective October 1, 2002, except as otherwise provided, the Employer in accordance with the provisions of the Plan pertaining to amendments thereof, hereby amends the Plan in its entirety and restates the Plan to provide as follows:

ARTICLE I
DEFINITIONS

1.1    "Accrued Benefit" means the retirement benefit a Participant is entitled to receive pursuant to the retirement benefit formula set forth in Section 5.1. In the event a Participant terminates employment prior to Normal Retirement Date, the Participant's Accrued Benefit shall be equal to the amount determined under the retirement benefit formula computed as of the Participant's date of termination of employment.

For Plan Years beginning before Code Section 411 is applicable hereto, a Participant's Accrued Benefit shall be the greater of that provided by the Plan, or 1/2 of the benefit which would have accrued had the provisions of this Section been in effect. In the event the Accrued Benefit as of the effective date of Code Section 411 is less than that provided by this Section, such difference shall be accrued pursuant to this Section.

Notwithstanding anything herein to the contrary, a Participant's Accrued Benefit attributable to the retirement benefit formula at the close of any Plan Year coinciding with or next following the Participant's attainment of Normal Retirement Age shall be equal to the monthly retirement benefit formula determined pursuant to Section 5.1(d) based upon service and Average Monthly Compensation determined at the close of any such Plan Year.

Notwithstanding the above, a Participant's Accrued Benefit derived from Employer contributions shall not be less than the minimum Accrued Benefit, if any, provided pursuant to Section 5.2.

Notwithstanding anything to the contrary, if this is a Plan that would otherwise fail to meet the requirements of Code Sections 410(b)(1)(B) or 401(a)(26) and the Regulations thereunder because a sufficient number or percentage of Participants for a Plan Year have not accrued a benefit, then the following rules shall apply:

1

DBP 000031

(a)    The group of Participants eligible to accrue a benefit for the Plan Year shall be expanded to include the minimum number of Participants who would not otherwise be eligible as are necessary to satisfy the applicable test specified above. The specific Participants who shall become eligible under the terms of this paragraph shall be those who are actively employed on the last day of the Plan Year and who have completed the greatest number of Hours of Service in the Plan Year.

(b)    If after application of paragraph (a) above, the applicable test is still not satisfied, then the group of Participants eligible to accrue a benefit for the Plan Year shall be further expanded to include the minimum number of Participants who are not actively employed on the last day of the Plan Year as are necessary to satisfy the applicable test. The specific Participants who shall become eligible to accrue a benefit shall be those Participants who have completed the greatest number of Hours of Service in the Plan Year before terminating employment.

(c)    In the event a Participant who is not a member of the group of Participants eligible to accrue a benefit becomes a member of such group, such Participant shall receive an accrual for such year which bears the same ratio to a full accrual as the number of Hours of Service the Participant actually completes bears to 1000. Such Participant's benefit for such partial year shall be based upon the Compensation the Participant would have earned if the Participant had completed 1000 Hours of Service.

(d)    Nothing in this Section shall permit the reduction of a Participant's Accrued Benefit. Therefore any amounts that have previously been accrued by Participants may not be reduced. Any adjustment to Accrued Benefits pursuant to this paragraph shall be considered a retroactive amendment adopted by the last day of the Plan Year.

1.2    "Act" means the Employee Retirement Income Security Act of 1974, as it may be amended from time to time.

1.3    "Actuarial Equivalent" means, effective April 1, 1998, a form of benefit differing in time, period, or manner of payment from a specific benefit provided under the Plan but having the same value when computed using Pre-Retirement Table: None; Post-Retirement Table: GAM 1983 (50% Male - 50% Female) and Pre-Retirement Interest: 8%; Post-Retirement Interest: 8%.

Notwithstanding the foregoing, effective with the later of (1) the adoption date of an amendment that changes the interest rate or the mortality table assumptions, or (2) April 1, 1998, the mortality table and the interest rate for the purposes of determining an Actuarial Equivalent amount (other than nondecreasing life annuities payable for a period not less than the life of a Participant or, in the case of a Pre-Retirement Survivor Annuity, the life of the surviving spouse) shall be the "Applicable Mortality Table" and the "Applicable Interest Rate" described below. However, if prior to such effective date, the Plan used an interest rate other than the Pension Benefit Guaranty Corporation interest rate (or an interest rate or rates based on the Pension Benefit Guaranty Corporation interest rate) in determining the present value of a Participant's Accrued Benefit, the

2

DBP 000032

mortality table and the interest rate for the purposes of determining an Actuarial Equivalent amount (other than nondecreasing life annuities payable for a period not less than the life of a Participant or, in the case of a Pre-Retirement Survivor Annuity, the life of the surviving spouse) shall be the mortality table and the interest rate specified above or the "Applicable Mortality Table" and the "Applicable Interest Rate" described below, whichever produces the greater benefit:

(a)     The "Applicable Mortality Table" means the table prescribed by the Secretary of the Treasury. Such table shall be based on the prevailing commissioner's standard table (described in Code Section 807(d)(5)(A)) used to determine reserves for group annuity contracts issued on the date as of which present value is being determined (without regard to any other subparagraph of Code Section 807(d)(5)).

(b)     The "Applicable Interest Rate" means the annual rate of interest on 30-year Treasury securities determined as of the second calendar month preceding the six month period commencing on either the April 1st or the October 1st in which the distribution is made.  However, except as provided in Regulations, if a Plan amendment (including this amendment and restatement) changes the time for determining the "Applicable Interest Rate" (including an indirect change as a result of a change in the Plan Year), any distribution for which the Annuity Starting Date occurs in the one-year period commencing at the time the Plan amendment is effective (if the amendment is effective on or after the adoption date) must use the interest rate as provided under the terms of the Plan after the effective date of the amendment, determined at either the date for determining the interest rate before the amendment or the date for determining the interest rate after the amendment, whichever results in the larger distribution. If the Plan amendment is adopted retroactively (that is, the amendment is effective prior to the adoption date), the Plan must use the interest rate determination date resulting in the larger distribution for the period beginning with the effective date and ending one year after the adoption date.

In the case of a distribution (other than nondecreasing life annuities payable for a period not less than the life of a Participant or, in the case of a Pre-Retirement Survivor Annuity, the life of the surviving spouse) that was made in a Plan Year beginning after December 31, 1994, and before the later of (1) the adoption date of an amendment that changes the interest rate or the mortality table assumptions, or (2) April 1, 1998, the calculation shall be made by using the interest rate determined under the regulations of the Pension Benefit Guaranty Corporation for determining the present value of a lump sum distribution on plan termination that were in effect on September 1, 1993, and using the provisions of the Plan as in effect on the day before December 8, 1994; but only if such provisions of the Plan met the requirements of Code Section 417(e)(3) and Regulation 1.417(e)-1(d) as in effect on the day before December 8, 1994.

In the event this Section is amended, the Actuarial Equivalent of a Participant's Accrued Benefit on or after the date of change shall be determined (unless otherwise permitted by law or Regulation) as the greater of (1) the Actuarial Equivalent of the Accrued Benefit as of the date of change computed on the old basis, or (2) the Actuarial Equivalent of the total Accrued Benefit computed on the new basis.

3

**DBP 000033**

1.4     "Administrator" means the Employer unless another person or entity has been designated by the Employer pursuant to Section 2.2 to administer the Plan on behalf of the Employer.

1.5     "Affiliated Employer" means any corporation which is a member of a controlled group of corporations (as defined in Code Section 414(b)) which includes the Employer; any trade or business (whether or not incorporated) which is under common control (as defined in Code Section 414(c)) with the Employer; any organization (whether or not incorporated) which is a member of an affiliated service group (as defined in Code Section 414(m)) which includes the Employer; and any other entity required to be aggregated with the Employer pursuant to Regulations under Code Section 414(o).

1.6     "Aggregate Account" means, with respect to each Participant, the value of all accounts maintained on behalf of a Participant, whether attributable to Employer or Employee contributions, used to determine Top Heavy Plan status under the provisions of a defined contribution plan included in any Aggregation Group (as defined in Section 11.2).

1.7     "Anniversary Date" means October 1.

1.8     "Annuity Starting Date" means, with respect to any Participant, the first day of the first period for which an amount is paid as an annuity, or, in the case of a benefit not payable in the form of an annuity, the first day on which all events have occurred which entitles the Participant to such benefit.

1.9     "Beneficiary" means the person (or entity) designated as provided in Section 5.5 to receive the benefits which are payable under the Plan upon or after the death of a Participant.

1.10     "Code" means the Internal Revenue Code of 1986, as amended or replaced from time to time.

1.11     "Compensation" with respect to any Participant means such Participant's wages as defined in Code Section 3401(a) and all other payments of compensation by the Employer (in the course of the Employer's trade or business) for a Plan Year for which the Employer is required to furnish the Participant a written statement under Code Sections 6041(d), 6051(a)(3) and 6052. Compensation must be determined without regard to any rules under Code Section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code Section 3401(a)(2)). Compensation for any Self-Employed Individual shall be equal to such individual's Earned Income. Notwithstanding the foregoing, if compensation for any prior determination period is taken into account in determining a Participant's benefits for the current Plan Year, Compensation means compensation determined pursuant to the terms of the Plan then in effect.

For purposes of this Section, the determination of Compensation shall be made by:

(a)     including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which are not includible in the gross income

DBP 000034

of the Participant under Code Sections 125, 132(f)(4) for Plan Years beginning after December 31, 2000, 402(e)(3), 402(h)(1)(B), 403(b) or 457(b), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions.

Compensation in excess of $150,000 (or such other amount provided in the Code) shall be disregarded. Such amount shall be adjusted for increases in the cost of living in accordance with Code Section 401(a)(17)(B), except that the dollar increase in effect on January 1 of any calendar year shall be effective for the Plan Years beginning with or within such calendar year. If Compensation for any prior determination period is taken into account in determining a Participant's benefits for the current Plan Year, the compensation for such prior determination period is subject to the applicable annual compensation limit in effect for that prior period. For this purpose, in determining benefits in Plan Years beginning on or after January 1, 1989, the annual compensation limit in effect for determination periods beginning before that date is $200,000 (or such other amount as adjusted for increases in the cost of living in accordance with Code Section 415(d) for determination periods beginning on or after January 1, 1989 and in accordance with Code Section 401(a)(17)(B) for determination periods beginning on or after January 1, 1994). For determination periods beginning prior to January 1, 1989, the $200,000 limit shall apply only to Top Heavy Plan Years and shall not be adjusted. For any short Plan Year the Compensation limit shall be an amount equal to the Compensation limit for the calendar year in which the Plan Year begins multiplied by the ratio obtained by dividing the number of full months in the short Plan Year by twelve (12).

For Plan Years beginning after December 31, 1996, for purposes of determining Compensation, the family member aggregation rules of Code Section 401(a)(17) and Code Section 414(q)(6) (as in effect prior to the Small Business Job Protection Act of 1996) are eliminated. In determining Average Monthly Compensation, the elimination of the family member aggregation rules are treated as not having been in effect for earlier years.

1.12    "Contract" or "Policy" means any life insurance policy, retirement income policy or annuity contract (group or individual) issued pursuant to the terms of the Plan. In the event of any conflict between the terms of this Plan and the terms of any contract purchased hereunder, the Plan provisions shall control.

1.13    "Earliest Retirement Age" means the earliest date on which, under the Plan, the Participant could elect to receive retirement benefits.

1.14    "Early Retirement Date" means the first day of the month (prior to the Normal Retirement Date) coinciding with or following the date on which a Participant or Former Participant attains age 55, and has completed at least 10 Years of Service with the Employer (Early Retirement Age). A Participant shall become fully Vested upon satisfying this requirement if still employed at Early Retirement Age.

A Former Participant who separates from service after satisfying the service requirement for Early Retirement and who thereafter reaches the age requirement contained herein shall be entitled to receive benefits under this Plan.

DBP 000035

1.15    "Earned Income" means with respect to a Self-Employed Individual, the net earnings from self-employment in the trade or business with respect to which the Plan is established, for which the personal services of the individual are a material income-producing factor. Net earnings will be determined without regard to items not included in gross income and the deductions allocable to such items. Net earnings are reduced by contributions by the Self-Employed Individual to a qualified Plan to the extent deductible under Code Section 404. In addition, net earnings shall be determined with regard to the deduction allowed to the Self-Employed Individual by Code Section 164(f).

1.16    "Eligible Employee" means any Employee who is compensated on a salary only basis.

Employees who are Leased Employees within the meaning of Code Sections 414(n)(2) and 414(o)(2) shall not be eligible to participate in this Plan.

Employees of Affiliated Employers shall not be eligible to participate in this Plan unless such Affiliated Employers have specifically adopted this Plan in writing.

Employees classified by the Employer as independent contractors who are subsequently determined by the Internal Revenue Service to be Employees shall not be Eligible Employees.

Employees classified by the Employer as Associate Attorneys, Legal Interns, Of Counsel or any other Attorney that is not a Partner of the Employer shall not be eligible to participate in this Plan.

1.17    "Employee" means any person who is employed by the Employer or Affiliated Employer, and excludes any person who is employed as an independent contractor. Employee shall include Leased Employees within the meaning of Code Sections 414(n)(2) and 414(o)(2) unless such Leased Employees are covered by a plan described in Code Section 414(n)(5) and such Leased Employees do not constitute more than 20% of the recipient's non-highly compensated work force.

1.18    "Employer" means Kenyon & Kenyon and any successor which shall maintain this Plan; and any predecessor which has maintained this Plan. The Employer is a partnership, with principal offices in the State of New York.

1.19    "Fiduciary" means any person who (a) exercises any discretionary authority or discretionary control respecting management of the Plan or exercises any authority or control respecting management or disposition of its assets, (b) renders investment advice for a fee or other compensation, direct or indirect, with respect to any monies or other property of the Plan or has any authority or responsibility to do so, or (c) has any discretionary authority or discretionary responsibility in the administration of the Plan.

1.20    "Fiscal Year" means the Employer's accounting year of 12 months commencing on 1001 of each year and ending the following September 30.

DBP 000036

1.21    "Former Participant" means a person who has been a Participant, but who has ceased to be a Participant for any reason.

1.22    "415 Compensation" with respect to any Participant means such Participant's wages as defined in Code Section 3401(a) and all other payments of compensation by the Employer (in the course of the Employer's trade or business) for a Plan Year for which the Employer is required to furnish the Participant a written statement under Code Sections 6041(d), 6051(a)(3) and 6052. "415 Compensation" must be determined without regard to any rules under Code Section 3401(a) that limit the remuneration included in wages based on the nature or location of the employment or the services performed (such as the exception for agricultural labor in Code Section 3401(a)(2)). "415 Compensation" for any Self-Employed Individual shall be equal to such individual's Earned Income.

For "limitation years" beginning after December 31, 1997, for purposes of this Section, the determination of "415 Compensation" shall include any elective deferral (as defined in Code Section 402(g)(3)), and any amount which is contributed or deferred by the Employer at the election of the Participant and which is not includible in the gross income of the Participant by reason of Code Sections 125, 132(f)(4) for "limitation years" beginning after December 31, 2000 or 457.

1.23    "Freeze Date" means the last day of the "limitation year" beginning prior to the first day of the "limitation year" beginning after December 31, 1994.

1.24    "Highly Compensated Employee" means, for Plan Years beginning after December 31, 1996, an Employee described in Code Section 414(q) and the Regulations thereunder, and generally means any Employee who:

(a)    was a "five percent owner" as defined in Section 1.29(c) at any time during the "determination year" or "look-back year"; or

(b)    for the "look-back year" had "415 Compensation" from the Employer in excess of $80,000. The $80,000 amount is adjusted at the same time and in the same manner as under Code Section 415(d), except that the base period is the calendar quarter ending September 30, 1996.

The "determination year" means the Plan Year for which testing is being performed, and the "look-back year" means the immediately preceding twelve (12) month period.

A highly compensated former Employee is based on the rules applicable to determining Highly Compensated Employee status as in effect for the "determination year," in accordance with Regulation 1.414(q)-1T, A-4 and IRS Notice 97-45 (or any superseding guidance).

In determining whether an Employee is a Highly Compensated Employee for a Plan Year beginning in 1997, the amendments to Code Section 414(q) stated above are treated as having been in effect for years beginning in 1996.

DBP 000037

For purposes of this Section, for Plan Years beginning prior to January 1, 1998, the determination of "415 Compensation" shall be made by including amounts that would otherwise be excluded from a Participant's gross income by reason of the application of Code Sections 125, 402(e)(3), 402(h)(1)(B), and, in the case of Employer contributions made pursuant to a salary reduction agreement, Code Section 403(b).

In determining who is a Highly Compensated Employee, Employees who are non-resident aliens and who received no earned income (within the meaning of Code Section 911(d)(2)) from the Employer constituting United States source income within the meaning of Code Section 861(a)(3) shall not be treated as Employees. Additionally, all Affiliated Employers shall be taken into account as a single employer and Leased Employees within the meaning of Code Sections 414(n)(2) and 414(o)(2) shall be considered Employees unless such Leased Employees are covered by a plan described in Code Section 414(n)(5) and are not covered in any qualified plan maintained by the Employer. The exclusion of Leased Employees for this purpose shall be applied on a uniform and consistent basis for all of the Employer's retirement plans. Highly Compensated Former Employees shall be treated as Highly Compensated Employees without regard to whether they performed services during the "determination year."

1.25    "Highly Compensated Participant" means any Highly Compensated Employee who is eligible to participate in the component of the Plan being tested.

1.26    "Hour of Service" means (1) each hour for which an Employee is directly or indirectly compensated or entitled to compensation by the Employer for the performance of duties (these hours will be credited to the Employee for the computation period in which the duties are performed); (2) each hour for which an Employee is directly or indirectly compensated or entitled to compensation by the Employer (irrespective of whether the employment relationship has terminated) for reasons other than performance of duties (such as vacation, holidays, sickness, jury duty, disability, lay-off, military duty or leave of absence) during the applicable computation period (these hours will be calculated and credited pursuant to Department of Labor regulation 2530.200b-2 which is incorporated herein by reference); (3) each hour for which back pay is awarded or agreed to by the Employer without regard to mitigation of damages (these hours will be credited to the Employee for the computation period or periods to which the award or agreement pertains rather than the computation period in which the award, agreement or payment is made). The same Hours of Service shall not be credited both under (1) or (2), as the case may be, and under (3).

Notwithstanding (2) above, (i) no more than 501 Hours of Service are required to be credited to an Employee on account of any single continuous period during which the Employee performs no duties (whether or not such period occurs in a single computation period); (ii) an hour for which an Employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed is not required to be credited to the Employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, or unemployment compensation or disability insurance laws; and (iii) Hours of Service are not required to be credited for a payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

DBP 000038

For purposes of (2) above, a payment shall be deemed to be made by or due from the Employer regardless of whether such payment is made by or due from the Employer directly, or indirectly through, among others, a trust fund, or insurer, to which the Employer contributes or pays premiums and regardless of whether contributions made or due to the trust fund, insurer, or other entity are for the benefit of particular Employees or are on behalf of a group of Employees in the aggregate.

For purposes of this Section, Hours of Service will be credited for employment with other Affiliated Employers. The provisions of Department of Labor regulations 2530.200b-2(b) and (c) are incorporated herein by reference.

1.27    "Investment Manager" means an entity that (a) has the power to manage, acquire, or dispose of Plan assets and (b) acknowledges fiduciary responsibility to the Plan in writing. Such entity must be a person, firm, or corporation registered as an investment adviser under the Investment Advisers Act of 1940, a bank, or an insurance company.

1.28    "Key Employee" means an Employee as defined in Code Section 416(i) and the Regulations thereunder. Generally, any Employee or former Employee (as well as each of the Employee's or former Employee's Beneficiaries) is considered a Key Employee if the Employee, at any time during the Plan Year that contains the "Determination Date" or any of the preceding four (4) Plan Years, has been included in one of the following categories:

(a)     an officer of the Employer (as that term is defined within the meaning of the Regulations under Code Section 416) having annual "415 Compensation" greater than 50 percent of the amount in effect under Code Section 415(b)(1)(A) for any such Plan Year.

(b)     one of the ten employees having annual "415 Compensation" from the Employer for a Plan Year greater than the dollar limitation in effect under Code Section 415(c)(1)(A) for the calendar year in which such Plan Year ends and owning (or considered as owning within the meaning of Code Section 318) both more than one-half percent interest and the largest interests in the Employer.

(c)     a "five percent owner" of the Employer. "Five percent owner" means any person who owns (or is considered as owning within the meaning of Code Section 318) more than five percent (5%) of the outstanding stock of the Employer or stock possessing more than five percent (5%) of the total combined voting power of all stock of the Employer or, in the case of an unincorporated business, any person who owns more than five percent (5%) of the capital or profits interest in the Employer. In determining percentage ownership hereunder, employers that would otherwise be aggregated under Code Sections 414(b), (c), (m) and (o) shall be treated as separate employers.

(d)     a "one percent owner" of the Employer having an annual "415 Compensation" from the Employer of more than $150,000. "One percent owner" means any person who owns (or is considered as owning within the meaning of Code Section 318) more than one percent (1%) of the outstanding stock of the Employer or stock possessing more than one percent (1%) of the total combined

DBP 000039

voting power of all stock of the Employer or, in the case of an unincorporated business, any person who owns more than one percent (1%) of the capital or profits interest in the Employer. In determining percentage ownership hereunder, employers that would otherwise be aggregated under Code Sections 414(b), (c), (m) and (o) shall be treated as separate employers. However, in determining whether an individual has "415 Compensation" of more than $150,000, "415 Compensation" from each employer required to be aggregated under Code Sections 414(b), (c), (m) and (o) shall be taken into account.

For purposes of this Section, the determination of "415 Compensation" shall be made by including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which are not includible in the gross income of the Participant under Code Sections 125, 132(f)(4) for Plan Years beginning after December 31, 2000, 402(e)(3), 402(h)(1)(B), 403(b) or 457(b), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions.

1.29    "Late Retirement Date" means the first day of the month coinciding with or next following a Participant's actual Retirement Date after having reached Normal Retirement Date.

1.30    "Leased Employee" means, for Plan Years beginning after December 31, 1996, any person (other than an Employee of the recipient Employer) who pursuant to an agreement between the recipient Employer and any other person or entity ("leasing organization") has performed services for the recipient (or for the recipient and related persons determined in accordance with Code Section 414(n)(6)) on a substantially full time basis for a period of at least one year, and such services are performed under primary direction or control by the recipient Employer. Contributions or benefits provided a Leased Employee by the leasing organization which are attributable to services performed for the recipient Employer shall be treated as provided by the recipient Employer. Furthermore, Compensation for a Leased Employee shall only include Compensation from the leasing organization that is attributable to services performed for the recipient Employer. A Leased Employee shall not be considered an Employee of the recipient Employer:

(a)    if such employee is covered by a money purchase pension plan providing:

(1)    a nonintegrated employer contribution rate of at least 10% of compensation, as defined in Code Section 415(c)(3), but, for Plan Years beginning prior to January 1, 1998, including amounts which are contributed by the Employer pursuant to a salary reduction agreement and which are not includible in the gross income of the Participant under Code Sections 125, 402(e)(3), 402(h)(1)(B), 403(b) or 457(b), and Employee contributions described in Code Section 414(h)(2) that are treated as Employer contributions, and, for Plan Years beginning prior to January 1, 2001, excluding amounts that are not includible in gross income under Code Section 132(f)(4);

(2)    immediate participation;

10

DBP 000040

(3)    full and immediate vesting; and

(b)    if Leased Employees do not constitute more than 20% of the recipient Employer's nonhighly compensated work force.

1.31    "Non-Highly Compensated Participant" means, for Plan Years beginning after December 31, 1996, any Participant who is not a Highly Compensated Employee.

1.32    "Non-Key Employee" means any Employee or former Employee (and such Employee's or former Employee's Beneficiaries) who is not, and has never been a Key Employee.

1.33    "Normal Retirement Age" means the Participant's 65 birthday, or the Participant's 5th anniversary of joining the Plan, if later. A Participant shall become fully Vested in the Participant's Normal Retirement Benefit upon attaining Normal Retirement Age.

1.34    "Normal Retirement Date" means the first day of the month coinciding with or next following the Participant's Normal Retirement Age.

1.35    "Old Law Benefit" means the Participant's Accrued Benefit under the terms of the Plan as of the Freeze Date, for the Annuity Starting Date and optional form and taking into account the limitations of Code Section 415, as in effect on December 7, 1994, including the participation requirements under Code Section 415(b)(5). In determining the amount of a Participant's Old Law Benefit, the following shall be disregarded:

(a)    any Plan amendment increasing benefits adopted after the Freeze Date; and

(b)    any cost of living adjustments that become effective after such date.

A Participant's Old Law Benefit is not increased after the Freeze Date, but if the limitations of Code Section 415, as in effect on December 7, 1994, are less than the limitations that were applied to determine the Participant's Old Law Benefit on the Freeze Date, then the Participant's Old Law Benefit shall be reduced in accordance with such reduced limitation. If, at any date after the Freeze Date, the Participant's total Plan benefit, before the application of Code Section 415, is less than the Participant's Old Law Benefit, the Old Law Benefit shall be reduced to the Participant's total Plan Benefit.

1.36    "1-Year Break in Service" means the applicable computation period during which an Employee has not completed more than 500 Hours of Service with the Employer. Further, solely for the purpose of determining whether a Participant has incurred a 1-Year Break in Service, Hours of Service shall be recognized for "authorized leaves of absence" and "maternity and paternity leaves of absence." Years of Service and 1-Year Breaks in Service shall be measured on the same computation period.

DBP 000041

"Authorized leave of absence" means an unpaid, temporary cessation from active employment with the Employer pursuant to an established nondiscriminatory policy, whether occasioned by illness, military service, or any other reason.

A "maternity or paternity leave of absence" means, for Plan Years beginning after December 31, 1984, an absence from work for any period by reason of the Employee's pregnancy, birth of the Employee's child, placement of a child with the Employee in connection with the adoption of such child, or any absence for the purpose of caring for such child for a period immediately following such birth or placement. For this purpose, Hours of Service shall be credited for the computation period in which the absence from work begins, only if credit therefore is necessary to prevent the Employee from incurring a 1-Year Break in Service, or, in any other case, in the immediately following computation period. The Hours of Service credited for a "maternity or paternity leave of absence" shall be those which would normally have been credited but for such absence, or, in any case in which the Administrator is unable to determine such hours normally credited, eight (8) Hours of Service per day. The total Hours of Service required to be credited for a "maternity or paternity leave of absence" shall not exceed the number of Hours of Service needed to prevent the Employee from incurring a 1-Year Break in Service.

1.37    "Owner-Employee" means a sole proprietor who owns the entire interest in the Employer or a partner who owns more than 10% of either the capital interest or the profits interest in the Employer and who receives income for personal services from the Employer.

1.38    "Participant" means any Eligible Employee who participates in the Plan and has not for any reason become ineligible to participate further in the Plan.

1.39    "Past Service Compensation" for an Eligible Employee participating in the Plan as of the Effective Date, means the average annual Compensation of a Participant for the three (3) year period ending on the Effective Date, or such shorter period during which the Employee was actually employed.

1.40    "Plan" means this instrument, including all amendments thereto.

1.41    "Plan Year" means the Plan's accounting year of twelve (12) months commencing on October 1 of each year and ending the following September 30.

1.42    "Plan Year of Service" means a Plan Year during which an Employee is a Participant and completes 1000 Hours of Service. However, in determining whether a Participant has completed a Plan Year of Service in a short Plan Year, the number of the Hours of Service required shall be proportionately reduced based on the number of full months in the short Plan Year.

However, if the current retirement benefit formula was adopted and in effect on September 19, 1991, years of service prior to the Employee's participation in the Plan shall be recognized as Plan Years of Service to the extent provided in the Plan on such date. The preceding sentence does not apply with respect to an Employee who first became a Participant in the Plan after that date.

DBP 000042

1.43    "Pre-Retirement Survivor Annuity" means an immediate annuity for the life of the surviving spouse of a Participant who dies prior to the Participant's Annuity Starting Date, the payment under which must be equal to the "minimum spouse's death benefit" provided in Section 5.5(g).

1.44    "Present Value of Accrued Benefit" means the Actuarial Equivalent lump-sum amount of a Participant's Accrued Benefit at date of valuation. Notwithstanding the foregoing, the Present Value of Accrued Benefit for the determination of Top Heavy Plan status shall be made exclusively pursuant to the provisions of Section 11.2.

1.45    "Regulation" means the Income Tax Regulations as promulgated by the Secretary of the Treasury or a delegate of the Secretary of the Treasury, and as amended from time to time.

1.46    "Retired Participant" means a person who has been a Participant, but who has become entitled to retirement benefits under the Plan.

1.47    "Retirement Date" means the date as of which a Participant retires whether such retirement occurs on a Participant's Normal Retirement Date, Early or Late Retirement Date (see Section 5.1).

1.48    "Self-Employed Individual" means an individual who has Earned Income for the taxable year from the trade or business for which the Plan is established, and, also, an individual who would have had Earned Income but for the fact that the trade or business had no net profits for the taxable year. A Self-Employed Individual shall be treated as an Employee.

1.49    "Social Security Retirement Age" means the age used as the retirement age under Section 216(l) of the Social Security Act, except that such section shall be applied without regard to the age increase factor and as if the early retirement age under Section 216(l)(2) of such Act were 62.

1.50    "Terminated Participant" means a person who has been a Participant, but whose employment has been terminated other than by death or retirement.

1.51    "Top Heavy Plan" means a plan described in Section 11.2(a).

1.52    "Top Heavy Plan Year" means a Plan Year during which the Plan is a Top Heavy Plan.

1.53    "Trustee" means the person or entity named as trustee herein or in any separate trust forming a part of this Plan, and any successors.

1.54    "Trust Fund" means the assets of the Plan and Trust as the same shall exist from time to time.

1.55    "Vested" means the portion of a Participant's benefits under the Plan that are nonforfeitable.

DBP 000043

1.56   "Year of Service" means the computation period of twelve (12) consecutive months, herein set forth, during which an Employee has at least 1000 Hours of Service.

For purposes of eligibility for participation, the initial computation period shall begin with the date on which the Employee first performs an Hour of Service. The participation computation period beginning after a 1-Year Break in Service shall be measured from the date on which an Employee again performs an Hour of Service. The participation computation period shall shift to the Plan Year which includes the anniversary of the date on which the Employee first performed an Hour of Service. An Employee who is credited with the required Hours of Service in both the initial computation period (or the computation period beginning after a 1-Year Break in Service) and the Plan Year which includes the anniversary of the date on which the Employee first performed an Hour of Service, shall be credited with two (2) Years of Service for purposes of eligibility to participate.

For vesting purposes, the computation periods shall be the Plan Year, including periods prior to the Effective Date of the Plan.

The computation period shall be the Plan Year if not otherwise set forth herein.

Notwithstanding the foregoing, for any short Plan Year, the determination of whether an Employee has completed a Year of Service shall be made in accordance with Department of Labor regulation 2530.203-2(c).

Years of Service with any Affiliated Employer shall be recognized.

## ARTICLE II
## ADMINISTRATION

2.1   POWERS AND RESPONSIBILITIES OF THE EMPLOYER

(a)   In addition to the general powers and responsibilities otherwise provided for in this Plan, the Employer shall be empowered to appoint and remove the Trustee and the Administrator from time to time as it deems necessary for the proper administration of the Plan to ensure that the Plan is being operated for the exclusive benefit of the Participants and their Beneficiaries in accordance with the terms of the Plan, the Code, and the Act. The Employer may appoint counsel, specialists, advisers, agents (including any nonfiduciary agent) and other persons as the Employer deems necessary or desirable in connection with the exercise of its fiduciary duties under this Plan. The Employer may compensate such agents or advisers from the assets of the Plan as fiduciary expenses (but not including any business (settlor) expenses of the Employer), to the extent not paid by the Employer.

(b)   The Employer may, by written agreement or designation, appoint at its option an Investment Manager (qualified under the Investment Company Act of 1940 as amended), investment adviser, or other agent to provide direction to the Trustee with respect to any or all of the Plan assets. Such appointment shall be given by the Employer in writing in a form acceptable to the Trustee and shall

DBP 000044

specifically identify the Plan assets with respect to which the Investment Manager or other agent shall have authority to direct the investment.

(c)    The Employer shall establish a "funding policy and method," i.e., it shall determine whether the Plan has a short run need for liquidity (e.g., to pay benefits) or whether liquidity is a long run goal and investment growth (and stability of same) is a more current need, or shall appoint a qualified person to do so. The Employer or its delegate shall communicate such needs and goals to the Trustee, who shall coordinate such Plan needs with its investment policy. The communication of such a "funding policy and method" shall not, however, constitute a directive to the Trustee as to the investment of the Trust Funds. Such "funding policy and method" shall be consistent with the objectives of this Plan and with the requirements of Title I of the Act.

(d)    The Employer shall periodically review the performance of any Fiduciary or other person to whom duties have been delegated or allocated by it under the provisions of this Plan or pursuant to procedures established hereunder. This requirement may be satisfied by formal periodic review by the Employer or by a qualified person specifically designated by the Employer, through day-to-day conduct and evaluation, or through other appropriate ways.

## 2.2    DESIGNATION OF ADMINISTRATIVE AUTHORITY

The Employer shall be the Administrator. The Employer may appoint any person, including, but not limited to, the Employees of the Employer, to perform the duties of the Administrator. Any person so appointed shall signify acceptance by filing written acceptance with the Employer. Upon the resignation or removal of any individual performing the duties of the Administrator, the Employer may designate a successor.

## 2.3    POWERS AND DUTIES OF THE ADMINISTRATOR

The primary responsibility of the Administrator is to administer the Plan for the exclusive benefit of the Participants and their Beneficiaries, subject to the specific terms of the Plan. The Administrator shall administer the Plan in accordance with its terms and shall have the power and discretion to construe the terms of the Plan and to determine all questions arising in connection with the administration, interpretation, and application of the Plan. Any such determination by the Administrator shall be conclusive and binding upon all persons. The Administrator may establish procedures, correct any defect, supply any information, or reconcile any inconsistency in such manner and to such extent as shall be deemed necessary or advisable to carry out the purpose of the Plan; provided, however, that any procedure, discretionary act, interpretation or construction shall be done in a nondiscriminatory manner based upon uniform principles consistently applied and shall be consistent with the intent that the Plan shall continue to be deemed a qualified plan under the terms of Code Section 401(a), and shall comply with the terms of the Act and all regulations issued pursuant thereto. The Administrator shall have all powers necessary or appropriate to accomplish the Administrator's duties under the Plan.

DBP 000045

The Administrator shall be charged with the duties of the general administration of the Plan as set forth under the terms of the Plan, including, but not limited to, the following:

(a)    the discretion to determine all questions relating to the eligibility of Employees to participate or remain a Participant hereunder and to receive benefits under the Plan;

(b)    to compute, certify, and direct the Trustee with respect to the amount and the kind of benefits to which any Participant shall be entitled hereunder;

(c)    to authorize and direct the Trustee with respect to all discretionary or otherwise directed disbursements from the Trust;

(d)    to maintain all necessary records for the administration of the Plan;

(e)    to interpret the provisions of the Plan and to make and publish such rules for regulation of the Plan as are consistent with the terms hereof;

(f)    to determine the size and type of any Contract to be purchased from any insurer and to designate the insurer from which such Contract shall be purchased. All Policies shall be issued on a uniform basis as of each Anniversary Date with respect to all Participants under similar circumstances;

(g)    to compute and certify to the Employer and to the Trustee from time to time the sums of money necessary or desirable to be contributed to the Plan;

(h)    to consult with the Employer and the Trustee regarding the short and long-term liquidity needs of the Plan in order that the Trustee can exercise any investment discretion in a manner designed to accomplish specific objectives;

(i)    to prepare and implement a procedure for notifying Participants and Beneficiaries of their rights to elect joint and survivor annuities and Pre-Retirement Survivor Annuities as required by the Act and regulations thereunder;

(j)    to determine the validity of, and take appropriate action with respect to, any qualified domestic relations order received by it; and

(k)    to assist any Participant regarding the Participant's rights, benefits, or elections available under the Plan.

## 2.4    RECORDS AND REPORTS

The Administrator shall keep a record of all actions taken and shall keep all other books of account, records, policies, and other data that may be necessary for proper administration of the Plan and shall be responsible for supplying all information and reports to

DBP 000046

the Internal Revenue Service, Department of Labor, Participants, Beneficiaries and others as required by law.

## 2.5    APPOINTMENT OF ADVISERS

The Administrator, or the Trustee with the consent of the Administrator, may appoint counsel, specialists, advisers, agents (including nonfiduciary agents) and other persons as the Administrator or the Trustee deems necessary or desirable in connection with the administration of this Plan, including but not limited to agents and advisers to assist with the administration and management of the Plan, and thereby to provide, among such other duties as the Administrator may appoint, assistance with maintaining Plan records and the providing of investment information to the Plan's investment fiduciaries.

## 2.6    PAYMENT OF EXPENSES

All expenses of administration may be paid out of the Trust Fund unless paid by the Employer. Such expenses shall include any expenses incident to the functioning of the Administrator, or any person or persons retained or appointed by any named Fiduciary incident to the exercise of their duties under the Plan, including, but not limited to, fees of accountants, counsel, Investment Managers, and other specialists and their agents, the costs of any bonds required pursuant to Act Section 412, and other costs of administering the Plan. Until paid, the expenses shall constitute a liability of the Trust Fund.

## 2.7    CLAIMS PROCEDURE

Claims for benefits under the Plan may be filed in writing with the Administrator. Written notice of the disposition of a claim shall be furnished to the claimant within ninety (90) days after the application is filed, or such period as is required by applicable law or Department of Labor regulation. In the event the claim is denied, the reasons for the denial shall be specifically set forth in the notice in language calculated to be understood by the claimant, pertinent provisions of the Plan shall be cited, and, where appropriate, an explanation as to how the claimant can perfect the claim will be provided. In addition, the claimant shall be furnished with an explanation of the Plan's claims review procedure.

## 2.8    CLAIMS REVIEW PROCEDURE

Any Employee, former Employee, or Beneficiary of either, who has been denied a benefit by a decision of the Administrator pursuant to Section 2.7 shall be entitled to request the Administrator to give further consideration to a claim by filing with the Administrator a written request for a hearing. Such request, together with a written statement of the reasons why the claimant believes the claim should be allowed, shall be filed with the Administrator no later than sixty (60) days after receipt of the written notification provided for in Section 2.7. The Administrator shall then conduct a hearing within the next sixty (60) days, at which the claimant may be represented by an attorney or any other representative of such claimant's choosing and expense and at which the claimant shall have an opportunity to submit written and oral evidence and arguments in support of the claim. At the hearing (or prior thereto upon five (5) business days written notice to the Administrator) the claimant or the claimant's representative shall have an opportunity to review all documents in the possession of the Administrator which are

DBP 000047

pertinent to the claim at issue and its disallowance. Either the claimant or the Administrator may cause a court reporter to attend the hearing and record the proceedings. In such event, a complete written transcript of the proceedings shall be furnished to both parties by the court reporter. The full expense of any such court reporter and such transcripts shall be borne by the party causing the court reporter to attend the hearing. A final decision as to the allowance of the claim shall be made by the Administrator within sixty (60) days of receipt of the appeal (unless there has been an extension of sixty (60) days due to special circumstances, provided the delay and the special circumstances occasioning it are communicated to the claimant within the sixty (60) day period). Such communication shall be written in a manner calculated to be understood by the claimant and shall include specific reasons for the decision and specific references to the pertinent Plan provisions on which the decision is based.

ARTICLE III
ELIGIBILITY

## 3.1    CONDITIONS OF ELIGIBILITY

Any Eligible Employee who has completed one (1) Year of Service and has attained age 21 shall be eligible to participate hereunder as of the date such Employee has satisfied such requirements. However, any Employee who was a Participant in the Plan prior to the effective date of this amendment and restatement shall continue to participate in the Plan.

## 3.2    EFFECTIVE DATE OF PARTICIPATION

An Eligible Employee shall become a Participant effective as of the earlier of the first day of the Plan Year or the first day of the seventh month of such Plan Year coinciding with or next following the date such Employee met the eligibility requirements of Section 3.1, provided said Employee was still employed as of such date (or if not employed on such date, as of the date of rehire if a 1-Year Break in Service has not occurred or, if later, the date that the Employee would have otherwise entered the Plan had the Employee not terminated employment).

If an Employee, who has satisfied the Plan's eligibility requirements and would otherwise have become a Participant, shall go from a classification of a noneligible Employee to an Eligible Employee, such Employee shall become a Participant on the date such Employee becomes an Eligible Employee or, if later, the date that the Employee would have otherwise entered the Plan had the Employee always been an Eligible Employee.

If an Employee, who has satisfied the Plan's eligibility requirements and would otherwise become a Participant, shall go from a classification of an Eligible Employee to a noneligible class of Employees, such Employee shall become a Participant in the Plan on the date such Employee again becomes an Eligible Employee, or, if later, the date that the Employee would have otherwise entered the Plan had the Employee always been an Eligible Employee. However, if such Employee incurs a 1-Year Break in Service, eligibility will be determined under the Break in Service rules set forth in Section 3.5.

DBP 000048

### 3.3    DETERMINATION OF ELIGIBILITY

The Administrator shall determine the eligibility of each Employee for participation in the Plan based upon information furnished by the Employer. Such determination shall be conclusive and binding upon all persons, as long as the same is made pursuant to the Plan and the Act. Such determination shall be subject to review pursuant to Section 2.8.

### 3.4    TERMINATION OF ELIGIBILITY

In the event a Participant shall go from a classification of an Eligible Employee to an ineligible Employee, such Former Participant shall continue to vest in the Plan for each Year of Service completed while a noneligible Employee, until such time as the Former Participant's Accrued Benefit shall be forfeited or distributed pursuant to the terms of the Plan.

### 3.5    REHIRED EMPLOYEES AND BREAKS IN SERVICE

(a)    If any Participant becomes a Former Participant due to severance from employment with the Employer and is reemployed by the Employer before a 1-Year Break in Service occurs, the Former Participant shall become a Participant as of the reemployment date.

(b)    If any Participant becomes a Former Participant due to severance from employment with the Employer and is reemployed after a 1-Year Break in Service has occurred, Years of Service shall include Years of Service prior to the 1-Year Break in Service subject to the following rules:

(1)    In the case of a Former Participant who under the Plan does not have a nonforfeitable right to any interest in the Plan resulting from Employer contributions, Years of Service before a period of 1-Year Break in Service will not be taken into account if the number of consecutive 1-Year Breaks in Service equal or exceed the greater of (A) five (5) or (B) the aggregate number of pre-break Years of Service. Such aggregate number of Years of Service will not include any Years of Service disregarded under the preceding sentence by reason of prior 1-Year Breaks in Service.

(2)    A Former Participant who has not had Years of Service before a 1-Year Break in Service disregarded pursuant to (1) above, shall participate in the Plan as of the date of reemployment.

(c)    If any Participant becomes a Former Participant due to severance of employment with the Employer and again becomes a Participant, such renewed participation shall not result in duplication of benefits. Accordingly, if such Participant has received a distribution of a Vested Accrued Benefit under the Plan by reason of prior participation (and such distribution has not been repaid to the Plan with interest within a period of the earlier of five (5) years after the first date on which the Participant is subsequently reemployed by the Employer or the close of the first period of five (5) consecutive 1-Year Breaks in Service commencing after the distribution), the Participant's Accrued Benefit shall be reduced by the

19

DBP 000049

Actuarial Equivalent (at the date of distribution) of the Present Value of the Accrued Benefit as of the date of distribution. Any repayment by a Participant shall be equal to the total of:

(1)    the amount of the distribution,

(2)    interest on such distribution compounded annually at the rate of five percent (5%) per annum from the date of distribution to the date of repayment or to the last day of the first Plan Year ending on or after December 31, 1987, if earlier, and

(3)    interest on the sum of (1) and (2) above compounded annually at the rate of one-hundred-twenty percent (120%) of the federal mid-term rate (as in effect under Code Section 1274 for the first month of a Plan Year) from the beginning of the first Plan Year beginning after December 31, 1987 or the date of distribution, whichever is later, to the date of repayment.

## 3.6    ELECTION NOT TO PARTICIPATE

An Employee, for Plan years beginning on or after the later of the adoption date or effective date of this amendment and restatement, may, subject to the approval of the Employer, elect voluntarily not to participate in the Plan. The election not to participate must be irrevocable and communicated to the Employer, in writing, within a reasonable period of time before the beginning of the first Plan Year.

## 3.7    OWNER-EMPLOYEE LIMITATION

If, for Plan Years beginning after December 31, 1996, this Plan provides contributions or benefits for one or more Owner-Employees, the contributions on behalf of any Owner-Employee shall be made only with respect to the Earned Income for such Owner-Employee which is derived from the trade or business with respect to which such Plan is established.

## ARTICLE IV
## CONTRIBUTION AND VALUATION

## 4.1    PAYMENT OF CONTRIBUTIONS

No contribution shall be required under the Plan from any Participant. The Employer shall pay to the Trustee from time to time such amounts in cash as the Administrator and Employer shall determine to be necessary to provide the benefits under the Plan determined by the application of accepted actuarial methods and assumptions. The method of funding shall be consistent with Plan objectives.

## 4.2    ACTUARIAL METHODS

In establishing the liabilities under the Plan and contributions thereto, the enrolled actuary will use such methods and assumptions as will reasonably reflect the cost of the benefits.

DBP 000050

The Plan assets are to be valued on the last day of the Plan Year (or on any other date determined by the Administrator) using any reasonable method of valuation that takes into account fair market value pursuant to Regulations. There must be an actuarial valuation of the Plan at least once every year.

## 4.3    QUALIFIED MILITARY SERVICE

Notwithstanding any provision of this Plan to the contrary, effective December 12, 1994, contributions, benefits and service will be provided in accordance with Code Section 414(u).

ARTICLE V<br>BENEFITS

## 5.1    RETIREMENT BENEFITS

(a)    Each participant shall be entitled to receive an annual pension, payable monthly during his lifetime, commencing on the first day of the month coincident with or next following his Normal Retirement Date equal to the sum of his Past Service and Future Service benefits.

(1)    <u>Past Service Benefit</u> – An amount equal to 0.65% of a Participant's Past Service Compensation multiplied by his Years of Service prior to the Effective Date.   For an Employee who is a Highly-Paid Employee as of the Effective Date, there shall be no Accrued Benefit as of the Effective Date, and the Past Service Benefit shall be accrued at a rate of one-tenth (1/10) for each of the first ten (10) Plan Years that such Employee participates in the Plan.

(2)    <u>Future Service Benefit</u> – An amount credited for each Plan Year commencing on and after October 1, 1989 during which a Participant has a Year of Service equal to 0.65% of the Participant's Compensation for such Plan Year.  Notwithstanding the foregoing, for the last Plan Year during which a Participant participates in the Plan, he shall receive the benefit described in the preceding sentence regardless of whether he is credited with a Year of Service for such Plan Year.

The "Normal Retirement Benefit" of each Participant shall not be less than the largest periodic benefit that would have been payable to the Participant upon separation from service at or prior to Normal Retirement Age under the Plan exclusive of social security supplements, premiums on disability or term insurance, and the value of disability benefits not in excess of the "Normal Retirement Benefit." For purposes of comparing periodic benefits in the same form, commencing prior to and at Normal Retirement Age, the greater benefit is determined by converting the benefit payable prior to Normal Retirement Age into the same form of annuity benefit payable at Normal Retirement Age and comparing the amount of such annuity payments. In the case of a Top Heavy Plan, the "Normal Retirement

21

DBP 000051

Benefit" shall not be smaller than the minimum benefit to which the Employee is entitled under Section 5.2.

(b)    A Participant may elect to retire on an Early Retirement Date. In the event that a Participant makes such an election, such Participant shall be entitled to receive an Early Retirement Benefit equal to the Participant's Accrued Benefit payable at the Participant's Normal Retirement Date. However, if a Participant so elects, such Participant may receive payment of an Early Retirement Benefit commencing on the first day of the month coinciding with or next following the Participant's Early Retirement Date which Early Retirement Benefit shall equal the Actuarial Equivalent of the Participant's Accrued Benefit.

(c)    The Normal Retirement Benefit payable to a Participant pursuant to this Section 5.1 shall be a monthly pension commencing on the Participant's Retirement Date and continuing for life. However, the form of distribution of such benefit shall be determined pursuant to the provisions of Section 5.7.

(d)    At the request of a Participant, the Participant may be continued in employment beyond Normal Retirement Date. A Participant may elect to commence distribution of his Accrued Benefit in accordance with the provisions of this Article, upon 15 days written notice to the Plan Administrator. At the close of each Plan Year prior to the Participant's actual Retirement Date, a Participant shall be entitled to a retirement benefit equal to the greater of (1) the Actuarial Equivalent of the monthly retirement benefit such Participant was entitled to at the close of the prior Plan Year, or (2) the Participant's Accrued Benefit determined at the close of the Plan Year. The monthly retirement benefit calculated pursuant to this Section 5.1(d) shall be offset by the actuarial value (determined pursuant to Section 1.3) of the total benefit distributions (pursuant to Section 5.7(e)) made by the close of the Plan Year.

Except with respect to a "five (5) percent owner," a Participant's Accrued Benefit is actuarially increased to take into account the period after age 70 1/2 in which the Participant does not receive any benefits under the Plan. The actuarial increase begins on the April 1 following the calendar year in which the Participant attains age 70 1/2 (January 1, 1997 in the case of a Participant who attained age 70 1/2 prior to 1996), and ends on the date on which benefits commence after retirement in an amount sufficient to satisfy Code Section 401(a)(9).

The amount of actuarial increase payable as of the end of the period for actuarial increases must be no less than the Actuarial Equivalent of the Participant's retirement benefits that would have been payable as of the date the actuarial increase must commence plus the Actuarial Equivalent of additional benefits accrued after that date, reduced by the Actuarial Equivalent of any distributions made after that date. The actuarial increase is generally the same as, and not in addition to, the actuarial increase required for that same period under Code Section 411 to reflect the delay in payments after normal retirement, except that the actuarial increase required under Code Section 401(a)(9)(C) must be

DBP 000052

provided even during the period during which a Participant is in Act Section 203(a)(3)(B) service.

### 5.2    MINIMUM BENEFIT REQUIREMENT FOR TOP HEAVY PLAN

(a)    The minimum Accrued Benefit derived from Employer contributions to be provided under this Section for each Non-Key Employee who is a Participant during a Top Heavy Plan Year shall equal the product of (1) one-twelfth (1/12th) of "415 Compensation" averaged over the five (5) consecutive "limitation years" (or actual number of "limitation years," if less) which produce the highest average, and (2) the lesser of (i) two percent (2%) multiplied by Plan Years of Service, or (ii) twenty percent (20%), expressed as a single life annuity.

(b)    For purposes of providing the minimum benefit under Code Section 416, a Non-Key Employee who is not a Participant solely because (1) such Employee's Compensation is below a stated amount or (2) such Employee declined to make mandatory contributions (if required) to the Plan will be considered to be a Participant. Furthermore, such minimum benefit shall be provided regardless of whether such Non-Key Employee is employed on a specified date.

(c)    For purposes of this Section, Plan Years of Service for any Plan Year beginning before January 1, 1984, or for any Plan Year during which the Plan was not a Top Heavy Plan shall be disregarded.

(d)    For purposes of this Section, "415 Compensation" for any "limitation year" ending in a Plan Year which began prior to January 1, 1984, subsequent to the last "limitation year" during which the Plan is a Top Heavy Plan, or in which the Participant failed to complete a Plan Year of Service, shall be disregarded.

(e)    For the purposes of this Section, "415 Compensation" in excess of $150,000 (or such other amount provided in the Code) shall be disregarded. Such amount shall be adjusted for increases in the cost of living in accordance with Code Section 401(a)(17)(B), except that the dollar increase in effect on January 1 of any calendar year shall be effective for the Plan Year beginning with or within such calendar year. If "415 Compensation" for any prior determination period is taken into account in determining a Participant's minimum benefit for the current Plan Year, the "415 Compensation" for such determination period is subject to the applicable annual "415 Compensation" limit in effect for that prior period. For this purpose, in determining the minimum benefit in Plan Years beginning on or after January 1, 1989, the annual "415 Compensation" limit in effect for determination periods beginning before that date is $200,000 (or such other amount as adjusted for increases in the cost of living in accordance with Code Section 415(d) for determination periods beginning on or after January 1, 1989, and in accordance with Code Section 401(a)(17)(B) for determination periods beginning on or after January 1, 1994). For determination periods beginning prior to January 1, 1989, the $200,000 limit shall apply only for Top Heavy Plan Years and shall not be adjusted. For any short Plan Year the "415 Compensation" limit shall be an amount equal to the "415 Compensation" limit for the calendar year in

DBP 000053

which the Plan Year begins multiplied by the ratio obtained by dividing the number of full months in the short Plan Year by twelve (12).

(f)     If Section 5.1(c) provides for the Normal Retirement Benefit to be paid in a form other than a single life annuity, the Accrued Benefit under this Section shall be the Actuarial Equivalent of the minimum Accrued Benefit under (a) above pursuant to Section 1.3.

(g)     If payment of the minimum Accrued Benefit commences at a date other than Normal Retirement Date, the minimum Accrued Benefit shall be the Actuarial Equivalent of the minimum Accrued Benefit commencing at Normal Retirement Date pursuant to Section 1.3.

(h)     In lieu of the above, if a Non-Key Employee participates in this Plan and a defined contribution plan included in a Required Aggregation Group which is top heavy, a minimum allocation of five percent (5%) of "415 compensation" shall be provided under the defined contribution plan. If the defined contribution plan is amended so that the minimum benefits are no longer provided under the defined contribution plan, the minimum benefits shall be provided under this Plan.

(i)     Notwithstanding the foregoing, for Plan Years beginning prior to January 1, 2000, if a Non-Key Employee participates in this Plan and a defined contribution plan included in a Required Aggregation Group which is top heavy, in lieu of the minimum Accrued Benefit in (a) above a minimum allocation of five percent (5%) of "415 compensation" shall be provided under the defined contribution plan. If the defined contribution plan is amended so that the minimum benefits are no longer provided under the defined contribution plan, the minimum benefits shall be provided under this Plan.

(j)     To the extent required to be nonforfeitable under Section 5.6, the minimum Accrued Benefit under this Section may not be forfeited under Code Section 411(a)(3)(B) or Code Section 411(a)(3)(D).

5.3     PAYMENT OF RETIREMENT BENEFITS

When a Participant retires, the Administrator shall immediately take pursuant to the Plan all necessary steps and execute all required documents to cause the payment of the Participant's Accrued Benefit pursuant to the Plan.

5.4     DISABILITY RETIREMENT BENEFITS

No disability benefits, other than those payable upon termination of employment, are provided in this Plan.

5.5     DEATH BENEFITS

(a)     If a Participant dies prior to the Participant's Retirement Date and after he has completed three (3) years of Service such Participant's Beneficiary shall

DBP 000054

receive the pension benefit which can be provided by the Actuarial Equivalent value of the Participant's Accrued Benefit. If the Participant has less than three (3) years of Service, no death benefit shall be payable.

(b)    Death benefits payable by reason of the death of a Participant or a Retired Participant shall be paid to such Participant's Beneficiary in accordance with the following provisions:

(1)    The Pension benefit in accordance with this Section shall be paid as a monthly annuity over a fixed period not to exceed the life expectancy of the Participant's named Beneficiary. Notwithstanding the foregoing, the Beneficiary may elect to receive the benefit provided under this Section in a single lump sum payment determined in accordance with Section 5.07.

(2)    Upon the death of a Participant subsequent to the Annuity Starting Date, the Participant's Beneficiary shall be entitled to whatever death benefit may be available under the settlement arrangements pursuant to which the Participant's benefit is made payable.

(3)    If a Terminated Vested Participant dies prior to the commencement of his pension benefit, then his Eligible Spouse shall receive a pension benefit commencing on the later of (i) the Participant's Earliest Retirement Date and (ii) the first day of the month following the Participant's death. The amount of such pension benefit shall be equal to the amount the Eligible Spouse would have received had the Participant survived to the pension commencement date, and died immediately thereafter with an Automatic Joint and Survivor benefit in effect, but based on the Participant's Accrued Benefit at the date of death.

(c)    The Administrator may require such proper proof of death and such evidence of the right of any person to receive the death benefit payable as a result of the death of a Participant as the Administrator may deem desirable. The Administrator's determination of death and the right of any person to receive payment shall be conclusive.

(d)    Unless otherwise elected in the manner prescribed in Section 5.8, the Beneficiary of that portion of the death benefit necessary to fund the "minimum spouse's death benefit" shall be the Participant's surviving spouse, who shall receive such benefit in the form of a Pre-Retirement Survivor Annuity pursuant to Section 5.8. Except, however, the Participant may designate a Beneficiary other than the surviving spouse to receive the Actuarial Equivalent of the "minimum spouse's death benefit" if:

(1)    the Participant and the Participant's spouse have validly waived the Pre-Retirement Survivor Annuity in the manner prescribed in Section 5.8, and the spouse has waived the right to be the Participant's Beneficiary, or

DBP 000055

(2)　　the Participant is legally separated or has been abandoned (within the meaning of local law) and the Participant has a court order to such effect (and there is no qualified domestic relations order which provides otherwise), or

(3)　　the Participant has no spouse, or

(4)　　the spouse cannot be located.

　　　　In such event, the designation of a Beneficiary shall be made on a form satisfactory to the Administrator. A Participant may at any time revoke a designation of a Beneficiary or change a Beneficiary by filing written (or in such other form as permitted by the Internal Revenue Service) notice of such revocation or change with the Administrator. However, the Participant's spouse must again consent in writing (or in such other form as permitted by the Internal Revenue Service) to any change in Beneficiary of that portion of the death benefit that would otherwise be paid as a Pre-Retirement Survivor Annuity unless the original consent acknowledged that the spouse had the right to limit consent only to a specific Beneficiary and that the spouse voluntarily elected to relinquish such right. That portion of the death benefit remaining after the "minimum spouse's death benefit" shall be paid to the Participant's designated Beneficiary pursuant to Section 5.8. In the event no valid designation of Beneficiary exists, or if the Beneficiary is not alive, at the time of the Participant's death, the death benefit shall be payable to the Participant's estate. Additionally, if the Beneficiary does not predecease the Participant, but dies prior to the distribution of the death benefit, the death benefit will be paid to the Beneficiary's estate.

(e)　　The benefit payable under this Section shall be paid pursuant to the provisions of Sections 5.8 and 5.9.

(f)　　In no event shall the death benefit payable to a surviving spouse be less than the Actuarial Equivalent of the "minimum spouse's death benefit."

(g)　　For the purposes of this Section, the "minimum spouse's death benefit" means a death benefit for a Vested married Participant payable in the form of a Pre-Retirement Survivor Annuity. Such annuity payments shall be equal to the amount which would be payable as a survivor annuity under the joint and survivor annuity provisions of the Plan if:

(1)　　in the case of a Participant who dies after the Earliest Retirement Age, such Participant had retired with an immediate joint and survivor annuity on the day before the Participant's date of death, or

(2)　　in the case of a Participant who dies on or before the Earliest Retirement Age, such Participant had:

(i)　　separated from service on the earlier of the actual time of separation or the date of death,

DBP 000056

(ii)    survived to the Earliest Retirement Age,

(iii)    retired with an immediate joint and survivor annuity at the Earliest Retirement Age based on the Participant's Vested Accrued Benefit on date of death, and

(iv)    died on the day after the day on which said Participant would have attained the Earliest Retirement Age.

5.6    TERMINATION OF EMPLOYMENT BEFORE RETIREMENT

(a)    Payment to a Former Participant of the Vested portion of such Former Participant's Accrued Benefit, unless such Former Participant otherwise elects, shall begin not later than the 60th day after the close of the Plan Year in which the latest of the following events occurs: (1) the date on which the Participant attains the earlier of age 65 or the Normal Retirement Age specified herein; (2) the 10th anniversary of the year in which the Participant commenced participation in the Plan; or (3) the date the Participant terminates service with the Employer.

However, for Plan Years beginning after August 5, 1997, the Administrator shall direct the earlier payment of the entire Vested portion of the Present Value of Accrued Benefit, but only if it does not exceed $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) and, if the distribution is made prior to October 17, 2000, has never exceeded $5,000 ($3,500 for Plan Years beginning prior to August 6, 1997) at the time of any prior distribution.

That portion of a Terminated Participant's Accrued Benefit that is forfeited shall be used only to reduce future costs of the Plan at such time as it becomes a forfeiture.

That portion of a Terminated Participant's Accrued Benefit that is not Vested shall become a forfeiture on the last day of the Plan Year in which the Participant incurs five (5) consecutive 1-Year Breaks in Service.

(b)    The Vested portion of any Participant's Accrued Benefit shall be a percentage of the Participant's Accrued Benefit determined on the basis of the Participant's number of Years of Service according to the following schedule:

Vesting Schedule

| Years of Service | Percentage |
| --- | --- |
| Less than 3 | 0 % |
| 3 | 100 % |

(c)    Notwithstanding the vesting schedule above, the Vested percentage of a Participant's Accrued Benefit shall not be less than the Vested percentage

DBP 000057