KENYON & KENYON PENSION PLAN

EFFECTIVE AS OF OCTOBER 1, 1989

9/25/90

DBP 000174

# TABLE OF CONTENTS

| ARTICLE | | PAGE |
|---|---|---|
| I | Definitions | 2 |
| II | Eligibility and Participation | 16 |
| III | Pension Benefits | 18 |
| IV | Vesting and Separation from Service | 23 |
| V | Payment of Retirement Pension | 26 |
| VI | Death Benefits | 30 |
| VII | Funding and Contributions | 33 |
| VIII | Administration | 35 |
| IX | Amendments and Termination | 39 |
| X | Restrictions on Distributions | 45 |
| XI | Miscellaneous Provisions | 48 |
| XII | Top-Heavy Provisions | 52 |

DBP 000175

# ARTICLE I

## DEFINITIONS

1.01    "Accrued Benefit" shall mean the annual pension benefit a Participant has earned as of any specified date based on the pension benefit formula set forth in Section 3.01. If an Eligible Employee waives his right to participate in the Plan effective as of any date, then he shall retain his Accrued Benefit earned prior to such date, but he shall accrue no benefits for the period during which the waiver is in effect. Notwithstanding the foregoing, if any waiver of participation takes effect at the date the Eligible Employee first becomes eligible to participate in the Plan in accordance with the provisions of Section 2.01, then he shall accrue no benefits for any period of employment that is prior to the effective date as of which such waiver is revoked.

If at any time, the Plan is a "Top Heavy Plan" as defined under Section 12.01, then the Accrued Benefit of any Participant shall not be less than is provided under Section 12.02.


1.02    "Actuarial Equivalent" shall mean the amount of pension benefit payable in accordance with a Plan provision which is equivalent in value to the amount of pension benefit payable under another stipulated Plan provision. Unless specifically indicated otherwise, any Actuarial Equivalent shall be determined using an 8% interest rate and the 1983 Group Annuity Mortality Table

2

DBP 000176

converted to a unisex basis at each age by averaging the male and female mortality rates at such age.

1.03     "Affiliated Organization" shall mean (i) any corporation on or after the date it becomes a member of a controlled group of corporations which includes the Employer determined under the provisions of Section 414(b) of the Code and (ii) any trade or business, whether or not incorporated, on or after the date it comes under control with the Employer, determined under Section 414(c) of the Code, and (iii) any organization which is part of an affiliated service organization with the Employer within the meaning of Section 414(m) of the Code, and any other entity required to be aggregated pursuant to regulations under Section 414(o) of the Code.

1.04     "Age" or "age" shall mean the chronological age attained by the Participant at his most recent birthday or as of such other date of reference as set forth in the Plan.

1.05     "Annuity Starting Date" shall mean (i) the first day of the first period for which an amount is payable as an annuity (whether by reason of retirement or disability) or (ii) in the case of a benefit not payable in the form of an annuity, the first day on which all events have occurred which entitle the Participant to such benefit.

3

DBP 000177

1.06      "Beneficiary" shall mean the person or persons named to receive any death benefits which may become payable under the Plan, and shall include any contingent beneficiary.  If the Participant has an Eligible Spouse, then such Eligible Spouse shall automatically be his Beneficiary, unless the Participant designates an alternate Beneficiary with the consent of the Eligible Spouse. If there is not an Eligible Spouse, any other beneficiary must be designated in writing on such form as the Plan Administrator may, from time to time, prescribe.

In the event that the Participant fails to designate a beneficiary to receive a benefit that becomes payable pursuant to the provisions of the Plan, or in the event that the Participant is predeceased by all designated primary and contingent Benefi- ciaries, the death benefit shall be payable to the Participant's estate.

1.07      "Code" shall mean the Internal Revenue Code of 1986 as the same presently exists, and as it may hereafter be amended or clarified by regulations, rulings, notices or other publications of the Internal Revenue Service having legal effect.

1.08      "Compensation" shall mean the total earnings of an Employee.  Compensation shall include overtime pay, bonuses and commissions, and any deferral of salary or earnings by a Participant which is contributed to a plan established in accordance with Sections 401(k) or 125 of the Code, but shall not

4

DBP 000178

include expense reimbursements or contributions to fringe benefit plans. For an Employee who is a partner of the Employer, Compensation shall be based on such partner's share of the earnings of the Employer as reported on Form K-1 (or any other equivalent form issued by the Employer), with such earnings reduced by any contributions, other than deferrals under Section 401(k) of the Code, by on behalf of such individual to any qualified retirement plan sponsored by the Employer, provided any such contribution is deducted on such partner's individual tax return. Notwithstanding the foregoing, Compensation shall not exceed $200,000, or such other maximum amount as may be permitted under the Code.

1.09    "Date of Hire" shall mean the first date on which an Employee has or had an Hour of Service.

1.10    "Deferred Retirement Date" shall mean the date of a Participant's actual retirement subsequent to his Normal Retirement Date.

1.11    "Earliest Retirement Date" shall mean the earliest date after the Effective Date that a Participant is eligible to retire at his Early or Normal Retirement Date and receive a pension benefit.

5

DBP 000179

1.12      "Early Retirement Date" means the first day of any month coinciding with or next following the date on which a Participant retires (prior to his Normal Retirement Date) after attaining his 55th birthday and completing at least ten (10) Years of Service with the Employer, and as of which his pension benefits commence to be paid.

1.13      "Effective Date" of the Plan shall mean October 1, 1989.

1.14      "Eligible Employee" shall mean any Employee of the Employer who is not an independent contractor or a leased employee, except such term shall not include any individual employed as an Associate or any other attorney who is not a partner of the Employer.

1.15      "Eligible Spouse" shall mean a spouse to whom a Participant has been married for at least one year immediately prior to the date his pension benefits are scheduled to commence or, solely for the purposes of Section 6.01 and 6.03, the date of his death.

1.16      "Employee" shall mean any employee or partner of the Employer.

1.17      "Employer" shall mean the law firm of Kenyon & Kenyon as it is constituted on the Effective Date or at any future date, and

6

DBP 000180

any successor entity thereto which adopts this Plan and joins in the corresponding Trust. The term "Employer" shall also include any other entity which, with the consent of the Employer, adopts this Plan and joins in the corresponding Trust. The term "Employer" shall not include any subsidiary or affiliate of the Employer, unless such subsidiary or affiliate is specifically designated an Employer in this Plan or subsequently adopts this Plan and joins in the corresponding Trust.

1.18    "Entry Date" shall mean October 1, 1989 and every April 1st and October 1st thereafter during which the Plan remains in effect.

1.19    "ERISA" shall mean the Employee Retirement Income Security Act of 1974 (P.L. 93-406), including all amendments thereto.

1.20    "Fund" or "Trust Fund" shall mean all of the assets of the Plan held by the Trustees (or any nominee thereof) at any time under the Trust Agreement. In the event that an annuity contract is in force under the Plan to hold some or all of the Plan's assets, then the terms "Fund" or "Trust Fund" shall include the annuity contract.

1.21    "Highly-Paid Employee" shall mean any Employee, who during the current or preceding Plan Year:

7

DBP 000181

(a) was at any time a 5% owner of the Employer or an Affiliated Organization; or

(b) received Compensation for such Plan Year in excess of $75,000 or such higher amount as is provided under Section 414(q) of the Code; or

(c) received Compensation for such Plan Year in excess of $50,000 or such higher amount as is provided under Section 414(q) of the Code, provided such Compensation exceeded that of 80% of all Employees for the applicable Plan Year; or

(d) was at any time an officer of the Employer or an Affiliated Organization, and received Compensation for such Plan Year in excess of $45,000 (or, if higher, 50% of the amount in effect under Section 415(b)(1)(A) of the Code for such year).

For each Plan Year for which a determination in accordance with the above paragraph is being made, any individual not described in sub-paragraph (b), (c) or (d) for the preceding Plan Year (without regard to this paragraph) shall not be treated as described in sub-paragraph (b), (c) or (d) for the current Plan Year unless such individual is among the one-hundred (100) highest paid Employees of the Employer for the current Plan Year.

In no event shall the number of officers taken into account under sub-paragraph (d) exceed the lesser of (i) fifty (50), and (ii) the greater of (A) three and (B) 10% of the total Employees. Furthermore, if no officer of the Employer or an

8

DBP 000182

Affiliated Organization is described in sub-paragraph (d) for a Plan Year, then the highest paid officer shall be treated as described in sub-paragraph (d) for such Plan Year.

The term "Highly-Paid Employee" shall include any highly-paid former Employee, which term shall mean an Employee who separated from service (or was deemed to have separated) prior to the determination year, performs no service for the Employer during the determination year, and was a Highly Paid Employee for either the separation year or any determination year ending on or after the Employee's 55th birthday.

To the extent required by Section 414 of the Code, Compensation of family members employed by the Employer shall be aggregated for purposes of determining Highly-Paid Employees. Furthermore, an Employee shall be excluded from the group of Highly-Paid Employees on account of his age, service, hours or employment classification as permitted under Section 414(q) of the Code.

Any other Employee shall be considered a Highly-Paid Employee if required in accordance with Section 414(q) of the Code.

1.22    "Hour(s) of Service shall mean the following:

(A) An Hour of Service is each hour for which an Employee is paid, or entitled to payment (including a future distribution of partnership earnings from the Employer) for the performance of duties for or on behalf of the Employer.

9

DBP 000183

(B)  An Hour of Service is each hour for which an Employee is paid or entitled to payment (either directly or indirectly) by the Employer on account of a period of time during which no duties are performed (irrespective of whether the employment relationship has terminated) due to vacation, holiday, illness, incapacity (including disability), layoff, jury duty, military duty or leave of absence.  Notwithstanding the preceding sentence:

(i)  No more than 501 Hours of Service shall be credited under this paragraph (B) on account of any single continuous period during which the Employee performs no duties whether or not such period occurs in a single Plan Year, except as the following provisions may result in a credit of more than 501 Hours of Service:

(a)  If an Employee receives full pay during any authorized leave of absence, and he returns to work after such absence, he shall be credited with an Hour of Service for each hour for which he was paid.

(b)  An Employee will be credited with Hours of Service for purposes of determining his eligibility and vested rights (but not for purposes of determining his Accrued Benefit) during any period of employment with the Employer in an employment

10

DBP 000184

classification which is ineligible to participate in the Plan.

(ii) An hour worked at overtime or premium pay will count as only one Hour of Service under the Plan.

(iii) An hour for which an Employee is directly or indirectly paid, or entitled to payment, on account of a period during which no duties are performed, is not required to be credited to the Employee if such payment is made or due under a plan maintained solely for the purpose of complying with applicable worker's compensation, unemployment compensation or disability insurance laws.

(iv) Hours of Service shall not be credited for a payment which solely reimburses an Employee for medical or medically related expenses incurred by the Employee.

(3) An Hour of Service is each hour for which back pay, irrespective of mitigation of damages, is either awarded or agreed to by the Employer. The same Hours of Service shall not be credited both under paragraph (1) or paragraph (2), as the case may be, and under this paragraph (3). Crediting of Hours of Service for back pay awarded shall be subject to the limitations set forth in paragraph (1) or (2), as appropriate.

11

DBP 000185

(4) An Hour of Service shall also be credited for reasons other than the performance of duties in accordance with Department of Labor Regulation, Section 2530.200b-2(b). Further, the computation periods used for purposes of crediting Hours of Service shall be in accordance with Department of Labor Regulation, Section 2530.200b-2(c).

1.23    "Named Fiduciary" shall mean the Employer, the Trustees and the Plan Administrator. Each Named Fiduciary shall have only those particular powers, duties, responsibilities and obligations as are specifically given him under this Plan and/or Trust Agreement.

1.24    "Normal Retirement Date" shall mean the later of (i) the date on which the Employee attains Age 65, and (ii) the fifth (5th) anniversary of the first date on which the Employee is a Participant in the Plan.

1.25    "Participant" shall mean any person who is accruing or receiving benefits under the Plan or who is eligible to receive benefits at a future date. The term "Participant" shall include Active Participants (those who are currently accruing benefits under the Plan), Retired Participants (those former Employees who are currently receiving benefits from the Plan), Terminated Vested Participants (former Employees who have terminated after having met the Plans vesting requirements under Article IV and who have a

12

DBP 000186

right at some future date to the distribution of benefits under this Plan) and Inactive Participants (former Participants who are not Terminated Vested Participants, but who continue to be employed by an Employer in a non-covered class, or in the service of an Affiliated Organization, or who have waived their right to participate in the Plan).

1.26    "Past Service Compensation" shall, for an Eligible Employee participating in the Plan as of the Effective Date, mean the average annual Compensation of a Participant for the three (3) year period ending on the Effective Date, or such shorter period during which the Employee was actually employed.

1.27    "Plan" shall mean the Kenyon & Kenyon Pension Plan as set forth herein, and as the same may from time to time hereinafter be amended.

1.28    "Plan Administrator" or "Administrator" shall mean the Employer.

1.29    "Plan Year" shall mean the twelve month period which ends each September 30th.

1.30    "Trust Agreement" shall mean the Kenyon & Kenyon Pension Trust Agreement established in conjunction with the Plan.

DBP 000187

1.31      "Trustee" or "Trustees" shall mean the party or parties so designated pursuant to the Trust Agreement.

1.32      "Year of Service" shall mean the following:

(a) For purposes of determining an Employee's eligibility for initial participation, a Year of Service is credited for any twelve (12) month period commencing on the Employee's Date of Hire and each anniversary thereof in which an Employee has at least one thousand (1,000) Hours of Service.

(b) For purposes of determining an Employee's vested percentage in his Accrued Benefit under Section 4.01, Early Retirement under Section 1.12, or eligibility for a death benefit under Sections 6.01 and 6.02, a Year of Service is credited for any Plan Year during which an Employee has at least one thousand (1,000) Hours of Service.

(c) For purposes of calculating an Employee's Accrued Benefit, a Year of Service is credited for any Plan Year in which an Employee has or had met the eligibility requirements under Sections 2.01 with respect to age and service for participation in the Plan, and provided that such Employee has or had at least one thousand (1,000) Hours of Service during such Plan Year. Notwithstanding the foregoing, Years of Service shall not be credited under this sub-paragraph for any period during which a waiver of participation is in effect or is applicable for any Eligible Employee.

14

DBP 000188

For all purposes under the Plan, all Years of Service shall be counted, regardless if such years are continuous, and an Employee shall not lose credit for any Years of Service as a result of any break in service.

DBP 000189

ARTICLE II

ELIGIBILITY AND PARTICIPATION

2.01     Initial Eligibility.

Each Eligible Employee who is employed as of the date of adoption of the Plan or as of any subsequent date shall become a Participant on the Entry Date coincident with or next following the date on which he has or had both attained age twenty-one (21) and completed one (1) Year of Service.

Any Eligible Employee may waive his right to participate in the Plan effective as of the first date on which he is eligible to participate in the Plan, or as of any subsequent October 1st, provided that the appropriate waiver form is executed and filed with the Plan Administrator prior to its effect.  Any waiver by an Employee of his right to participate in the Plan shall remain in effect until the later of (i) the October 1st following the date that the waiver is revoked by the Employee by executing and filing the appropriate form with the Plan Administrator, and (ii) the October 1st coincident with or next following any minimum period of time that the Plan Administrator has determined that all waiver elections shall remain in effect.

2.02     Plan Participation.

Each Employee who becomes eligible to participate in this Plan shall complete such forms and provide such data as are reasonably required by the Plan Administrator as a precondition to

16

DBP 000190

such participation.    An Eligible Employee who has met all requirements to participate in the Plan shall automatically become a Participant, unless he has waived his right to participate.

2.03    <u>Re-employment</u>.

In the event a Participant ceases to be an Employee and subsequently again becomes an Employee, he shall be readmitted as an Active Participant on the date of his reemployment or, if later, the date he again becomes an Eligible Employee.

2.04    <u>Change in Status</u>.

In the event that an individual who has been in the employ of the Employer in a category of employment not eligible for participation in this Plan subsequently becomes an Eligible Employee by reason of change in status to a category of employment eligible for participation, he shall become a Participant on the date he becomes an Eligible Employee, unless he waives his right to participate in the Plan.

17

DBP 000191

# ARTICLE III

## PENSION BENEFITS

3.01    Normal Retirement Benefit.

Each Participant shall be entitled to receive an annual pension, payable monthly, commencing on the first day of the month coincident with or next following his Normal Retirement Date equal to the sum of his Past Service and Future Service benefits.

(a)    Past Service Benefit - An amount equal to 0.65% of a Participant's Past Service Compensation multiplied by his Years of Service prior to the Effective Date. For an Employee who is not a Highly-Paid Employee as of the Effective Date, the Past Service Benefit shall be his Accrued Benefit as of the such Date. For an Employee who is a Highly-Paid Employee as of the Effective Date, there shall be no Accrued Benefit as of the such Date, and the Past Service Benefit shall be accrued at a rate of one-tenth (1/10th) for each of the first ten (10) Plan Years that such Employee participates in the Plan.

(b)    Future Service Benefit - An amount credited for each Plan Year during which a Participant has a Year of Service equal to 0.65% of the Participant's Compensation for the immediately preceding Plan Year. Notwithstanding the foregoing, for the last Plan Year during which a Participant participates in the Plan,

18

DBP 000192

he shall receive the benefit described in the preceding sentence regardless of whether he is credited with a Year of Service for such Plan Year.

If an Employee becomes an Eligible Employee as a result of a change in his employment classification and provided he does not waive his right to participate in the Plan, his benefit as of the Entry Date on which he first participates in the Plan shall be determined in accordance with this Section as though he had been an Eligible Employee from his Date of Hire. If such Employee is not a Highly-Paid Employee as of the initial Entry Date of his participation, such benefit shall be his Accrued Benefit as of such Date. If such Employee is a Highly-Paid Employee on such Date, he shall accrue such benefit at a rate of one-tenth (1/10th) for each of the first ten (10) Plan Years that such Employee participates in the Plan.

3.02    **Early Retirement Benefit.**

If an Active Participant retires on or after his Earliest Retirement Date, but prior to his Normal Retirement Date, he shall receive a pension benefit commencing on his Normal Retirement Date equal to his Accrued Benefit. The Employee may elect that his pension benefit commence as of his Early Retirement Date, in which event the amount of his pension benefit shall be reduced to the Actuarial Equivalent of the benefit he would have received commencing at his Normal Retirement Date. In no event shall a benefit payable to a Participant at retirement be less than it

19

DBP 000193

would have been had be retired at any preceding date which was on
or after his Earliest Retirement Date.

3.03    <u>Deferred Retirement Benefits</u>.

Should an Employee continue in employment after his Normal
Retirement Date, the amount of pension benefit he receives at his
actual retirement date shall be equal to the Accrued Benefit at his
actual retirement date, determined in accordance with Section 3.01
but based on all Years of Service to his actual retirement date.

A Participant shall be deemed to be retired if after he
attains his Normal Retirement date he continues to perform services
for the Employer or receives payment for vacation, holiday,
illness, incapacity including disability, layoff, jury duty,
military duty or leave of absence for less than forty (40) hours
of employment in any calendar month. A Participant who is deemed
to be retired under the provisions of the preceding sentence shall
be considered to have commenced (or continued) his retirement on
the first day of the calendar month in which such Participant
received remuneration for less than 40 hours of employment or was
reemployed after attainment of age 65.

A Participant, regardless of whether he has actually
retired, shall commence to receive pension benefit payments no
later than the April 1st following the calendar year in which he
reaches age 70 1/2. Notwithstanding the preceding sentence, if a
Participant continues in employment after his pension benefit
commences he shall continue to accrue pension benefits as provided

20

DBP 000194

under this Article, which benefits shall commence to be paid as of the April 1st following the calendar year in which they are earned.

3.04    Maximum Benefits

In addition to any other limitation set forth in the Plan and notwithstanding any other provisions of the Plan, pension benefits payable under the Plan shall not exceed the amount permitted under Section 415 of the Code, all provisions of which Section are hereby incorporated in the Plan by reference. In determining compliance with Code Section 415, annual additions under any defined contribution plan maintained by the Employer shall be taken into account. The term "annual addition" shall include all reallocated forfeitures and employee contributions to a plan. For purposes of this paragraph and determining compliance with Section 415, compensation shall mean compensation as defined in section 415(c)(3) of the Code.

If the total annual additions and/or benefits payable for any Participant exceed the amount under the foregoing paragraph, then benefits payable to the Participant under this Plan shall be reduced until such excess is eliminated.

The "limitation year", for purposes of Section 415, shall be the Plan Year.

21

DBP 000195

3.05    Return to Service; Re-retirement

A Retired Participant who again becomes an Employee shall have his monthly pension terminated and at the time of his subsequent retirement under this Article, the amount of his pension benefit shall be based on all Years of Service and shall be reduced by the Actuarial Equivalent value of all prior benefits received.

3.06    Benefit Commencement

Pension benefits payable to any Participant must commence no later than the April 1st following the calendar year in which the Participant attains age 70 1/2.  Pension benefits shall be payable over a period equal to (i) the life of the Participant, (ii) the lives of the Participant and his spouse or his other named Beneficiary, if any, (iii) a fixed period not extending beyond the life expectancy of the Participant, or (iv) a fixed period not extending beyond the joint life expectancy of the Participant and his spouse or other named Beneficiary, if any.

3.07    Restriction on Benefit Reduction.

In no event shall the pension benefit of any Participant determined under this Article or any other Article of the Plan be reduced subsequent to his termination of employment as a result of a change in the Social Security Wage Base or Social Security benefits.

22

DBP 000196

# ARTICLE IV

## VESTING AND SEPARATION FROM SERVICE

4.01    **Vesting of Benefits.**

A Participant who has completed three (3) Years of Service shall have a 100% vested interest in his Accrued Benefit. A Participant who has not completed three (3) Years of Service is not vested in his Accrued Benefit. If a Participant terminates employment prior to his Accrued Benefit becoming vested, such benefit shall be forfeited.

4.02    **Payment of Vested Benefits**

Subject to the provisions of Article V hereof, a Vested Participant shall receive a monthly pension benefit commencing on the first day of the month coincident with or next following the Participant's Normal Retirement Date. A vested Participant who has at least ten (10) Years of Service may elect that the payment of his vested benefit commence as of the first day of any month coincident with or next following the date on which he attains Age 55, in which event the amount of the benefit shall be the Actuarial Equivalent of the amount payable at Normal Retirement Date.

If a Terminated Vested Participant has not commenced receiving his pension benefit as of the April 1st following his attainment of Age 70 1/2, then he shall commence, as of such date, receiving a pension equal to the Actuarial Equivalent of his vested

23

DBP 000197

Accrued Benefit determined as of January 1st of the year in which Age 70 1/2 is attained.

4.03    Distributions and Restoration Contributions

Should a Participant who is not vested under section 4.01 terminate employment, he shall cease to be a Participant (unless reemployed) and such Employee shall be deemed to have received a full distribution of such 0% vested Accrued Benefit.

If a terminated Participant who was not vested and was deemed to have received a distribution under this Section 4.03 is subsequently reemployed by the Employer, any amount forfeited shall be reinstated.

Any terminated or Inactive Participant who once again becomes an Active Participant and who has previously received a distribution of his vested Accrued Benefit attributable to his prior participation in this Plan may restore to the Trustee the distribution he previously received.  In order to reinstate his full Accrued Benefit and benefit rights, a reemployed Participant must repay the full amount of the distribution, with interest thereon at five percent (5%) per annum prior to the earlier of (i) the fifth anniversary of the date such Participant is reemployed and (ii) five consecutive Plan Years after the distribution where such Participant has completed less than 500 hours in each such Plan Year.  Any Participant who fails to make his restoration con-tribution within such time period shall waive his right to the

24

DBP 000198

portion of his Accrued Benefit which was not vested when he received his distribution.

25

DBP 000199

ARTICLE V

## PAYMENT OF RETIREMENT PENSION

5.01     <u>Participation Without Eligible Spouse</u>.

Subject to the provisions of Sections 5.03 and 5.04, the payment of the pension to a Retired Participant who has no Eligible Spouse at the time of his retirement shall be in equal monthly installments commencing on the first day of the month coincident with or next following the date of his retirement, and continuing until the date of his death.

5.02     <u>Participant with Eligible Spouse</u>

This Section shall apply to any pension payable under the Plan to a Participant who has an Eligible Spouse at the time of his retirement.    If on the date on which a Participant's pension payments commence the Participant has an Eligible Spouse, the Actuarial Equivalent value of his pension shall be paid in equal monthly installments in the form of a joint and survivor annuity (generally referred to herein as the "Automatic Joint and Survivor Annuity").

Under the Automatic Joint and Survivor Annuity, the retirement pension shall be paid to the Participant for his lifetime, and the Eligible Spouse, if surviving at the Participant's death, shall be entitled to receive thereafter a lifetime pension benefit equal to 50% of the monthly amount that had been payable to the Participant.    The last payment of the

26

DBP 000200

Automatic Joint and Survivor Annuity shall be made as of the first day of the month in which the death of the last survivor of the Participant and his Eligible Spouse has occurred.

If a Retired Participant remarries after the death of or divorce from his Eligible Spouse, his new spouse shall not be entitled to receive any payments under the Automatic Joint and Survivor Annuity, as described in this Section.

A Participant shall be provided with a written explanation of, and be given the opportunity to decline, the Automatic Joint and Survivor Annuity, and to elect a benefit under Section 5.01, 5.03 or 5.04. Such option to decline shall be permitted to be exercised at any time during a period which commences ninety (90) days prior to the Participant's Annuity Starting Date. A Participant may revoke an election to decline the Automatic Joint and Survivor Annuity or elect again to decline the Automatic Joint and Survivor Annuity at any time and any number of times within the 90 day period ending on the Annuity Starting Date. No election to decline the Automatic Joint and Survivor shall be effective unless the Participant's Eligible Spouse consents in writing to such election, (including the name of an alternate beneficiary, if applicable) which written consent is attested to by a notary public, or by the Plan Administrator or its representative. An alternate beneficiary may not be subsequently named or changed without the Eligible Spouse's notarized written consent. The Plan Administrator may accept such certification from the Employee evidencing that he has no Eligible Spouse as is deemed appropriate.

DBP 000201

5.03    <u>Ten Year Certain and Continuous</u>.

A Participant may elect to receive a reduced pension in an Actuarial Equivalent amount which is payable for the lifetime of the Participant with a guarantee that at least one-hundred twenty (120) monthly payments will be made to the Participant or his named Beneficiary.  Such election must be made prior to the Participant's Annuity Starting Date.


5.04    <u>Lump Sum Payment</u>.

If the single lump sum value of a terminating or retiring Participant's vested Accrued Benefit, as determined below, is less than or equal to $3,500, then the Plan Administrator, in its sole discretion, may elect to make a single lump sum payment of the benefit, without any requirement of the consent of such Participant or his Eligible Spouse.

A Participant who has attained Age 55, and has ten (10) Years of Service at the time of his termination of employment, may elect to receive a single lump sum payment of his Accrued Benefit.

The amount of any lump benefit payable under the Plan shall be equal to the greatest of (a), (b) and (c) below:

(a)    The lesser of (i) and (ii):

i)    The actuarial equivalent value of the Participant's Accrued Benefit based on the interest rates promulgated by the PBGC, and the 1983 Group Annuity Mortality Table; and

ii)    $25,000.

DBP 000202

(b) The actuarial equivalent value of the Participant's Accrued Benefit calculated as in (a)(i) above, but using interest rates equal to 120% of the rates promulgated by the PBGC.

(c) The Actuarial Equivalent value of the Participant's Accrued Benefit determined in accordance with Section 1.02.

A lump sum payment shall not be permitted for a Participant who has commenced receiving retirement benefits in the form of an annuity.

5.04    <u>Applicability</u>.

No optional election made under this Article V shall be in effect until retirement benefits have commenced pursuant to a Participant's actual retirement.

29

DBP 000203

# ARTICLE VI

## DEATH BENEFITS

**6.01**    <u>Pre-Retirement Death Benefit</u>.

In the event of the death of an Active Participant after he has completed three (3) Years of Service, his Beneficiary shall receive the pension benefit which can be provided by the Actuarial Equivalent value of the Participant's Accrued Benefit.    If the Participant has less than three (3) Years of Service, no death benefit shall be payable.

The pension benefit payable in accordance with this Section shall be paid as a monthly annuity over a fixed period not be exceed the life expectancy of the Participant's named Beneficiary. Notwithstanding the foregoing, the Beneficiary may elect to receive the benefit provided under this Section in a single lump sum payment determined in accordance with Section 5.04.

Any benefit payable under this Section shall be reduced by the Actuarial Equivalent value of any benefit payable under Section 6.02.

**6.02**    <u>Spouse's Death Benefit</u>.

In the event of the death of an Active Participant after he has completed three (3) Years of Service, the Participant's Eligible Spouse, if any, shall receive a pension benefit commencing as of the later of (a) the Participant's Earliest Retirement Date and (ii) the first day of the month following the date of the

30

DBP 000204

Participant' death, equal to the amount the Eligible Spouse would have received had the Participant terminated employment on the date of his death, survived to the pension commencement date described in the preceding sentence, and died immediately thereafter with an Automatic Joint and Survivor Annuity in effect.  A Participant may elect to decline the spouse's death benefit described in this Section, provided his Eligible Spouse consents in writing to such election, and to the designation of the Beneficiary named to receive the benefit described in Section 6.01, and such consent is attested to by a notary public, or by the Plan Administrator or its representative.  A Participant who has declined the spouse's death benefit with the consent of his Eligible Spouse, may not subsequently change his Beneficiary designated to receive the benefit described in Section 6.01 without again obtaining the written consent of his Eligible Spouse to his declining the benefit set forth in this Section, attested to by a notary public, or by the Plan Administrator or its representative.

A Participant shall be provided with a written explanation of the Spouse's death benefit and the opportunity to decline such benefit within the applicable period described below which ends last.

> (a)  The period beginning with the Plan Year in which the Participant attains Age 32 and ending with the close of the Plan Year occurring immediately before he attains Age 35.

31

DBP 000205

(b)  The Plan Year after an Employee becomes a
     Participant.

(c)  For a Participant who terminated employment
     before Age 35, the Plan Year after he terminates
     employment.

6.03    Deferred Vested Death Benefit

If a Terminated Vested Participant dies prior to the
commencement of his pension benefit, then his Eligible Spouse shall
receive a pension benefit commencing on the later of (i) the
Participant's Earliest Retirement Date and (ii) the first day of
the month following the Participant's death.  The amount of such
pension benefit shall be equal to the amount the Eligible Spouse
would have received had the Participant survived to the pension
commencement date, and died immediately thereafter with an
Automatic Joint and Survivor benefit in effect, but based on the
Participant's Accrued Benefit at the date of his death.

6.04    Post-Retirement Death Benefit.

Upon the death of any Retired Participant who, at the time
of his death, is receiving benefits under a benefit form providing
period certain or guaranteed survivor's benefits, or other similar
provisions, there shall be paid such death benefits as are provided
pursuant to such benefit form.

32

DBP 000206

ARTICLE VII

FUNDING

7.01    Employer Contributions.

The Employer shall contribute such amounts as are certified by the Enrolled Actuary for the Plan as necessary in order to satisfy the funding standards established under ERISA, as from time to time amended. Further, the Employer shall have the right, but not the obligation, to contribute such additional amounts as it, in its sole discretion, deems necessary or desirable. All Employer contributions shall be paid to the Trustees or, if applicable, the insurer named under the annuity contract. All forfeitures shall be applied to reduce future contributions to the Plan.

The Employer shall pay its contribution made with respect to any Plan Year to the Trustees on or before the dates required by applicable law.

7.02    Exclusive Benefit; Refund of Contribution.

Except as provided in Article IX and paragraphs (a), (b) and (c) of this Section, and notwithstanding any other provision of this Plan or of the Trust Agreement, the Employer irrevocably divests itself of any interest or reversion whatsoever in any sums contributed by it to the Trust Fund, and it shall be impossible for any portion of the Trust to be used for, or diverted to, any purpose other than the exclusive benefit of Participants or their Beneficiaries.

33

DBP 000207

(a)  If a contribution by the Employer is conditioned upon initial qualification of the Plan or any amendment thereto under Section 4.01 of the Code, and the Plan or amendment does not so qualify, the contribution shall be returned to the Employer within one year of the date of denial of such qualification.

(b)  If a contribution made by the Employer is based upon a mistake of fact, the contribution shall be returned to the Employer within one year after the payment of the contribution.

(c)  If a contribution by the Employer which is intended to be deductible for Federal income tax purposes is determined to not be deductible and part or all of the deduction is disallowed, the contribution, to the extent disallowed, may be returned to the Employer within one year after the disallowance of the deduction.

7.04    Participant Contributions.

No Participant shall be required or permitted to make any contribution to the Plan, nor shall any rollover contribution from any Individual Retirement Account or other qualified plan be permitted.

34

DBP 000208

## ARTICLE VIII

## ADMINISTRATION

8.01     Plan Administrator.

The Plan shall be administered by the Employer in accordance with its provisions and for purposes of such Plan administration the Employer is hereby deemed to be Plan Administrator within the meaning of ERISA.  All aspects of Plan administration shall be the responsibility of the Plan Administrator except those specifically delegated to the Trustees or other parties in accordance with provisions of the Trust Agreement or, if applicable, annuity contract.

8.02     Administration Procedures.

The Administrator shall have discretionary authority based on a reasonable interpretation of the Plan to determine the eligibility for benefits and the benefits payable under the Plan and shall have the right to make such rules as may be necessary for the administration of the Plan.  The Administrator may require participants to apply in writing for benefits hereunder and to furnish satisfactory evidence of their date of birth and such other information as may from time to time be deemed necessary.  The Plan Administrator shall appoint the Trustees, Investment Managers, or any other professional advisors as he, in his sole discretion, deems necessary or appropriate.

35

DBP 000209

8.03    <u>Other Plan Administrator</u>.

Anything to the contrary notwithstanding, the Plan Administrator may appoint a committee or an individual or individuals, whether or not employed by the Employer, to carry out the duties of the Plan Administrator. Such duties may include, but are not limited to determining the eligibility of any Employee for any benefits and the amount of such benefits under this Plan, maintaining custody of all documents and elections made by a Participant, directing the investment of any payments made by a Employer within any limits which may be imposed by the Employer and retaining suitable agents and advisors. Any committee or individual shall be considered an agent of the Plan Administrator with respect to the Plan and shall be indemnified by the Employer against any and all claims, loss, damages, expense and liability arising from any action or failure to act, except when the same is finally judicially determined to be due to the gross negligence or willful misconduct of such individual or member of a committee.


8.04    <u>Claim Procedures</u>.

(a)    If a Participant or Beneficiary (hereinafter referred to as "Claimant") is denied any benefits under this Plan, either partially or in total, the Plan Administrator shall advise the Claimant of the method of computation of his benefit and the specific reason for the denial. The Administrator shall also furnish the Claimant at that time with:

DBP 000210

(i)    a    specific    reference    to    pertinent    Plan

provisions,

(ii)    a    description    of    any    additional    material    or

information    needed,    and

(iii)    an    explanation    of    the    Plan's    claim    review

procedure.

(b)    Within 60 days of receipt of the information stated

in (a) above, the Claimant shall, if he desires further revue, file

a written request for reconsideration with the Administrator.

(c)    So    long    as    the    Claimant's    request    for    review    is

pending (including the 60 day period in (b) above), the Claimant

or his duly authorized representative may review pertinent Plan

documents and may submit issues and comments in writing to the

Administrator.

(d)    A    final    and    binding    decision    shall    be    made    by    the

Administrator within 60 days of the filing by the Claimant of his

request    for    reconsideration,    provided,    however,    that    if    the

Administrator, in its' discretion, believes that a hearing with the

Claimant or his representative present is necessary or desirable,

this period shall be extended an additional 60 days.

(e)    The Administrator's decision shall be conveyed to the

Claimant in writing and shall include specific reasons for the

decision, written in a manner calculated to be understood by the

Claimant, with specific references to the pertinent Plan provisions

on which the decision is based.

DBP 000211

8.05     <u>Plan Expenses</u>.

Any expenses related to the operation of the Plan shall be paid by the Plan unless the Employer elects to pay such expenses.

DBP 000212

ARTICLE IX

AMENDMENTS AND TERMINATION

9.01    Right to Amend.

The Employer may amend this Plan at any time and from time to time, provided that the Plan, as amended, shall remain for the exclusive benefit of the Employees and their beneficiaries, and further provided that no such amendment shall deprive a Participant of an already vested interest unless required by law.

9.02    No Reversion.

No assets of the Fund shall revert to the Company, except as may be provided under Section 7.02 and Section 9.04.

9.03    Employer's Right to Terminate.

(a)  The Employer expects to continue this Plan and the corresponding Trust indefinitely but reserves the right to terminate either or both at any time without the consent of any Participant or Beneficiary hereunder. Any such termination shall be effected by an instrument in writing executed by the Employer.

(b)  In addition to the termination in the manner provided for under Section 9.03(a), the bankruptcy, insolvency or dissolution of the business carried on by the Employer shall be deemed to have automatically caused the termination of this Plan, effective as of the expiration of a 30 day period after the date of bankruptcy, insolvency or dissolution, unless positive action

39

DBP 000213

to the contrary has been taken in such period by a party holding authority to do so.

(c)  In the event of termination or partial termination of this Plan, all affected Participants hereunder shall be fully vested in their Accrued Benefits as of the date of termination or partial termination.


9.04    <u>Procedure for Termination</u>.

(a)  After notice by the Administrator to the Pension Benefit Guaranty Corporation that this Plan is to be terminated and upon receipt by the Administrator of a notice from said corporation that the assets held under the Trust are sufficient to discharge when due all obligations hereunder with respect to the basic benefits (meaning benefits under the Plan guaranteed by the Pension Benefit Guaranty Corporation at the time of Plan termination) of Plan Participants, or after said corporation has notified the Administrator that the Plan should be terminated and has applied for and been granted a decree by the United States District Court for the Employer's district adjudicating that this Plan must be terminated, the Administrator or trustee appointed by the aforesaid court pursuant to said corporation's application shall allocate the assets of the Trust in accordance with Section 4044 of ERISA for the purposes set forth below and in the order set forth below, to the extent that the assets are available to provide benefits to Participants and their beneficiaries.

DBP 000214

(b) The Plan Administrator or Trustee shall make the allocation referred to above as follows, except that benefits payable to any Highly-Paid Employee shall be limited to an amount that is non-discriminatory under Section 401(a)(4) of the Code:

FIRST, to that portion of each individual's Accrued Benefit which is derived from the Participant's contributions to the Plan which were not mandatory contributions, if any. Contributions of "cashed-out" amounts with interest, when made to restore benefits or credits, shall not be considered "Participant's Contributions" for the purposes hereof.

SECOND, to that portion of each individual's Accrued Benefit which is derived from the Participant's mandatory contributions, if any.

THIRD, in the case of benefits payable as an annuity:

(i)  In the case of the benefit of a Participant or beneficiary which was in pay status as of the beginning of the three-year period ending on the termination date of the Plan, to each such benefit, based on the provisions of the plan (as in effect during the five year period ending on such date) under which such benefit would be the least;

(ii) In the case of a Participant's or beneficiary's benefit (other than a benefit described in (i) above) which would have been in pay status as of the beginning of such three-year period if the

41

DBP 000215

Participant had retired prior to the beginning of the three-year period and if his benefit had commenced (in the normal form of annuity under the Plan), as of the beginning of such period, to each such benefit based on the provisions of the Plan (as in effect during the five-year period ending on such date) under which such benefit would be the least.

For the purposes of (i) above, the lowest benefit in pay status during a three-year period shall be considered the benefit in pay status for such period.

FOURTH, to all other benefits (if any) of individuals under the Plan guaranteed under the termination insurance provisions of ERISA.

FIFTH, to all other nonforfeitable benefits under the Plan.

SIXTH, to all other benefits under the plan.

(2)  If the assets available for allocation under any priority category are insufficient to satisfy in full the benefits of all individuals within such category, the assets shall be allocated pro-rata among such individuals on the basis of the present value (as of the termination date) of their respective benefits.

(3)  Nothing contained herein shall preclude the Employer from amending the Plan effective immediately prior to its termination to increase the Accrued Benefits of Participants,

42

DBP 000216

provided that any such amendment (i) does not result in the failure of any benefit under the Plan to the paid from the assets of the Plan which would have been paid had such amendment not been made, (ii) does not result in a benefit being payable to any Highly-Paid Employee that is discriminatory under Section 401(a)(4) of the Code, and (iii) is not prohibited under the Code or any other applicable law, regulation, notice or similar pronouncement having legal effect.

(4)   Any residual assets of the Plan remaining after distribution in accordance with paragraphs (1) and (3) shall be distributed to the Employer provided:

(i)   All liabilities of the Plan to Participants and their beneficiaries representing the value of their Accrued Benefits have been satisfied as certified by the Enrolled Actuary for the Plan; and

(ii)  The distribution does not contravene any provisions of law.

9.05    <u>Limitation on Benefits</u>.

All allocations required by this Article IX shall be subject to the terms and limitations of Article III hereof.

9.06    <u>Continuance of Trust</u>.

The Administrator may, upon Plan termination, either distribute benefits and terminate the Trust or continue the Trust

43

DBP 000217

for the purpose of providing the benefits herein and therein contemplated.

9.07    <u>Nontransferability of Contracts</u>.

Any annuity contract issued hereunder shall be endorsed nontransferable.

9.08    <u>Mergers and Consolidations of Plans</u>.

In the event of any merger or consolidation with, or transfer of assets or liabilities to, any other plan, each Participant shall have a normal retirement benefit in the surviving or transferee plan (determined as if such plan were then terminated immediately after such merger, etc.) that is equal to or greater than the normal retirement benefit he would have been entitled to receive immediately before such merger, etc., in the Plan in which he was then a Participant (had such Plan been terminated at that time). For the purposes hereof, former Participants and beneficiaries shall be considered participants.

44

DBP 000218

ARTICLE X

RESTRICTIONS ON DISTRIBUTIONS

10.01    Applicability.

Notwithstanding any other provision of this Plan, this Article X shall apply to any Participant who is a Highly-Paid Employee and is among the twenty-five (25) highest paid such employees of the Employer at the time that benefit payments are scheduled to commence for such Participant.

10.02    Restrictions on Distributions.

The annual benefit payments under the Plan to any Employee to which this Article applies shall be restricted to an amount equal to the payments that would be made on behalf of the Employee under a single life annuity payment form, unless such Employee posts security to lift the restriction as provided under Section 10.03. However, the preceding sentence shall not apply if (i) immediately after the payment of any benefit otherwise due to, or elected by, the Employee, the value of Plan assets exceeds 110% of the value of the Plan's current liabilities, or (ii) immediately prior to the payment of any benefit due to, or elected by, the Employee, the actuarial present value of all benefits payable to the Employee under the Plan is less than 1% of the value of the Plan's current liabilities. For purposes of this Section, the Plan's current liabilities shall be determined in accordance with Section 412 (1)(7) of the Code.

45

DBP 000219

10.03    <u>Posting of Security</u>.

A Participant who is subject to the restriction set forth in Section 10.02 may lift such restriction if, and to the extent, permitted by the Plan Administrator and applicable rules (as set forth in rulings, regulations, notices or other publications having legal effect of the Internal Revenue Service, its representative or any other authorized regulatory agency).  In order to lift the restriction, the Employee must post security with the Employer or the Employer's designated agent with respect to the amount of benefit distribution due to, or elected by, him that is in excess of the unrestricted distributable amount.  The security posted shall be in the form of an escrow account, a performance bond, a letter of credit, the assignment of an interest in the portion of an Individual Retirement Account or any other form acceptable to the Plan Administrator and permitted under applicable rules. Expenses related to the posting of security shall not be borne by the Plan.  Any security posted shall be released by the Employer or its agent at such time as the full distribution to the Employee could have been made in accordance with the rules under Section 10.02, or at such time that the Plan is terminated with sufficient assets to pay all benefits due to all Plan Participants.  If the Plan is terminated without sufficient assets to pay all benefits due to all Participants, then the Plan or its agent shall exercise its rights under any security arrangement established in accordance with this Section to transfer sufficient funds to the Plan in order to pay Plan benefits to Participants (including, if applicable, any

46

DBP 000220

Participants who posted security in accordance with this Section)

in accordance with applicable law.

47

DBP 000221

## ARTICLE XI

## MISCELLANEOUS PROVISIONS

11.01    <u>Non-Alienation of Benefits</u>.

None of the payments, benefits or rights of any Participant or beneficiary shall be subject to any claim or any creditor, and in particular, to the fullest extent permitted by law, all such payments, benefits and rights shall be free from attachment, garnishment, or any other legal or equitable process available to any creditor of such Participant or beneficiary.  Notwithstanding the foregoing, the Plan Administrator shall assign or recognize an alternate payee with respect to a Participant's benefit, as may be required in accordance with a Qualified Domestic Relations Order, as such term is defined and such action by the Plan Administrator may be required under Section 414 of the Code.  No Participant or beneficiary shall have the right to alienate, anticipate, commute, pledge, encumber or assign any of the benefits or payments which he may expect to receive, contingently or otherwise, under this Plan, except the right to designate a beneficiary or beneficiaries as herein above provided.

11.02    <u>No Contract of Employment</u>.

Neither the establishment of the Plan, nor any modification thereof, nor the creation of any fund, trust or account, nor the payment of any benefits shall be construed as giving any Participant or Employee, or any person whomsoever, the right to be

48

DBP 000222

retained in the service of the Company and all Participants and other Employees shall remain subject to discharge to the same extent as if the Plan had never been adopted.

11.03   <u>Severability of Provisions</u>.

If any provision of this Plan shall be held invalid or unenforceable, such invalidity or unenforceability shall not affect any other provisions hereof, and this Plan shall be construed and enforced as if such provisions had not been included.

11.04   <u>Heirs, Assigns and Personal Representatives</u>.

This Plan shall be binding upon the heirs, executors, administrators, successors and assigns of the parties, including each Participant and beneficiary, present and future.

11.05   <u>Headings and Captions</u>.

The headings and captions herein are provided for reference and convenience only, shall not be considered part of the Plan, and shall not be employed in the construction of the Plan.

11.06   <u>Gender and Number</u>.

Except where otherwise clearly indicated by context, the masculine and the neuter shall include the feminine and the neuter, the singular shall include the plural, and vice-versa.

DBP 000223

11.07    Funding Policy.

The Plan Administrator shall establish and communicate to the Trustees a funding policy consistent with the objectives of this Plan and of the corresponding Trust.   Such policy shall reflect due regard for the emerging liquidity needs of the Trust. Such funding policy shall also incorporate the general investment objectives of the Trust and the philosophy upon which maintenance of the Plan is based.

11.08    Valuation Method.

The method used for valuation of Plan assets in calculating contributions to this Plan shall be a reasonable actuarial method of   valuation   which   is   permitted   under   Federal   Income   Tax Regulations.

11.09    Funding Method.

The Plan Administrator shall establish a funding method for the Plan consistent with the objectives of the Plan.

11.10    Title to Assets.

No Participant or beneficiary shall have any right to, or interest in, any assets of the Trust Fund upon termination of his employment or otherwise, except as provided from time to time under this Plan, and then only to the extent of the benefits payable under the Plan to such Participant out of the assets of the Trust Fund.  All payment of benefits as provided for in this Plan shall

50

DBP 000224

be made from the assets of the Trust Fund, and neither the Employer nor any other person shall be liable therefor in any manner except to such extent as may be required by ERISA.

11.11    <u>Payments to Minors, etc.</u>

Any benefit payable to or for the benefit of a minor, an incompetent or other person incapable of receipting therefore shall be deemed paid when paid to such person's guardian or to the party providing or reasonably appearing to provide for the care of such person, and such payment shall fully discharge the Trustees, the Employer and all other parties with respect thereto.

11.12    <u>Situs</u>.

This Plan shall, to the extent not pre-empted by ERISA or other Federal law, be construed according to the laws of the State of New York, where such state statutes may be applicable to an employee benefit plan.

DBP 000225

## ARTICLE XII

### TOP-HEAVY PROVISIONS

**12.01**    Top Heavy Plan.

For any Plan Year, the Plan shall be a Top-Heavy Plan, as such term is defined under Section 416 of the Internal Revenue Code, if the Value of Accumulated Benefits for Key Employees under all Aggregate Plans exceeds 60% of the Value of Accumulated Benefits for all Group Participants under all Aggregated Plans, determined as of the Determination Date immediately preceding such Plan Year.  If the Plan is a Top-Heavy Plan for a Plan Year and, as of the Determination Date immediately preceding such Plan Year, the Value of Accumulated Benefits for Key Employees Under all Aggregated Plans exceeds 90% of the Value of Accumulated Benefits for all Group Participants under all Aggregated Plans, then the Plan shall be a Super Top-Heavy Plan for such Plan Year.  For such purposes, the terms "Key Employees" and "Group Participants" shall include all persons who are or were Key Employees or Group Participants as of such Determination Date or as of any of the four (4) immediately preceding Determination Dates.

For purposes of this Article, the following definitions shall apply in addition to those set forth in Article I:

52

DBP 000226

"Affiliated Employer Group" shall mean the Employer and each other employer which must be aggregated with the Employer for purposes of Sections 414(b), 414(c) or 414(m) of the Code.

"Aggregated Plans" shall mean (i) all plans of the Employer or an Affiliated Employer Group which are required to be aggregated with the Plan, and (ii) all plans of the Employer or an Affiliated Employer Group which are permitted to be aggregated with the Plan and which the Plan Administrator elects to aggregate with the Plan for purposes of determining whether the Plan is a Top-Heavy Plan. A plan shall be required to be aggregated with the Plan if such plan includes as a participant a Key Employee or if such plan enables any plan of the Employer or of a member of the Affiliated Employer Group in which a Key Employee participates to qualify under Section 401(a)(4) or Section 410 of the Code including Keogh Plans or terminated plans. A plan of the employer or the Affiliated Employer Group shall be permitted to be aggregated with the Plan if such plan satisfies the requirements of Sections 401(a)(4) and 410 of the Code, when considered together with the Plan and all plans which are required to be aggregated with the Plan. No plan shall be aggregated with the Plan unless it is a qualified plan under Section 401 of the Code. The required aggregation group shall include plans terminated within the five year period ending on the Determination Date.

"Average Compensation" shall mean the average aggregate compensation (as defined under Section 415 of the Code) of a

DBP 000227

Participant determined using his five (5) highest consecutive Plan Years of such compensation prior to his retirement or termination of employment.    Notwithstanding the foregoing, the number of consecutive Plan Years of such compensation used in determining Average Compensation shall not exceed the number of consecutive Plan Years during which the Participant was employed within the period commencing with the first Plan Year during which the Plan was a Top-Heavy Plan and ending with the last Plan Year during which the Plan was a Top-Heavy Plan.

"Determination Date" shall mean the date as of which it is determined whether a plan is a Top-Heavy Plan or Super Top-Heavy Plan for the Plan Year immediately following such Determination Date.    The determination Date for a plan shall be:

(a)    in the case of a defined benefit plan, the date as of which the actuarial valuation of the Plan, as used for determination of minimum funding standards under Section 412 of the Code, is performed; and

(b)    in the case of a defined contribution plan, the last day of the Plan Year.

"Group Participant" shall mean anyone who is or was a participant in any plan included in the Aggregated Plans as of the Determination Date or any of the four (4) immediately preceding Determination Dates.    Any beneficiary of a Group Participant who has received, or is expected to receive, a benefit from a plan included in the Aggregated Plans shall be considered a Group

54

DBP 000228

Participant solely for purposes of determining the Plan is a Top-Heavy Plan or Super Top-Heavy Plan. Notwithstanding the foregoing, a participant shall not be considered a Group Participant if he was not an Employee of the Employer or the Affiliated Employer Group during the five (5) year period ending on the Determination Date.

"Key Employee" shall mean any employee or former employee of the Employer or of an Affiliated Employer Group who, as of a Determination Date, or as of any of the four (4) immediately preceding Determination Dates, was:

(a) an officer of the Employer whose annual compensation equals or exceeds $45,000; or

(b) a five percent (5%) owner of the Employer; or

(c) a one percent (1%) owner of the Employer whose total annual compensation from the Affiliated Employer Group exceeds $150,000; or

(d) an employee whose compensation equals or exceeds $30,000 (or such higher amount as may be defined under Section 415(c)(1)(A) of the Code), and whose ownership interest in the Affiliated Employer Group is among the ten largest. If two or more employees have the same ownership interest, then the employee with the greater annual compensation shall be deemed to have the greater ownership interest for purposes of this paragraph.

In no event shall a partner of an unincorporated employer be considered an officer under paragraph (a) above. Further, the

55

DBP 000229

number of officers counted under (a) above as of any Determination Date shall not exceed the lesser of:

    (1)   the greater of (i) ten percent (10%) of the total number of employees of the Affiliated Employer Group, and (ii) three (3); and

    (2)   fifty (50).

If the application of the preceding paragraph results in a reduction in the number of officers to be included as Key Employees, then individuals who are officers shall be eliminated from the group of Key Employees beginning with the individual who had the lowest one-year compensation as of the Determination Date or any of the four (4) immediately preceding Determination Dates, and eliminating each individual with the next higher one-year compensation as of such Dates, until the maximum number of officers remain in the Key Employee group. In addition, the beneficiary of a Key Employee shall be deemed to be a Key Employee.

"Non-Key Employee" shall mean an Employee who is not a Key Employee. An Employee who was a Key Employee in a previous Plan year but who is no longer a Key Employee in the current Plan Year, shall not be considered a Non-Key Employee for the current Plan Year.

"Value of the Accumulated Benefits" shall mean:

(a)  in the case of a Group Participant or beneficiary covered under a defined benefit plan, the sum of

       (i)   the present value of the accrued pension benefit (as such term is defined under the

56

DBP 000230

applicable plan) of the Group Participant or beneficiary determined as of the Determination Date using a 5% interest rate and the 1983 Group Annuity Mortality Table, and taking into account any non-proportional subsidies in accordance with regulations issued by the Secretary of the Treasury; plus

(ii) the sum of any amounts distributed to the Group Participant and his beneficiary during the plan year which includes the Determination Date and during the four (4) immediately preceding plan years.

(b) in the case of a Group Participant or beneficiary covered under a defined contribution plan, the sum of the accounts of the Group Participant or beneficiary under the plan as of the plan's Determination Date derived from:

(1) employee contributions credited to such accounts and investment earnings thereon; and

(2) employer contributions credited to such accounts and investment earnings thereon; and

(3) rollover contributions made prior to January 1, 1984, and investment earnings thereon; and

(4) any contributions which would have been credited to such accounts on or before the Determination Date, but which were waived as

57

DBP 000231

provided under the Code and resulted in a funding deficiency; and

(5)   any amounts distributed from the accounts described in (1) through (4) above during the Plan Year including the Determination Date and the four (4) immediately preceding Plan Years.

If the Plan is determined to be Top-Heavy Plan or Super Top-Heavy Plan as of any Determination Date, then it shall be subject to the rules set forth in the remainder of this Article for the first Plan Year commencing after such Determination Date. If, as of a subsequent Determination Date, the Plan is determined to no longer be a Top-Heavy Plan or Super Top-Heavy Plan, then the rules set forth in the remainder of this Article shall no longer apply, except where expressly indicated otherwise. Notwithstanding the foregoing, if the Plan changes from being a Super Top-Heavy Plan to a Top-Heavy Plan, the rules applicable to a Top-Heavy Plan shall apply.

"Year of Super Top-Heavy Service" shall mean a Year of Service of a Participant which commenced in a Plan Year during which the Plan was a Super Top-Heavy Plan.

"Year of Top-Heavy Service" shall mean a Year of Service of a Participant which commenced in a Plan Year during which the Plan was a Top-Heavy Plan.

58

DBP 000232

12.02     <u>Minimum Benefits or Contributions</u>.

For any Plan Year in which the Plan is a Top-Heavy Plan, the Accrued Benefit under the Plan for any Participant who is a Non-Key Employee shall not be less than 2% of the Participant's Average Compensation multiplied by the lesser of (i) his number of Years of Top-Heavy Service on or after the Effective Date, and (ii) ten (10).  If the Plan is not a Super Top-Heavy Plan for any Plan Year, and provided that, for such Year, the amount applied by the Plan in accordance with Section 415(e)(2)(B)(i), as modified by Section 416(h), of the Code is "1.25" rather than "1.00", then the percentage in the preceding sentence shall be increased from "2%" to "3%".

Any minimum Accrued Benefit provided in accordance with this Section is based on a life annuity commencing at Normal Retirement Date.  If the benefit is paid in a form other than a life annuity or commencing at a date other than Normal Retirement Date, the amount of the minimum Accrued Benefit provided under this Section shall be adjusted to the Actuarial Equivalent amount determined based on the benefit form and the commencement date as elected by the Participant.

Participants who are Non-Key Employees and who have completed one thousand (1,000) Hours of Service, are considered Participants covered by the Plan for purposes of this Section, regardless of whether or not they are separated from service.

Notwithstanding the above, the minimum benefit percentage (i.e., "2%" or "3%") provided in the first paragraph of this

59

DBP 000233

Section shall be reduced for any Plan year that the Employer makes contributions for all Non-Key Employees under one or more defined contribution plans qualified under Section 4.01 of the Code by multiplying "2%" or "3%", whichever is applicable, by a fraction (not less than zero), the numerator of which is "4%" or "7.5%", whichever is applicable, reduced by the percentage of compensation (as defined under Section 414(q)(7) of the Code) contributed to the defined contribution plan for all Non-Key Employees of the Employer, and the denominator of which is "4%" or "7.5%", whichever is applicable.  For purposes of applying the preceding sentence, "4%" shall apply if, as provided under the first paragraph of this Section, "1.00" is used in determining the Code Section 415 limit, and "7.5%" shall apply if "1.25" is used in determining the Code Section 415 limit.

12.03    <u>Minimum Vesting</u>.

If the Plan is determined to be a Top-heavy Plan for any Plan Year, then an Active Participant's vested interest in his Accrued Benefit determined as of the first day of such Plan Year, and determined as of any future date while the Plan continues to be a Top-Heavy Plan, shall be no less than as determined under the following Table:

| Years of Service | Vesting Percentage |
|---|---|
| Less than 3 years | None |
| 3 years or more | 100% |

60

DBP 000234

If the Plan subsequently is determined to no longer be a Top-Heavy Plan, then the above minimum vesting schedule shall not apply to any portion of a Participant's Accrued Benefit which is accrued after the first day of the first Plan Year in which the Plan is no longer a Top-Heavy Plan, provided that the Accrued Benefit for any Participant with three (3) or more Years of Service as of the first date as of which the Plan is no longer a Top-Heavy Plan shall continue to be vested in accordance with the minimum vesting schedule applicable during the period that the Plan was a Top-Heavy Plan.

12.04    **Discontinuance of Article.**

In the event that any provisions of this Article are no longer required to qualify the Plan under the Code, then such provisions shall thereupon be void without the necessity of further amendment of the Plan.

IN WITNESS WHEREOF, and as evidence of the adoption of the foregoing, the Employer has caused this instrument to be executed by a duly authorized person this 28 day of September 1990.

DEBORAH DROSSOS
Notary Public, State of New York
No. 24-4731737
Qualified in Kings County
Certificate Filed in New York County
Commission Expires January 31, 19 92

*Deborah Drossos*

KENYON & KENYON

BY: *William J Bolan*
Partner and Member of the
the Management Committee

knkdoc.001

61

DBP 000235