**KENYON & KENYON**

**CONTINUING FIRM**

**PARTNERSHIP AGREEMENT**

**(EFFECTIVE 10/1/96)**

# TABLE OF CONTENTS

4.d.    The Partner's Memo Accounts ........................................ 7
4.d.1.  Individual Partner Memo Accounts .................................... 7
4.d.2.  Valuation of the Partner's Memo Accounts ............................ 8
4.d.3.  Reallocation of Guaranteed Draws to the Partners .................... 9
4.d.4.  The Partner's Memo Account Balances; Economic Adjustment Factor
        Payments ........................................................... 9
4.d.5.  Eligibility for Payment of the Partner's Memo Accounts .............. 11
4.d.6.  Payments of Withdrawn Partners' Memo Account Balances .............. 11
4.d.7.  Limitations on Payments of Partner's Memo Account Balances ......... 12

14.     Disability, Retirement, Withdrawal,  Removal, Leave Of Absence Or
        Death Of A Partner .................................................

14.c.   Retirement ......................................................... 20
14.d.   Withdrawal ......................................................... 20

17.     Arbitration ........................................................ 26

KENYON & KENYON

CONTINUING FIRM

PARTNERSHIP AGREEMENT

THIS AGREEMENT is made and entered into, and shall be effective, as of the 1st day of October 1996, by and between EDWARD W. GREASON,  WILLIAM T. BOLAND, JR., ROBERT D. FIER,  CHARLES R. BRAINARD,  RICHARD L. MAYER,  EDWARD J. HANDLER III, ROBERT T. TOBIN, PAUL H. HELLER, ARTHUR D. GRAY, ALBERT J. BRENEISEN, STUART J. SINDER, GEORGE E. BADENOCH, JOHN C. ALTMILLER, MICHAEL J. LENNON,  PHILIP J. McCABE,  JAMES GALBRAITH,  WALTER E. HANLEY, JR.,  RICHARD L. DELUCIA,  JAMES E. ROSINI,  EDWARD T. COLBERT, WILLIAM K. WELLS, JR., JONATHAN D. REICHMAN, PATRICK J. BIRDE, HOWARD J. SHIRE, RICHARD S. GRESALFI, MICHAEL D. LOUGHNANE, STEVEN J. LEE, JOHN FLOCK, ESTELLE J. TSEVDOS, RICHARD M. ROSATI, FRANK PIETRANTONIO, FELIX L. D'ARIENZO, JR., ALLEN J. BADEN, and THOMAS F. MEAGHER.

WHEREAS, the parties desire to organize and form a partnership to engage in the practice of law under the firm name of KENYON & KENYON.

WHEREAS, prior to the effective date of this Agreement, the parties have dissolved their partnership and formed a new partnership each fiscal year, and, effective as of the date of this Agreement, the parties now wish to form a partnership continuing from year to year unless and until dissolved according to the terms of this Agreement (that partnership, so formed, sometimes also referred to in this Agreement as "the Firm").

NOW, THEREFORE, the following is agreed to:

3

4

5

6

**4.d.     The Partner's Memo Accounts**

**4.d.1.   Individual Partner Memo Accounts**

As of October 1, 1996, a separate account shall be created for each of the partners of the

partnership (referred to in this Agreement as such partner's "Partner's Memo Account").   Each

7

partner's individual interest in his or her Partner's Memo Account shall be calculated as set forth in paragraph 4.d.4.a. below. The value of each partner's interest in his or her Partner's Memo Account, as calculated by the Firm, shall be acknowledged and approved by each partner, in writing, at the end of each fiscal year, and each partner's interest shall be non-transferable and non-assignable (except to a partner's estate) and may not be hypothecated by a partner for any reason whatsoever without the written approval of the Management Committee.

### 4.d.2.    Valuation of the Partner's Memo Accounts

**4.d.2.a.** The aggregate value of the Partner's Memo Accounts as of October 1, 1996 (referred to in this Agreement as the "Partners' Memo Accounts") shall be the sum total of the net realizable value of the Accounts Receivable and Client Inventory, as defined above in paragraph 4.a.1. of this Agreement (but excluding from this calculation both uncollected and unearned contingency fees), of all Kenyon & Kenyon firms existing prior to the effective date of this Agreement, calculated as of September 30, 1996. Each individual partner's interest in his or her Partner's Memo Account shall be the sum total of his or her Percentage Interests in the net realizable value of the Accounts Receivable and Client Inventory of each prior firm of which he or she was a member. The aggregate value of the Partners' Memo Accounts, and the value of each partner's individual interest in his or her Partner's Memo Account, shall be recalculated by the Firm on or about September 30, 1997, September 30, 1998 and September 30, 1999, but in each case such recalculation shall be effective as of September 30, 1996, to reflect the most accurate net realizable value of prior firms' Accounts Receivable and Client Inventory as of September 30, 1996.

**4.d.2.b.** Any rights of the partnership to uncollected contingency fees shall have no value and shall not be allocated to either the Partners' Memo Accounts or any individual partner's Partner's Memo Account. Contingency fees collected by the Firm in any specific fiscal year shall be an asset of the partnership which exists at the time that such fees are collected by the Firm, and shall be

8

allocated to the members of that partnership, and no such collected contingency fees shall be distributed to former partners, including permanently disabled partners, retired partners, withdrawn partners, and removed partners, or to the estates of deceased partners. The Management Committee shall allocate such collected contingency fees to the partners of the existing partnership in accordance with the then-existing Percentage Interests of the partners of such partnership.

**4.d.3.    Reallocation of Guaranteed Draws to the Partners**

As of the effective date of this Agreement, payments to partners of guaranteed draws against future earnings, which has been the historical practice of the Firm to new partners and to junior partners, shall no longer be made by the Firm. The total amount of any such payments of guaranteed draws made to an individual partner will be deducted from the value of his or her interest in the Partner's Memo Account calculated as of September 30, 1996 as specified in paragraph 4.d.4.a. below. In addition, each individual partner's Percentage Interest, as shall be determined by the partnership as of September 30, 1996, in the aggregate reallocation of guaranteed draws shall be credited to the value of such individual partner's interest in the Partner's Memo Account.

**4.d.4.    The Partner's Memo Account Balances; Economic Adjustment Factor Payments**

**4.d.4.a.** The initial value of each Partner's Memo Account balance shall be estimated by the Firm as of September 30, 1996 based on the Firm's historical experiences with the billing and collection of Accounts Receivable and Client Inventory, and shall be recalculated and adjusted at the end of each of Firm fiscal years 1997, 1998, and 1999 in accordance with paragraph 4.d.2.a. above of this Agreement. The valuation of the partners' Partner's Memo Accounts shall be effective as of the last day of each fiscal year of the Firm. Each Partner's Memo Account, except the Memo Accounts of retiring and withdrawn partners, shall be adjusted by the Firm as of the end of each fiscal year to reflect changes in Accounts Receivable and Client Inventory, and to reflect the U.S. Government CPI-

9

U (Urban) Consumer Price Index for that fiscal year. Each such adjustment, and the Firm's calculation of the initial value of each partner's Partner's Memo Account balance, shall include adjustments for partners who retire or withdraw from the partnership during such fiscal year, based upon each partner's Percentage Interest for that fiscal year. The aggregate amount of such adjustment for retiring or withdrawn partners during any fiscal year shall be the aggregate payments made to such partners by the Firm during such fiscal year. Adjustments to the balances of each Partner's Memo Account for retiring or withdrawn partners shall be made during each year that the Firm makes any payments to such partners. The balance of each Partner's Memo Account, as adjusted by the Firm at the end of each fiscal year, shall constitute the opening Partner's Memo Account balance for the next fiscal year of the Firm.

   4.d.4.b. As a special allocation payment to the partners during each fiscal year, commencing as of the effective date of this Agreement, an Economic Adjustment Factor ("EAF") distribution shall be made to the partners calculated as of September 30th of each fiscal year, provided, however, that no EAF payments shall be made to any retired or withdrawn partners. Such EAF distributions shall be made each fiscal year to the partners in cash. Each partner's share of such EAF distributions shall be 1.5% of such partner's individual Partner's Memo Account balance as of September 30th of the fiscal year preceding the year in which the EAF distribution is made. In order to implement EAF distributions to the partners, a special EAF distribution account shall be established by the Firm each fiscal year. The EAF account shall be funded by allocating a portion of the Firm's profits distributable to the partners during such fiscal year to such account in an amount having an aggregate value of 1.5% of the Partners' Memo Accounts balance as of September 30th of the prior fiscal year.

10

**4.d.5.   Eligibility for Payment of the Partner's Memo Accounts**

A withdrawn partner, or the estate of a withdrawn partner, shall be eligible to receive payment, in accordance with the provisions of paragraph 4.d.6. below, of his or her individual partner's interest in his or her Partner's Memo Account balance only upon the occurrence of the earlier of (1) the death of the partner, or (2) the permanent disability of the partner, or (3) the partner reaching age 65, or (4) after ten (10) full calendar years as a member of the Firm, including memberships in prior firms.  Any partner who withdraws from the Firm as a member of the partnership, or who is removed, before the occurrence of one of the foregoing events shall not be entitled to any payment of the balance allocated to such partner's individual Partner's Memo Account pursuant to the provisions of the above paragraph 4.d.4.a. of this Agreement.  Such balance shall instead be allocated at the end of the fiscal year during which such partner withdraws from the Firm or is removed to the Partner's Memo Accounts of the existing partners at the time of such partner's withdrawal or removal according to the Percentage Interest of each existing partner in effect at the time of such withdrawal.

**4.d.6.   Payments of Withdrawn Partners' Memo Account Balances**

**4.d.6.a.**  A partner who withdraws from the partnership at age 65 or thereafter, a partner who is considered permanently disabled pursuant to paragraph 14.b.1. of this Agreement, the estate of a deceased partner, a removed partner, and a retired partner, shall be paid his or her Partner's Memo Account balance within a period of five years from the effective date of withdrawal beginning no later than the end of the fiscal year of the Firm following that during which such partner withdraws from the partnership.   Payments by the Firm of such Partner's Memo Account balances shall be funded from the net income of the Firm received during the fiscal year in which such payments are made, and shall not be a debt or obligation of the individual partners who are members of the partnership existing during any such fiscal year.

11

4.d.6.b.  A partner who withdraws or who is removed before age 65, and who is eligible to receive payment of his or her Partner's Memo Account balance according to the provisions of paragraph 4.d.5. above, shall be paid his or her individual Partner's Memo Account balance within a period of five years beginning on the date such partner reaches age 65.  At the discretion of the Management Committee, subject to the provisions of paragraph 4.d.5. of this Agreement, a partner who withdraws from the partnership before age 65 may receive payments of his or her Partner's Memo Account balance before age 65.

### 4.d.7.  Limitations on Payments of Partner's Memo Account Balances

4.d.7.a.  Payments to partners of their Partner's Memo Account balances shall be subject to the limitations of paragraph 15. of this Agreement.

4.d.7.b.  The Management Committee shall periodically calculate and project the Firm's anticipated payments of Partner's Memo Account balances for future years, and the portion of net distributable income of the Firm allocable to such payments.  In the event the Management Committee determines that the payment of Partner's Memo Account balances and other payments made pursuant to paragraph 14.d.2. of this Agreement to withdrawn or retired partners may exceed the limitations of paragraph 15. in future fiscal years, the Committee, upon approval by the Firm by a majority vote, in order to control the growth of the aggregate balance of the Partners' Memo Accounts, may take such steps as it deems appropriate in the Firm's best financial interests including, but not limited to (1) paying increases in any individual existing partner's Partner's Memo Account balance in cash out of current Firm income, in lieu of increasing such partner's individual Partner's Memo Account balance, in which case the aggregate amount paid in current income to such partners shall be allocated to the individual Partner's Memo Accounts of the remaining existing partners; (2) extending the period of payment of withdrawn or retired partners' Partner's Memo Accounts from five (5) to up to ten (10)

12

years: or (3) otherwise modifying the payments made to partners of their Partner's Memo Account balances as deemed necessary by the Committee.

4.d.7.c. In the event the Management Committee shall modify payments of Partner's Memo Account balances in accordance with the provisions of this paragraph 4.d.7., payments shall be made first to those partners retiring at age 70. Payments to partners who withdraw or retire before age 70 shall then be made from any remaining portion of the Firm's distributable income from which such payments may be made pursuant to paragraph 15. of this Agreement.

14

I

.

.

**17**

18

19

**14.c.    Retirement**

    **14.c.1.**  Upon reaching the age of seventy (70), a partner shall retire from the partnership effective at the end of the Firm's fiscal year following the partner's 70th birthday, at which time the partner's membership in the partnership will terminate and entitle the partner to compensation according to "Withdrawal," paragraph 14.d.2. below.  Upon reaching the age of seventy (70), the partner may, at the sole option of the Firm by at least a 2/3 vote of the partnership pursuant to paragraph 5.b. of this Agreement, become "Of counsel" to the Firm on a year-to-year basis for a maximum period of five (5) years, at a compensation to be set by the Percentage Committee.

**14.d.    Withdrawal**

    **14.d.1.**  A partner desiring to withdraw by voluntarily resigning or retiring from the partnership shall give written notice of his or her intention to withdraw to the partnership at least thirty

(30) days prior to the effective date of such withdrawal. The requirement for notice may be waived by the Management Committee upon request. Such withdrawal shall be subject to the covenants, obligations and related provisions set forth in this Agreement.

**14.d.2.** Provided that the withdrawing partner shall not have breached this Agreement, the partnership shall pay to the withdrawing partner:

(ii) subject to the provisions of paragraphs 4.d.5. and 4.d.6. above and paragraphs 14.d.3. and 14.d.4. below, his or her interest in the Partner's Memo Account,

less any debts of the partner to the partnership, and any prior payments made by the Firm to the withdrawing partner on account thereof.

**14.d.3.** A partner who withdraws from the partnership at age 65 or thereafter, a partner who is considered permanently disabled pursuant to paragraph 14.b.1. of this Agreement, the estate of a deceased partner, a removed partner, and a retired partner, shall be paid his or her Partner's Memo Account balance in five equal annual installments.

Each such annual installment payment shall be 20% of the sum total of such partner's individual opening Partner's Memo Account balance

as of the beginning of the fiscal year of withdrawal from the Firm.

21

**14.d.5.**  Any payment due a withdrawing partner shall be calculated as of the last day of the month in which the partner withdraws, unless specified otherwise in this Agreement, and shall be reduced by the amount of any other financial obligation owing by the withdrawing partner to the partnership.  In the event of a breach of this Agreement by the withdrawing partner, payment may be withheld, without interest, until the determination and full satisfaction of the withdrawing partner's liabilities to the partnership for such breach.

**14.d.6.**  A partner who is considered permanently disabled pursuant to paragraph 14.b.1. of this Agreement, a deceased partner, a removed partner, and a retired partner, shall be considered, for the purposes of this paragraph 14.d. and the other provisions of this Agreement, a withdrawn partner (such partner also sometimes referred to in this Agreement as a "former partner" or "withdrawing partner" or "retiring partner").

23

17.    **Arbitration**

The parties agree that this Agreement shall be construed, and all questions relating thereto shall

be determined, in accordance with the laws of the State of New York.  Except as provided otherwise

herein, any and all disputes arising from or under or in connection with or relating to or for the breach

of this Agreement  or its performance, shall be settled by confidential arbitration before an arbitration

board of three members in accordance with the Rules for Arbitration of Dispute Between Lawyers of

the Committee on Arbitration and Alternative Dispute Resolution of the Association of the Bar of the

City of New York then in effect.  Judgment upon the award rendered may be entered in any court

having jurisdiction thereof and the award shall be final, conclusive and binding upon all the parties to

such arbitration without any right of appeal from the decision of the arbitration board or any right to

appellate or other review.

26

27

EDWARD W. GREASON

WILLIAM T. BOLAND, JR.

ROBERT D. FIER

CHARLES R. BRAINARD

RICHARD L. MAYER

EDWARD J. HANDLER III

ROBERT T. TOBIN

PAUL H. HELLER

ARTHUR D. GRAY

ALBERT J. BRENEISEN

STUART J. SINDER

GEORGE E. BADENOCH

28

JOHN C. ALTMILLER

MICHAEL J. LENNON

PHILIP J. MCCABE

JAMES GALBRAITH

WALTER E. HANLEY, JR.

RICHARD L. DELUCIA

JAMES E. ROSINI

EDWARD T. COLBERT

WILLIAM K. WELLS, JR.

JONATHAN D. REICHMAN

PATRICK J. BIRDE

HOWARD J. SHIRE

29

RICHARD S. GRESALFI

MICHAEL D. LOUGHNANE

STEVEN J. LEE

JOHN FLOCK

ESTELLE J. TSEVDOS

RICHARD M. ROSATI

FRANK PIETRANTONIO

FELIX L. D'ARIENZO, JR.

ALLEN J. BADEN

THOMAS F. MEAGHER