# EXHIBIT A

Consequently, we find that the Surviving Spouse Benefits vested in Sherry Hopkins at the time of Mr. Hopkins's retirement. Because Sherry Hopkins is a "beneficiary" and not a "participant," Vera Hopkins's Surviving Spouse Order does not relate to a benefit "payable with respect to a participant." As a result, her Surviving Spouse Order is not a QDRO.

### III.

As a part of her appeal, Vera Hopkins also asked, pursuant to 29 U.S.C.A. §1132(g) (West 1985), that her attorneys' fees and costs be paid by AT&T. During oral arguments, however, counsel for Vera Hopkins conceded that she would not be entitled to attorneys' fees and costs unless she prevailed. In light of our disposition and Vera Hopkins's concession, her request for attorneys' fees and costs is denied. *See Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1028-29 [16 EBC 2625] (4th Cir. 1993) (providing general guidelines for determining whether attorneys' fees should be granted under ERISA).

### IV.

For the reasons stated, the judgment of the district court is affirmed.
*AFFIRMED*

---

## SHINEHOUSE v. GUERIN

### U.S. Court of Appeals, Third Circuit

JAMES P. SHINEHOUSE, as Plan Administrator for the Retirement Income Plan for Employees of Ferranti International, Inc. and as Trustee/Plan Administrator for the Ferranti International, Inc. Savings Plan v. JAMES HOWARD GUERIN, Inmate No. 445033-066; JAMES P. SHINEHOUSE, as Administrator for the Retirement Income Plan for Employees of Ferranti International, Inc. and as Trustee/Plan Administrator for the Ferranti International, Inc. Savings Plan, Appellant, No. 96-1500, Jan. 13, 1997.

### INTERNAL REVENUE CODE

**Minimum Vesting Standards — Forfeitures — Assignment or Alienation of Benefits (▶113.2004)**

ERISA Section 206(d)(1)'s anti-alienation provision protects retirement plan assets that were transferred by check payable to plan beneficiary but remain in hands of plan trustee from attachment by beneficiary's judgment creditors, since ERISA's protection terminates when pension plan assets are distributed to beneficiary, and checks here were processed but were not yet distributed.

---

On appeal from a decision of the U.S. District Court for the Eastern District of Pennsylvania that pension plan beneficiary's plan assets held by plan trustee in form of check payable to beneficiary were protected from attachment by ERISA's anti-alienation provision [20 EBC 1302 (1996)]. Affirmed.

Grant S. Palmer, of Blank, Rome, Comisky & McCauley, of Philadelphia, Pa., attorney for Shinehouse.

Albert J. Meier, of West Chester, Pa., attorney for Guerin.

[Ed. Note: The court has designated this opinion as "NOT FOR PUBLICATION"].

*Full Text of Opinion*

Before GREENBERG, COWEN, and ALITO, Circuit Judges.

ALITO, Circuit Judge.

The issue in this appeal is whether the antialienation provision of the

---

sult, the plan administrator needs to know, on the day the participant retires, to whom the Surviving Spouse Benefit is payable.

Employee Retirement Income Security Act, 29 U.S.C. §§1001 et seq. ("ERISA") protects pension funds in the form of a check made payable to the plan participant but not yet transferred to the participant. The district court held that ERISA protection extends to such funds. We agree that ERISA protects these funds, and we therefore affirm.

I.

Defendant James H. Guerin ("Guerin") is a vested beneficiary of two ERISA qualified employee benefit plans maintained by Ferranti International, Inc. ("Ferranti"), known as the Retirement Income Plan for Employees of Ferranti, and the Ferranti Savings Plan (collectively, the "Plans"). Plaintiff James P. Shinehouse (the "Plan trustee") serves as trustee and administrator to the Plans. In July 1993, the United States District Court for the Middle District of Florida domesticated a foreign judgment against Guerin in the amount of $189,929,290. Guerin was criminally prosecuted as a result of the actions giving rise to the civil judgment and received a sentence of 15 years' imprisonment. Guerin is currently incarcerated at the Federal Correctional Institution in Coleman, Florida.

In June 1995, Guerin reached the age of 65 and requested payments from the Plans. The Plan trustee requested Principal Financial Group, the Plan Administrator, to process the requests and forward to him the checks made payable to Guerin. The checks were processed and forwarded to the Plan trustee, where they have remained throughout this appeal. The judgment creditors then domesticated the judgment in the Eastern District of Pennsylvania and procured writs of attachment that were served on the Plan trustee and Guerin, in partial satisfaction of their judgment. Guerin filed a claim of exemption from execution, claiming that the funds were protected by the antialienation provisions of ERISA.

Faced with competing claims and possible multiple liability, the Plan trustee sought a declaration that distributions from an ERISA qualified employee benefit plan to the plan trustee for the benefit of the plan participant are not protected under ERISA, and thus subject to the claims of creditors. On cross-motions for summary judgment, the district court granted Guerin's motion and denied the Plan trustee's motion. The court held that ERISA's protection of pension funds terminates upon distribution of the funds to the plan participant. Because ERISA does not define "distribution," the court held that under Pennsylvania law, Guerin is not the holder of the instruments and that the funds therefore had not been distributed to him for purposes of ERISA.

II.

At issue is the scope of the antialienation provision in ERISA, 29 U.S.C. §1056(d)(1), which requires each pension plan to "provide that benefits provided may not be assigned or alienated." We have held that once pension funds are distributed to the plan participant, they no longer receive the protection of this provision. *Trucking Employees of N. Jersey v. Colville*, 16 F.3d 52, 55–56 [17 EBC 2249] (3d Cir. 1994); *Velis v. Kardanis*, 949 F.2d 78 [14 EBC 1922] (3d Cir. 1991). These cases provide the framework for determining whether funds that have been transferred by means of a check payable to the beneficiary but remaining in the hands of the trustee are protected by ERISA.

In *Velis*, we considered whether funds borrowed from ERISA qualified pension plans and invested in two cooperative apartments were still protected under the antialienation provision. There, the plan participant, a judgment debtor and debtor in bankruptcy, financed the two real estate purchases with funds he withdrew from his pension plans. The debtor argued that his interest in the plans was excluded from the bankruptcy es-

tate under 11 U.S.C. §541(c)(2). Resolution of the issue required the bankruptcy court to determine whether the antialienation provision in ERISA constituted "applicable nonbankruptcy law" within the meaning of §541(c)(2). The bankruptcy court rejected the debtor's contention, and the district court affirmed.

We reversed the district court to the extent that the order held that pension plan assets are not excludable from the debtor's estate pursuant to §541(c)(2). In concluding that ERISA constitutes "applicable nonbankruptcy law" within the meaning of §541(c)(2) that would exclude the assets from the estate, we also noted that once distributions are made from the pension plan to the debtor for his benefit, there are no enforceable restrictions under ERISA or otherwise that preclude treatment of those distributions as part of the bankruptcy estate. "Even if pension plan assets in the hands of a trustee are beyond the reach of creditors because not part of the debtor's estate under §541(c)(2), distributions made from the plan to the debtor would not enjoy such protection . . . ." *Id.* at 81–82. Thus, the distinction between protected versus unprotected funds was, respectively, whether the funds remained in the possession of the plan trustee, or whether they were distributed to the beneficiary.

*Colville* involved an attempt by a pension fund to withhold retirement benefits accrued to a plan participant for previous overpayment of benefits. The district court ordered release of the funds, which were then deposited into the plan participant's personal checking account. On remand for reconsideration in light of our decision in *Velis*, the district court held that because the monies in the personal bank account were the same funds that were previously held in the pension account, they continued to be protected by ERISA's antialienation provision. We reversed, holding that ERISA-protected funds distributed to the plan participant were no longer protected under ERISA. We also held that funds remaining in the possession of the plan trustee are treated differently, and are still subject to the antialienation protection of ERISA.

Under the reasoning of *Velis* and *Colville*, we conclude that distribution of the pension plan assets to the beneficiary terminates ERISA protection. Here, the checks were processed but were not yet distributed. Therefore, the antialienation provision of ERISA continues to protect the funds and the same are not available to satisfy creditors' judgments.

III.

For the foregoing reasons, we affirm the decision of the district court.

---

## U.S. SUPREME COURT ORDER

SHAW AGENCY v. MORSTEIN, No. 96-764, Jan. 21, 1997.

The petition for a writ of certiorari to the U.S. Court of Appeals for the Eleventh Circuit is denied; opinion below sub. nom. *Morstein v. National Insurance Services, Inc.*, 20 EBC 1729, 93 F.3d 715 (1996).

⚜