# EXHIBIT D

September 12, 1990

<u>CONFIDENTIAL</u>

### M E M O R A N D U M

TO    :   The Partners

FROM  :   W. P. Thierfelder

SUBJ  :   **Luncheon Meeting on a Proposed Defined Benefit Pension Plan**

---

At the partners luncheon on Wednesday, September 19, 1990 at 12:30 P.M. Mr. Charles Thacher of Williams, Thacher and Rand, an actuarial firm specializing in retirement plans, will speak to us about a proposed defined benefit pension plan. The public relations people originally scheduled to make a presentation will be invited to an October 18, 1990 luncheon meeting; this is a Thursday luncheon rather than our typical Wednesday meeting.

In addition to the 401K/Keogh Plan being increased to $30,000 this fiscal year, some partners have been seeking further means of sheltering income. To this end the Management Committee has been looking into other opportunities that would accommodate new IRS regulations and where the risk of rejection would be minimal. Don Moore, an attorney with Paul Weiss, who has considerable expertise in the area of retirement plans, has reviewed Mr. Thacher's proposal and he believes it is a very good plan worthy of our serious consideration.

B00009

CONFIDENTIAL MEMO TO:  The Partners
DATE:   September 12, 1990
Page -2-


The plan could be put into effect before September 30, 1990, if we can reach a consensus after our meeting next week.  Otherwise, the plan would have to wait for fiscal 1991.

Attached you will find a description of the plan and anticipated questions and answers which may help you as you read the proposal.

The Committee encourages you to make a special effort to attend this important meeting. We would also appreciate knowing the opinion of those who cannot attend by Friday, September 21, 1990.


**WPT/ls**
**Att.**

## Potential Questions About Defined Benefit Plan

1. What benefit is a partner (or employee) entitled to if he or she retires early or becomes disabled?

When a partner retires, (Normal or Early), becomes disabled, dies or terminates for any other reason, he (or his beneficiary) will receive the full value of his accrued benefit. Based on the Plan design, this value will be equivalent to his accumulated contributions with the stipulated Plan interest rate (e.g. 8%, 8.5% or other rate set by the Plan).

2. (a) What benefit is a partner's (or employee's) estate entitled to if the partner (or employee) dies before normal retirement age?

(b) If an employee dies before normal retirement age, is there any risk that his or her estate could sue the Firm for the full benefit that would have been due at normal retirement age?

If a partner dies prior to retirement, his spouse will automatically receive his benefit, unless he elects an alternate beneficiary with his spouse's approval. The Plan document and Summary Plan Description will be absolutely clear that no benefits will be paid in excess of the participant's accrued benefit, which is equivalent to his accumulated contributions at the stipulated interest rate. All defined benefit plans limit payments to the accrued benefit, and I don't know of any successful (or unsuccessful) attempts to recover more than such benefit pursuant to an employee's termination.

3. (a) Is there any restriction on the Firm's right to terminate the plan?

(b) What is the risk that a change in the law will preclude the Firm from terminating the plan in the future?

(c) If the Firm elects to terminate the plan, what does the Firm owe to each participant?

The Firm can terminate the Plan at any time. Participants will be guaranteed the value of their accrued benefits at date of termination. I am aware of no current or proposed law that precludes the Firm from terminating the Plan. Frankly, I do not believe such a law will be enacted, because it would result in the demise of defined be-

B00011

4.  (a)  Is a partner's contribution compulsory each year?

(b)  Can a partner who elects to participate in the plan change his mind and drop out later?

(c)  Can a partner who elects not to participate in the plan change his mind and join later?

If a partner does not waive his participation in the Plan, then he will be covered under the prescribed benefit formula and his contribution will be actuarially determined each year. It would be possible to use a funding method for the Plan which allows some flexibility in annual contributions. However, this would controvert another important feature of the Plan, as we have designed it, which is that a partner's benefits will be equivalent to his accumulated contributions with interest.

A partner probably could waive out of the Plan at a subsequent date, and it's possible that partners could be allowed entry at a subsequent date. However, it is important that the Plan be operated as a "pension plan" and if too much flexibility is provided for partners, the IRS could determine that it is not being operated in such manner. The only plans that can allow annual elections as to the level of participation are 401(k) plans and it is essential that the Plan not be construed to be a 401(k) plan.

5.  (a)  What happens to a partner's benefit if the plan earns less (or more) than the projected interest rate?

(b)  What happens to a partner's required contribution in future years if the plan earns less (or more) than the projected interest rate?

(c)  Can the plan be amended to change the target benefit and thereby increase or decrease a partner's required contribution in future years?

(d)  Is there any restriction on the right of the Firm to amend the plan to change benefits in future years?

The benefits under the Plan will be a function of the benefit formula and an interest rate which is either (i) stated in the

Plan, or (ii) determined by a method definitely determinable under the Plan. We would recommend a stated interest rate, such as 8% or 8.5%. If the Plan earns more than the stated interest rate, the excess earnings would be retained by the Plan and applied to offset the contributions for employees. If the Plan earns less than the stated interest rate, it would increase the cost for employees. The contributions allocated to partners would not be adjusted based on variations of interest earnings, unless there were sufficient excess earnings to more than offset the entire cost for employees.

The benefit formula or <u>the stipulated interest rate can be amended at any time,</u> with the proviso that no accrued benefit can be reduced nor can the value of any accrued benefit determined under any optional method of payment (e.g. lump sum, joint and survivor annuity, etc.) be reduced. The value of a partner's accrued benefit is based on the Plan formula and the stipulated interest rate. If the Plan earns interest at a higher rate than the stipulated rate, than the Partner would receive less than his accumulated contributions and actual interest earnings. However, the excess interest earnings would have reduced contributions for employees, which in turn would have reduced the partner's share of such contributions.

6.  Under what circumstances could the cost of funding the plan for employees increase?

The cost of the Plan for employees could increase if interest earnings were less than the assumed rate or if other actuarial assumptions were less favorable then assumed. For example, we have made an assumption as to expected employee turnover and if actual turnover was less than anticipated, costs for employees would increase. Employee costs will also increase annually based on increases in compensation, but they should remain relatively constant as a percentage of compensation.

7.  Does the plan increase the risk of incurring excise taxes when a partner seeks to withdraw his pension (a) as an annuity or (b) as a lump sum?

The Plan does theoretically increase the risk of incurring the 15% excise taxes on excess distributions when a partner seeks to withdraw his pension as an annuity or lump sum. However, I do not believe the risk is material for the partners. Any lump sum benefit payable from the Plan can be transferred to an Individual Retirement Account resulting in the continued deferral of taxes. A partner must commence withdrawing his benefits from the Plan or an IRA at age 70 1/2, and he is allowed to withdraw the benefits over the joint life expectancy of himself and his spouse. Typically, the joint life expectancy is likely to be 15-20 years at age 70 1/2. Under the excise tax rules, an individual could withdraw (currently) up to $150,000 per year without incurring an

B00013

excise tax and the $150,000 threshold should be increasing in about 4 years based on a cost-of-living index. But, even using the $150,000 amount, a married partner would need total accounts (profit sharing plus pension plus IRAs) of approximately $2.5 million before his mandatory withdrawals would exceed the $150,000 threshold. A single partner is likely to need approximately $1.8 million before his withdrawals exceed the threshold.

A partner who believes that he may be subject to the excise tax if he defers benefit commencement to age 70 1/2, can avoid such tax by commencing withdrawals (of under $150,000 per year) earlier than age 70 1/2.

There is a further method of avoiding the excise tax by withdrawing money from one of the two Plans (the Profit Sharing or Pension Plan) in a single lump sum an electing lump sum tax treatment. Under the excise tax rules, and individual can withdraw up to $750,000 in a lump sum and still qualify for the $150,000 annual exclusion on annuity payments.

9.    Can the amounts accrued in the plan be rolled over into an IRA or other tax qualified plan without penalty?

Lump sum payments from the Plan resulting from termination by the participant or termination of the Plan can be rolled over to an IRA, provided at least 50% of the payment is rolled over. Any amount not rolled over would be subject to ordinary income tax, or after the plan has been in effect for at least five years, participants over age 59 1/2 could qualify for special lump sum tax treatment which could provide a slightly better tax result. If an individual takes annuity payments from the Plan, they may not be rolled over. Lump sum payments could also be rolled over to the Firm's Profit Sharing Plan.

B00014

KENYON & KENYON

RETIREMENT PLAN STUDY
JULY 20, 1990

Prepared By:

Williams, Thacher & Rand
630 Third Avenue
New York, New York 10017

B00015



WILLIAMS THACHER & RAND INC.

July 20, 1990

Kenyon & Kenyon
One Broadway
New York, New York  10004

Gentlemen:

We have reviewed the possibility of Kenyon & Kenyon adopting a defined benefit pension plan to cover partners of the Firm.  In making our review, we have taken into account recently issued IRS regulations under Code Sections 401(a)(4), 410(b), 401(l), and 401(a)(26).  These regulations have a significant bearing on the design of any retirement plan which the Firm would adopt.

In designing a defined benefit plan for partners, the following criteria are of greatest importance:

· Annual contributions permitted for partners must be material

· The cost for included staff should not be significant and would be allocated to all partners or, alternatively, to those partners participating in the defined benefit plan

· Pension benefits for partners would supplement those provided under the Firm's combination 401(k)/profit sharing plan, (after such contributions are increased to $30,000 per year), and would not result in a reduction in permitted contributions to such plan

· Each partner who participates in the defined benefit plan would be charged with the contributions made for his benefits.  At termination or retirement, the partner would receive a lump sum benefit substantially equal to his contributions plus accumulated investment earnings

· Associates would not be covered by the defined benefit plan

We believe that the plan we have developed meets all of the above criteria.  It is proposed that the plan be effective as of October 1, 1989.

B00016

Kenyon & Kenyon                    -2-                    July 20, 1990

## APPROACH TO PLAN DESIGN

Code Sections 410(b) and 401(a)(4) require that a retirement plan meet certain non-discrimination requirements with regard to coverage and benefits. In order to meet the coverage requirements under 410(b), a plan must meet either of the following tests:

- Ratio percentage test - Cover a percentage of non-highly compensated employees that is at least 70% of the percentage of highly compensated employees (including partners) that is covered, or

- Average benefits test - Cover a group of non-highly compensated employees which constitutes an acceptable classification and which is approximately 45% (in the case of Kenyon & Kenyon) of the percentage of highly compensated employees covered, and pass an average benefits test.

For plan years commencing in 1989, highly compensated employees are those earning over $81,720 and those earning over $54,480 who are among the highest paid 20% of all Firm employees. Since all Firm partners and most associates earn over $81,720, and such group constitutes more than 20% of the total employees of the Firm, the threshold for determining highly compensated employees is $81,720. A defined benefit plan covering all partners would cover approximately 46% of all highly compensated employees with one year of service. Therefore, in order to pass the ratio percentage test the plan would have to cover approximately 32% (46% x 70%) of all non-highly compensated employees with one year of service. This amounts to approximately 40 employees. Employees could be selected for participation in the plan based on any criteria the Firm adopts, such as by job classification.

An even smaller group of employees could be covered if the average benefits test is passed. The minimum would appear to be approximately 22% of all eligible non-highly compensated employees, or 27 employees. However, the group selected in this instance must meet a "valid business criteria" requirement. Currently, there are no rules as to what constitutes a valid business criteria, but it is likely that it would have to be demonstrated to the IRS that a business reason supports the selection of covered employees. For example, it's possible that employees whose time is billed to clients could be covered. The average benefits test is a complex test, requiring an evaluation of all benefits provided under all qualified plans of the Firm, as well as Social Security, and must be satisfied on an annual basis. It is likely that, even if the average benefits test can be passed, that there would be little savings in cost by covering the smaller group of employees since the group must be selected to meet the valid business criteria

B00017

requirement, and may be a costlier group.  Therefore, it is recommended that at least 32% of the non-highly compensated employees be covered under the plan in order to meet the ratio percentage test.

It should be pointed out that the regulations regarding plan coverage are in proposed form.  Final regulations may not be issued until the end of 1990 or later.  However, with respect to coverage rules, the requirements of the regulations closely parallel those of the law, so a change appears unlikely.

A partner participating in the plan cannot later withdraw (unless he terminates from the Firm) and no variation in benefit levels for individuals is permitted.  We believe that partners can be given a one-time election to not participate in the plan when they first become eligible.  A partner who initially declines to participate may even be allowed to participate later on, but probably without past service credit.

## DEFINED BENEFIT FORMULA DESIGN

As stated above, it is essential that the plan contributions required for partners be individually determinable, and that a partner's benefit at all times be approximately equal to his accumulated contributions with interest.  It is not desirable to have any material potential unfunded liabilities for the Firm should a partner terminate, or to have the possibility that a partner will receive materially less than the accumulated value of his contributions with interest.

In order to accomplish the above objectives, it is recommended that future benefits under the plan be credited annually based on each year's earnings.  The unit credit funding method will be used, incorporating a realistic interest rate, so that each year the amount of contribution for each partner's benefit will be based on the realistic cost to provide that benefit at the plan's normal retirement date.  When a partner leaves, he will receive the value of his earned benefit, which will be fully funded and will be approximately equal to the accumulated value (with interest) of the contributions he has made.

The key to providing equity between accumulated benefits and contributions is that the assumed interest rate used for funding the plan be approximately equal to the actual rate being earned. For purposes of initial plan design, it has been assumed that the fund will earn 8% interest.  Conservative long term investments can now be made that will provide a yield of 8% or better.  One type

Kenyon & Kenyon                    -4-                    July 20, 1990

of investment that may be ideal for the plan is a guaranteed investment contract (GIC) from an insurance carrier or a bank. Under a GIC, a fixed return and guaranty of principal can be provided on all funds contributed over a 3 to 5 year period. If such an arrangement is used, then we could adjust the valuation rate for the plan during the guarantee period to be approximately equal to the investment rate to be earned under the contract.

If the actuarial valuation interest rate is matched up with the plan's expected investment return, then there will be no material variation between the value of a partner's accumulated contributions and the value of his benefit. A partner will know at the outset that he will receive a return of his own contributions plus the interest rate assumed for the valuation (e.g., 8%). If the plan earns slightly more than the valuation rate, the excess earnings would be used to reduce the cost for employees, and if the plan earns less than the assumed rate, the cost for employees will be increased. Therefore, any differences in investment return will be allocated proportionally to those partners who are supporting the cost for employees participating in the plan. Again, it is emphasized that any variations from year-to-year should be slight.

The regulations under Code Section 401(a)(26) do not permit a separate asset account to be maintained under the plan for each partner. Rather, a partner is eligible to receive the value of his accrued pension benefit. It is not permitted to make an adjustment outside the plan for the difference between a hypothetical asset account maintained for a partner and the actuarial value of his benefits. However, if the approach described above is followed, there should be no need for such an adjustment.

The actual benefit formula which we have designed is intended to provide benefits approximately equal to the maximum permitted under Code Section 415 for those partners who had individual defined benefit plans (IDBs) that were previously terminated. The formula takes into account both past and future service, and is integrated with Social Security (i.e., provides higher benefits for compensation above the Average Covered Wage Base) with respect to future service benefits only. The benefits credited for past service are accrued over the first 10 years of future service, in order that the plan will not have any unfunded past service benefits. Because the future service benefits are integrated with Social Security, it was not possible to integrate the past service benefits with Social Security.

B00019

Kenyon & Kenyon                    -5-                    July 20, 1990

The features of the proposed formula which provide integration with Social Security and provision of past service benefits are both very favorable to the partners, since they have considerably higher earnings and more past service than employees.

Actual benefits provided under the proposed plan are as follows:

Future Service - A Benefit of 0.525% of compensation + 0.125% of compensation in excess of the Average Covered Social Security Wage Base for each year of future service.

Past Service - A benefit of 0.65% of compensation for each year of past service to a maximum of 20 years. This benefit will be accrued over the first 10 years of future (from 10/1/89) service at a rate of 1/10th of the past service benefit each year. For purposes of the past service benefit, compensation will be based on the average of the 3 years immediately preceding 10/1/89.

The accrued pension benefit will be paid as a monthly annuity for life commencing at normal retirement date (the later of age 65 and completion of 5 years plan participation). You may also wish to provide an early retirement benefit, which would allow an employee to collect an actuarially reduced pension earlier, but would not increase the cost of the plan. You may wish to allow all participants to elect a lump sum settlement of their benefits, inasmuch as that is likely to be the most desirable method of payment for partners. However, as described below, lump sum payments will slightly increase the cost of the plan for staff. A married participant must be given the opportunity to receive a reduced monthly pension benefit payable over the combined lifetime of himself and his spouse and, in order to elect a lump sum settlement (unless his benefit is worth less than $3,500), he must obtain his spouse's consent.

Accrued benefits must vest in accordance with the minimum schedule required for top-heavy plans. A schedule of 100% vesting after 3 years or 20% after 2 years increasing 20% per year can be adopted. There is no material difference in cost between these two schedules. We have assumed that vesting will be 100% after three years because it is simpler to administer, and ensures that virtually all partners will be fully vested. If a partner is not fully vested when he terminates, it is permitted to provide a supplemental benefit outside the plan equal to his vested benefit. In such event, his plan benefit would be forfeited, and the value of such benefit would be used to offset the cost for employees.

B00020

Although it is intended that lump sums generally will be calculated using the actuarial valuation rate set forth in the plan, such payments must not be less than the minimum amount required by law. The law requires that if a lump sum is less than $25,000, it must be at least as great as the lump sum calculated based on the rates published by the Pension Benefit Guaranty Corporation (PBGC). If the lump sum exceeds $25,000, it must be at least as great as the amount calculated based on 120% of the rates published by the PBGC. Currently, the PBGC interest rate is 7.5% at retirement and is scaled down for years before retirement. For most short service employees, the lump sum rates published by the PBGC will be greater than the rates set forth in the plan, and there will be a small actuarial loss whenever a lump sum is paid, which will increase ongoing plan contributions. For longer service employees and partners, whose lump sum benefits will usually exceed $25,000, the plan rates will generally be more favorable than the PBGC rates, and no additional benefits will be payable based on the PBGC rates. However, for such individuals terminating before age 48, 120% of the PBGC rates may produce higher lump sums. We have taken into account these higher lump sums in determining plan costs.

## PLAN COSTS

The actual funding requirements for the plan will be based on a selected interest rate, assumed employee turnover, mortality rates and other appropriate actuarial factors, as is required by Code Section 412. This valuation will include both employees and partners. In addition, a separate valuation including only the partners will be made for internal use by the Firm. The separate valuation will be based on interest and mortality only, and will accurately determine the value of accumulating benefits for partners. The cost assessed to each partner for his individual benefits will be based on the separate valuation. Then all partners (or, if desired, those partners participating in the plan) will share the cost for employees, which will be deemed to be the difference between the total plan cost (based on the Section 412 valuation) and the cost for partners determined under the separate actuarial valuation.

Using an 8% interest rate, and appropriate turnover and mortality assumptions, the total cost for the proposed plan is $554,000, assuming all partners participate. The portion of this cost allocable to partners is $488,000. Therefore, if all employees were covered by the plan, including any highly compensated employees, deductions of $488,000 for partners could be generated based on a cost for employees of $66,000.

Kenyon & Kenyon                    -7-                    July 20, 1990

However, as described above, it is not necessary to cover all employees. Rather, a selected group could be covered which represents approximately 32% of the non-highly compensated employees. We will work with you in determining the appropriate group, but it is likely that a group could be selected that has a lower average cost than the overall group. Even if the 32% were representative of the overall group, the annual cost for employees should be less than $20,000. Therefore, every $1 of partner deduction, would cost 4¢ for employees. This would appear to be a very favorable relationship.

Under the final 401(a)(4) regulations, it may be necessary to credit the plan's past service benefit for non-highly compensated employees as of the effective date of the plan, rather than to accrue it over the first 10 years of plan participation. This would slightly increase the annual cost for employees, but probably by less than $5,000 per year.

As indicated earlier, we have designed the benefit formula to provide approximately the maximum permitted benefits under Code Section 415 for those partners who had IDBs. In fact, the plan could provide a formula providing larger benefits, which would increase benefits for those partners who did not have IDBs. However, the result of a richer benefit formula would be that the cost for employees would also be increased. If it is desired, we can determine contributions for both partners and employees under a different benefit formula.

It is important to note that, based on the top-heavy rules, the partners who had IDBs can fund benefits under the proposed plan only if the Firm annually contributes at least 7.5% of compensation for employees under the profit sharing plan, as planned. Such contribution level will permit higher benefit/contribution limits under Section 415, which are essential for the partners with IDBs.

We look forward to reviewing our report with you in the near future. Meanwhile, if you have any questions or need additional information please call.

Very truly yours,

Charles G. Thacher                    Deborah Bernstein

CGT:dh
knkrpt.001

B00022

KENYON & KENYON DEFINED BENEFIT PENSION PLAN STUDY
PARTNER LISTING AS OF OCTOBER 1, 1989

PAGE : 00001

| NAME | AGE | NORMAL RETIREMENT AGE | PAST SERVICE | FINAL AVERAGE EARNINGS | 1989 ANNUAL EARNINGS | PROJECTED ANNUAL PENSION | PROJECTED LUMP SUM VALUE | FYE 9/30/90 CONTRIBUTION |
|---|---|---|---|---|---|---|---|---|
| ALTMILLER, J. | 53 | 65 | 17 | 200000.00 | 200000.00 | 37205.00 | 342137.00 | 13680.77 |
| BADENOCH, G. | 49 | 65 | 19 | 200000.00 | 200000.00 | 44720.00 | 411245.00 | 10787.77 |
| BOLAND, W. JR. | 60 | 65 | 20 | 200000.00 | 200000.00 | 19350.00 | 177942.60 | 26158.62 |
| BOWES, A. | 53 | 65 | 20 | 200000.00 | 200000.00 | 41105.00* | 378002.00 | 15218.94 |
| BRACE, D. | 65 | 70 | 20 | 140558.00 | 145769.00 | 13592.15 | 110646.90 | 16265.75 |
| BRAINARD, C. | 56 | 65 | 20 | 200000.00 | 200000.00 | 34796.25* | 319986.32 | 19200.74 |
| BRENEISEN A. | 55 | 65 | 20 | 200000.00 | 200000.00 | 38625.00 | 355196.00 | 17768.62 |
| CARR, F. | 65 | 71 | 20 | 200000.00 | 200000.00 | 19387.50 | 153461.76 | 22559.79 |
| CHAPIN, H. | 64 | 69 | 20 | 200000.00 | 200000.00 | 19387.50 | 162104.70 | 23830.36 |
| CREEL, T. | 52 | 65 | 20 | 200000.00 | 200000.00 | 42364.00 | 389577.00 | 14091.61 |
| DELUCIA, R. | 41 | 65 | 11 | 187633.00 | 200000.00 | 43266.00 | 397874.00 | 4295.48 |
| FIER, R. | 63 | 68 | 20 | 200000.00 | 200000.00 | 19368.75 | 166137.39 | 24423.19 |
| FOGARTY, J. | 53 | 65 | 20 | 200000.00 | 200000.00 | 41105.00* | 378002.00 | 15218.94 |
| GALBRAITH, J. | 43 | 65 | 13 | 191896.00 | 200000.00 | 43578.00 | 400739.00 | 5228.51 |
| GRAY, A. | 47 | 65 | 20 | 200000.00 | 200000.00 | 48455.00 | 445592.00 | 9562.55 |
| GREASON, E. | 59 | 65 | 20 | 200000.00 | 200000.00 | 23220.00 | 213531.12 | 24220.95 |
| HAND, F. | 52 | 65 | 20 | 200000.00 | 200000.00 | 42315.00 | 389129.00 | 14077.91 |
| HANDLER III, E. | 52 | 65 | 20 | 200000.00 | 200000.00 | 42364.00 | 389577.00 | 14091.61 |
| HANLEY JR., W. | 38 | 65 | 13 | 191783.00 | 200000.00 | 49686.00 | 456912.00 | 4129.20 |
| HELLER, P. | 50 | 65 | 20 | 200000.00 | 200000.00 | 44825.00* | 412211.00 | 12069.54 |
| HEPNER, C. | 64 | 69 | 20 | 180595.00 | 182007.00 | 17541.20 | 146667.24 | 21560.16 |
| HUETTNER, R. | 63 | 68 | 20 | 168319.00 | 200000.00 | 17309.25 | 148471.82 | 21826.24 |
| LEMPEL, P. | 55 | 65 | 20 | 200000.00 | 200000.00 | 38625.00* | 355196.00 | 17768.62 |
| LENNON, M. | 43 | 65 | 17 | 200000.00 | 200000.00 | 49463.00 | 454857.00 | 7043.43 |
| MADSEN, K. | 56 | 65 | 20 | 200000.00 | 200000.00 | 34796.25 | 319986.32 | 19208.74 |

* The Projected Benefit is currently above the Section 415 maximum benefit but should not be above such maximum at retirement.

B00023

*This page↔UPT*
*xc Part G.*
~~xc Part C~~

Return to W. P. Thierfelder <u>no later than Wedesday,</u>
<u>October 17, 1990</u>

*new*
*xc of= Defined Benefit*
*Home Pension Plan*

*• calendar*

☑ I have elected to participate in the Kenyon & Kenyon
defined benefit pension plan.


I have over 20 years of service and I would prefer the
formula that provides for:

☐ full credit for <u>up to 20 years</u> of past service (See
Exhibit 1)*

☑ full credit for <u>all years</u> of past service (See Exhibit 2)

*is is*
*needed*
*option →*
☐ *Either would be fine*


☐ I have elected not to participate in the Kenyon & Kenyon
defined benefit pension plan.




*[signature]*
**(Full Signature)**



**\*Lower level of contribution than formula for credit of all
all years of past service.**

B00024

October 12, 1990

<u>CONFIDENTIAL</u>

<u>M E M O R A N D U M</u>

TO     :    THE PARTNERS

FROM   :    W. P. Thierfelder                    cc:  G. S. LaNatra
                                                      P. Grieshammer
DATE   :    October 11, 1990

SUBJ   :    **New Defined Benefit Pension Plan**

---

Under the new pension plan which has been adopted by Kenyon and Kenyon, the past service benefits for highly compensated participants will be different than those for non-highly compensated participants. You are a highly compensated participant affected by the rule.

Highly paid participants will receive credit for a past service benefit as described in the New Firm Retirement Plan (attached). However, such past service benefit will not be credited as of the plan's effective date (October 1, 1989), but rather will be earned over the first 10 years of your participation in the plan. For example, if your past service benefit credited as of October 1, 1989 was $5,000, you will earn such benefit at a rate of $500 during each year that you are employed commencing October 1, 1989. Therefore, you have already earned one-tenth of your past service benefit as of September 30, 1990.

If you terminate employment for any reason prior to completing ten years of service from October 1, 1989, then you will not have earned your full past service benefit. You will be credited with only that portion of the past service benefit that is earned.

Benefits under the new pension plan for all highly compensated participants will be the same as for all non-highly compensated participants, except as described above.

Contributions to the plan have to be made no later than the date the Firm files its tax return (including extensions), but in no event later than eight and one-half months following the close of the plan year or June 15, 1991 for the plan year just ended on September 30, 1990.

B00025

-2-

Therefore, it is up to each partner to select the schedule of payment most suitable to his circumstances as long as full payment is made by June 15, 1991.

However, the 1986 Tax Act requires that employers make quarterly contributions during the year. The quarterly contribution requirement is being phased in gradually, and for our plan year starting October 1, 1990, the minimum required contribution is 12.5% of the contribution required for the prior year. In other words, if the contribution for your plan year ending September 30, 1990 is $20,000, then $2,500 must be contributed quarterly for the plan year ending September 30, 1991, with the remainder of the contribution ($10,000) made by June 15, 1992. The required dates for making the quarterly contributions are: January 15, 1991, April 15, 1991, July 15, 1991 and October 15, 1991. We will notify you before these dates.

This paragraph principally applies to those partners who have twenty or more years of service. Mr. Thacher has provided us with the amounts of contribution, pension, etc. on two bases. One involves giving credit for up to twenty years of past service (Exhibit 1) and the other provides for full credit for all years of past service (Exhibit 2). You will notice that the latter reflects an amount of contribution and pension that is, in some cases, substantially higher than the former, especially for partners who are over fifty-five years of age. We will have to select one formula or the other for all partners, since the IRS does not allow an individual choice. Therefore, we will select the credit for past service formula that will allow maximum participation, after reviewing the partners' selection as indicated on the attached form. It is important that you return this information to me by Wednesday, October 17, 1990, since we have already started the second year of the plan and we have a lot of catch-up details to attend to.

B00026

KENYON & KENYON

WPT/ls
10/11/90

## New Firm Retirement Plan

We are pleased to announce that, effective for the Firm's fiscal year which ended September 30, 1990, we have a new pension plan to cover all eligible non-legal employees. In order to be eligible for the plan for its first year, you must have attained age 21 and completed one year of service (in which you worked at least 1,000 hours) as of April 1, 1990. If you are not eligible on such date, you will become eligible to participate in the plan as of the October 1st or April 1st after you meet the eligibility requirements.

For those employees who are eligible for the plan as of October 1, 1989, benefits have been earned for both past and future service as follows:

**Past Service Benefit** - Your past service benefit is equal to 0.65% of your average compensation multiplied by your years of credited past service. Your credited past service is the number of years of service prior to October 1, 1989 that you would have had if the plan had always been in effect. Your average compensation is the average of your annual earnings for the three years ending on September 30, 1989. If there are less than three years of earning from the date you would have joined the plan, then your earnings will be averaged over the shorter period. For example, if you had five years of credited past service and your three year average earnings were $30,000, your past service benefit would be a pension of $975 per year (0.65% × five years × $30,000).

**Future Service Benefit** - For each year that you participate in the plan, you will earn a future service benefit equal to 0.65% of your earnings for the prior year. In other words, if your earnings for the year ending September 30, 1989 were $26,000, you will earn an annual pension benefit of $169 (0.65% × $26,000) for the year ending September 30, 1990. Thus your pension will increase for each additional year of service.

B00027

KENYON & KENYON

All Benefits under the Plan are payable as a monthly pension commencing on the first day of the month coincident with or next following your normal retirement date, which is the later of your 65th or the 5th anniversary of the date of your participation in the plan. For any employee who is under age 61 as of the initial date of participation in the plan, the normal retirement age is 65.

At normal retirement you will receive the total value of all the pension benefits you have earned. For example, assume you are now age 50 and have earned a past service benefit of $1,000 per year. Further, assume that you earn a future benefit of $300 per year for each of your next 15 years to your normal retirement date. In such case, your total earned benefit at normal retirement date would be $5,500 (1,000, plus 15 × $300) per year, which is the amount of annual pension you would commence receiving at such time.

When you have reached age 55 and completed ten years of service, you are eligible for early retirement. When you retire early, you may defer commencement of your pension to your normal retirement date, or elect that it commence at your early retirement date. If it commences at your early retirement date, the amount of benefit will be reduced on an actuarial basis to reflect the longer period of time over which your benefits are expected to be paid.

If you terminate employment for any reason after three years of service, you will be 100% vested in the full value of your earned pension benefit. The vested benefit is payable at your normal retirement date. If your termination results from your death, your spouse will receive your full vested benefit. If you are not married, you may name a beneficiary for this benefit. Also, even if you are married, you may name a beneficiary other than your spouse, provided that your spouse consents to such alternate beneficiary. Your spouse must sign a form providing his or her consent, which must be witnessed by a notary public.

If you terminate employment for any reason prior to three years of service, no benefits are payable from the plan.

The pension benefits provided under the plan are paid monthly during your lifetime, and will terminate at your death. However, if you are married at the time of your retirement, you must receive benefit payments on a reduced basis which will be paid during your lifetime and will continue for the lifetime of your spouse after your death, unless you decline such benefit. In order to decline the benefit, you must have the notarized consent of your spouse.

2

B00028

KENYON & KENYON

If you are married, and wish to designate a beneficiary other than your spouse, please request the appropriate forms to make your election.

The plan also allows any employee who is eligible for early retirement (age 55 and 10 years of service) to elect to receive his benefit in a single lump sum payment. The amount of the payment will be the value of your entire lifetime pension benefit. If you are married, and you wish to elect a lump sum benefit, you must receive the notarized consent of your spouse. Under current law, any lump sum benefit paid from the plan can be transferred to an individual retirement account (IRA), to remain invested on a tax-deferred basis until you commence to withdraw it.

The new plan is subject to approval by the Internal Revenue Service. It's possible that the IRS will require changes in some of the above provisions, and you will be notified of any such changes. Therefore, although we do not expect any material changes, you should consider the above description as conditional upon the IRS' approval. Also, the above represents only the highlights of the plan, and you will be given a more detailed booklet describing the plan in the near future.

Concurrent with the adoption of our new pension plan, we have also revised the firm's profit sharing plan contribution formula. Although the firm always had the discretion of varying its profit sharing contribution from year to year, we have consistently contributed 7.5% of earnings for employees in the past. In order to accommodate the new plan, and probably for future years, we are intending to contribute 6.5% of annual earnings plus 5.7% of such earnings which are in excess of the Social Security Wage Base ($48,000 for the year ending September 30, 1990 and $51,300 for the year ending September 30, 1991) in the future. However, as in the past, our profit sharing contributions are not guaranteed, and can be varied from year to year at the discretion of the firm.

We believe that the new program, which incorporates a guaranteed pension benefit for all vested employees, plus a substantial profit sharing account, represents a significant improvement in our overall benefit program. We are pleased to be able to provide you with the new pension plan which will add to the security of you and your family. However, in the meantime if you have any questions regarding the plan or need additional information, please send Patt Grieshammer or me a brief note outlining the matter. In a few weeks you will receive a booklet with more complete information.

3

B00029

EXHIBIT 1    Formula for credit of up to 20 years of past service.

KENYON & KENYON DEFINED BENEFIT PENSION PLAN STUDY
PARTNER LISTING AS OF OCTOBER 1, 1989

PAGE : 00001

| NAME | AGE | NORMAL RETIREMENT AGE | PAST SERVICE | FINAL AVERAGE EARNINGS | 1989 ANNUAL EARNINGS | PROJECTED ANNUAL PENSION | PROJECTED LUMP SUM VALUE | FYE 9/30/90 CONTRIBUTION |
|---|---|---|---|---|---|---|---|---|
| ALTMILLER, J. | 53 | 65 | 17 | 200000.00 | 200000.00 | 37205.00 | 342137.00 | 13680.77 |
| BADENOCH, G. | 49 | 65 | 19 | 200000.00 | 200000.00 | 44720.00 | 411245.00 | 10787.77 |
| BOLAND, W. JR. | 60 | 65 | 20 | 200000.00 | 200000.00 | 19350.00 | 177942.60 | 26158.62 |
| BOWES, A. | 53 | 65 | 20 | 200000.00 | 200000.00 | 41105.00* | 378002.00 | 15218.94 |
| BRACE, D. | 65 | 70 | 20 | 140558.00 | 145769.00 | 13592.15 | 110646.90 | 16265.75 |
| BRAINARD, C. | 56 | 65 | 20 | 200000.00 | 200000.00 | 34796.25* | 319986.32 | 19208.74 |
| BREMEISEN A. | 55 | 65 | 20 | 200000.00 | 200000.00 | 38625.00 | 355196.00 | 17768.62 |
| CARR, F. | 65 | 71 | 20 | 200000.00 | 200000.00 | 19387.50 | 153461.76 | 22559.79 |
| CHAPIN, H. | 64 | 69 | 20 | 200000.00 | 200000.00 | 19387.50 | 162104.70 | 23830.36 |
| CREEL, T. | 52 | 65 | 20 | 200000.00 | 200000.00 | 42364.00 | 389577.00 | 14091.61 |
| DELUCIA, R. | 41 | 65 | 11 | 187633.00 | 200000.00 | 43266.00 | 397874.00 | 4295.48 |
| FIER, R. | 63 | 68 | 20 | 200000.00 | 200000.00 | 19368.75 | 166137.39 | 24423.19 |
| FOGARTY, J. | 53 | 65 | 20 | 200000.00 | 200000.00 | 41105.00* | 378002.00 | 15218.94 |
| GALBRAITH, J. | 43 | 65 | 13 | 191896.00 | 200000.00 | 43578.00 | 400739.00 | 5228.51 |
| GRAY, A. | 47 | 65 | 20 | 200000.00 | 200000.00 | 48455.00 | 445592.00 | 9562.55 |
| GREASON, E. | 59 | 65 | 20 | 200000.00 | 200000.00 | 23220.00 | 213531.12 | 24220.95 |
| HAND, F. | 52 | 65 | 20 | 200000.00 | 200000.00 | 42315.00 | 389129.00 | 14077.91 |
| HANDLER III, E. | 52 | 65 | 20 | 200000.00 | 200000.00 | 42364.00 | 389577.00 | 14091.61 |
| HANLEY JR., W. | 38 | 65 | 13 | 191783.00 | 200000.00 | 49686.00 | 456912.00 | 4129.20 |
| HELLER, P. | 50 | 65 | 20 | 200000.00 | 200000.00 | 44825.00* | 412211.00 | 12069.54 |
| HEPNER, C. | 64 | 69 | 20 | 182007.00 | 200000.00 | 17541.20 | 146667.24 | 21560.16 |
| HUETTNER, R. | 63 | 68 | 20 | 168319.00 | 200000.00 | 17309.25 | 148471.82 | 21826.24 |
| LEHPEL, P. | 55 | 65 | 20 | 200000.00 | 200000.00 | 38625.00* | 355196.00 | 17768.62 |
| LENNON, M. | 43 | 65 | 17 | 200000.00 | 200000.00 | 49463.00 | 454857.00 | 7043.43 |
| MADSEN, K. | 56 | 65 | 20 | 200000.00 | 200000.00 | 34796.25 | 319986.32 | 19208.74 |

* The Projected Benefit is currently above the Section 415 maximum benefit but should not be above such maximum at retirement.

B00030

EXHIBIT 1    Formula for credit of up to 20 years of past service.

. KENYON & KENYON DEFINED BENEFIT PENSION PLAN STUDY
PARTNER LISTING AS OF OCTOBER 1, 1989

PAGE : 00002

| NAME | AGE | NORMAL RETIREMENT AGE | PAST SERVICE | FINAL AVERAGE EARNINGS | 1989 ANNUAL EARNINGS | PROJECTED ANNUAL PENSION | PROJECTED LUMP SUM VALUE | FYE 9/30/90 CONTRIBUTION |
|------|-----|------|------|------|------|------|------|------|
| MAYER, R. | 55 | 65 | 20 | 200000.00 | 200000.00 | 38625.00 | 355196.00 | 17768.62 |
| MCCABE, P. | 40 | 65 | 15 | 200000.00 | 200000.00 | 50594.00 | 465260.00 | 5658.62 |
| MCQUILLAN, J. | 64 | 69 | 20 | 200000.00 | 200000.00 | 19387.50 | 162104.70 | 23830.36 |
| REICHMAN, J. | 34 | 65 | 5 | 200000.00 | 200000.00 | 44940.00 | 413268.00 | 2527.57 |
| ROSINI, J. | 36 | 65 | 11 | 150039.00 | 200000.00 | 46688.00 | 429343.00 | 3514.18 |
| SINDER, S. | 47 | 65 | 20 | 200000.00 | 200000.00 | 48523.00 | 446213.00 | 9571.87 |
| TOBIN, R. | 50 | 65 | 20 | 200000.00 | 200000.00 | 44825.00 | 412211.00 | 12069.54 |
| UNGVARSKY, M. | 53 | 65 | 20 | 200000.00 | 200000.00 | 41105.00 | 378002.00 | 15218.94 |
| WELLS, W. | 46 | 65 | 1 | 98077.00 | 98077.00 | 11753.00 | 108076.00 | 1522.84 |
| WISSER, S. | 36 | 65 | 5 | 200000.00 | 200000.00 | 42460.00 | 390462.00 | 2776.04 |

TOTAL PARTNER COST

===========
488754.62
===========
488754.62

STAFF COST
ALL STAFF COVERED                    66238.00
32% OF NHC'S COVERED                 17700.00

B00031

EXHIBIT 2        Formula for full credit for all years of past service.

KENYON & KENYON DEFINED BENEFIT PENSION PLAN STUDY
PARTNER LISTING AS OF OCTOBER 1, 1989

PAGE : 00001

| NAME | AGE | NORMAL RETIREMENT AGE | PAST SERVICE | FINAL AVERAGE EARNINGS | 1989 ANNUAL EARNINGS | PROJECTED ANNUAL PENSION | PROJECTED LUMP SUM VALUE | FYE 9/30/90 CONTRIBUTION |
|---|---|---|---|---|---|---|---|---|
| ALKMILLER, J. | 53 | 65 | 16 | 200000.00 | 200000.00 | 36322.00 | 335858.00 | 13330.74 |
| BADENOCH, G. | 49 | 65 | 18 | 200000.00 | 200000.00 | 44641.00 | 410519.00 | 9770.58 |
| BOLAND, W. JR. | 60 | 65 | 31 | 200000.00 | 200000.00 | 26650.00 | 245073.00 | 36027.26 |
| BONES, A. | 53 | 65 | 22 | 200000.00 | 200000.00 | 43762.00* | 404275.00 | 16407.07 |
| BRACE, D. | 65 | 70 | 24 | 140558.00 | 145769.00 | 15701.00 | 127814.00 | 18789.42 |
| BRAINARD, C. | 56 | 65 | 30 | 200000.00 | 200000.00 | 46197.00* | 424808.00 | 25835.23 |
| BREITEISEN A. | 55 | 65 | 20 | 200000.00 | 200000.00 | 39238.00 | 360833.00 | 17941.13 |
| CARR, F. | 65 | 71 | 39 | 200000.00 | 200000.00 | 31850.00 | 252109.00 | 37061.49 |
| CHAPIN, H. | 64 | 69 | 37 | 200000.00 | 200000.00 | 30550.00 | 255438.00 | 37550.87 |
| CREEL, T. | 52 | 65 | 22 | 200000.00 | 200000.00 | 45141.00 | 415117.00 | 15191.73 |
| DELUCIA, R. | 41 | 65 | 11 | 187633.00 | 200000.00 | 44847.00 | 412413.00 | 4137.33 |
| FIER, R. | 63 | 68 | 29 | 200000.00 | 200000.00 | 25350.00 | 217442.00 | 31965.30 |
| FOGARTY, J. | 53 | 65 | 21 | 200000.00 | 200000.00 | 43076.00* | 396127.00 | 15894.35 |
| GALBRAITH, J. | 43 | 65 | 12 | 191896.00 | 200000.00 | 43957.00 | 404229.00 | 5109.30 |
| GRAY, A. | 47 | 65 | 21 | 200000.00 | 200000.00 | 51312.00* | 471868.00 | 9274.20 |
| GREASON, E. | 59 | 65 | 30 | 200000.00 | 200000.00 | 31398.00 | 288732.00 | 32544.95 |
| HAND, P. | 52 | 65 | 24 | 200000.00 | 200000.00 | 48517.00 | 446165.00 | 16141.18 |
| HANDLER III, E. | 52 | 65 | 24 | 200000.00 | 200000.00 | 47522.00 | 437012.00 | 16141.18 |
| HARLEY JR., W. | 38 | 65 | 12 | 191783.00 | 200000.00 | 50162.00 | 461290.00 | 3476.19 |
| KELLER, P. | 50 | 65 | 21 | 200000.00 | 200000.00 | 46890.00* | 431200.00 | 12617.45 |
| HEFNER, C. | 64 | 69 | 20 | 180595.00 | 182007.00 | 17654.00 | 147610.00 | 21699.31 |
| HUETTNER, R. | 63 | 68 | 34 | 168319.00 | 200000.00 | 25100.00 | 215298.00 | 31649.42 |
| LEHPEL, P. | 55 | 65 | 22 | 200000.00 | 200000.00 | 42108.00 | 387228.00 | 19137.20 |
| LENNON, M. | 43 | 65 | 16 | 200000.00 | 200000.00 | 49590.00 | 456030.00 | 6174.72 |
| MADSEN, K. | 56 | 65 | 28 | 200000.00 | 200000.00 | 44308.00* | 407455.00 | 24543.46 |

* The Projected Benefit is currently above the Section 415 maximum benefit but should not be above such maximum at retirement.

B00032

EXHIBIT 2      Formula for full credit for all years of past service.

KENYON & KENYON DEFINED BENEFIT PENSION PLAN STUDY
PARTNER LISTING AS OF OCTOBER 1, 1989

PAGE : 00002

| NAME | AGE | NORMAL RETIREMENT AGE | PAST SERVICE | FINAL AVERAGE EARNINGS | 1989 ANNUAL EARNINGS | PROJECTED ANNUAL PENSION | PROJECTED LUMP SUM VALUE | FYE 9/30/90 CONTRIBUTION |
|---|---|---|---|---|---|---|---|---|
| MAYER, R. | 55 | 65 | 20 | 200000.00 | 200000.00 | 39909.00 | 361486.00 | 17941.13 |
| MCCABE, P. | 40 | 65 | 14 | 200000.00 | 200000.00 | 50806.00 | 467212.00 | 4524.64 |
| MCQUILLAN, J. | 64 | 69 | 27 | 200000.00 | 200000.00 | 24050.00 | 201089.00 | 29561.32 |
| REICHMAN, J. | 34 | 65 | 5 | 200000.00 | 200000.00 | 46539.00 | 427973.00 | 1782.05 |
| ROSINI, J. | 36 | 65 | 10 | 150039.00 | 200000.00 | 46979.00 | 432019.00 | 2425.33 |
| SIMOER, S. | 47 | 65 | 20 | 200000.00 | 200000.00 | 48905.00 | 449730.00 | 9693.05 |
| TOBIN, R. | 50 | 65 | 24 | 200000.00 | 200000.00 | 50125.00 | 460950.00 | 13838.49 |
| URGVARSKY, W. | 53 | 65 | 26 | 200000.00 | 200000.00 | 48905.00 | 449730.00 | 18457.99 |
| WELLS, W. | 46 | 65 | 0 | 98077.00 | 98077.00 | 12128.00 | 111529.00 | 1467.07 |
| WISSER, S. | 36 | 65 | 4 | 200000.00 | 200000.00 | 43272.00 | 397929.00 | 1940.01 |
| | | | | | | | | 580042.14 |
| | | | | | | | | 580042.14 |