# EXHIBIT E

## Proposed Kenyon & Kenyon Partners Pension Plan

### Questions & Answers

**Q-1: Please provide an overview of the changes to the Firm's retirement plans that are being considered.**

As a partner, you currently participate under three Firm sponsored plans. The first two are the Kenyon & Kenyon Retirement Plan and Trust for Partners, of-Counsels, Secretaries and Paralegals and the Kenyon & Kenyon Retirement Plan for Partners, Counsels and Non-Secretarial Staff. Both Plans are defined contribution plans. These two plans are scheduled to be merged into one plan effective October 1, 2003. No other changes are being made to these plans with respect to partners. The third plan is the Kenyon & Kenyon Pension Plan (the "Current DB Plan") – a defined benefit plan that covers all partners and employees of the Firm (but excludes associates). The changes discussed herein will impact this plan in two ways.

First, as of September 30, 2003 your benefit accrued under the Current DB Plan will be frozen[1]. This means that the benefit you have accrued as of that date will be preserved and payable to you under the terms of that plan. However, you will not accrue any additional benefits under that plan.

Second, effective as of October 1, 2002 a new defined benefit plan will be established that only covers partners of the Firm. As explained more fully in this document, the benefit accrual (or income deferral) opportunity is significantly greater under this new program. The structure of this program also takes advantage of recent changes in the tax laws – and is similar to the programs established by many of our peer firms.

For the fiscal year ending September 30, 2003, you will have a direct cost allocation related to your accrual under the Current DB Plan as well as a direct cost allocation for the benefit that will be accrued under this new plan. Thereafter, you will have a cost allocation for the benefit under the new plan. As you know, the Current DB Plan is underfunded today and the Firm will continue to make contributions to that plan as required. The contributions required to the Current DB Plan after this year will constitute a general expense of the Firm.

---

[1] This plan also covers staff employees. It is being proposed that the plan be frozen with respect to staff employees as well. In exchange, the contribution under the K&K Savings Plan will be increased to 7.5% (from 6.5%).

1

**Q-2: What are the characteristics of the new plan? Why is the Firm considering it?**

Recent changes in the tax law and applicable testing rules provide an attractive and practical means for partners to accrue additional benefits under a tax-qualified defined benefit plan – in addition to the amounts being deferred under the Firm's existing defined contribution plan. The structure of this new plan is different from the Current DB Plan in that it provides significantly higher deferral opportunities, as well as flexibility to the partnership regarding the level of deferral that can apply to various partners.

The plan the Firm is considering implementing is called a "cash balance plan". Although the new plan is a defined benefit plan, it looks and operates very much like defined contribution plan. Some of the key characteristics of the new plan include the following:

*Significant opportunity.* Most partners will be able to accrue an additional $5,000 to over $100,000 per year to the plan. The Firm's contributions that will be made on behalf of partners for the benefit that is accrued under the plan will be tax-deductible.

*Variations in accrual among partners.* Generally, your annual accrual will be tied to your compensation and age as described below. Depending on your compensation, your age may limit the amount of your accrual.

*Parity among partners.* Each partner will be responsible for the cost associated with his or her benefit. Unlike most traditional defined benefit plans, you will not subsidize the cost related to your partners.

*Earnings on Firm contributions.* Generally, partners' accruals will grow based on a credited rate of interest. It is currently contemplated that the credited rate of interest will be the 30-year Treasury Rate (currently around 5%). The plan's actual investment earnings will have an impact on the Firm's future contribution obligations on your behalf.

*Portability.* Your hypothetical account balance can and is expected to be distributed to you upon your termination from the Firm or the termination of the plan, if earlier. At that time, you may rollover the balance to an IRA or another qualified plan and thereby continue the tax deferral.

*Creditor Protection.* Because the plan is a qualified plan, your benefit will have the highest form of protection against creditors.

Under the plan, the Firm will make a contribution to a hypothetical account for each partner covered by the plan. The amount contributed by the Firm on your behalf will be tax deductible to you. As described below, your hypothetical account will

2

grow with earnings. The plan contemplates that the value of your account will eventually be distributed to you or your beneficiary in a lump sum.

As indicated above, each partner will be responsible for funding his or her own benefit. Your benefit will be equal to the amount contributed by the Firm on your behalf and the interest credits to your hypothetical account. The plan's actual investment earnings will decrease or increase the Firm's future contribution obligations on your behalf.

### Q-3: Who will participate in the plan?

The plan will cover all equity and non-equity partners who are with the Firm as of the adoption date of the plan (which is expected to be around the end of September, 2003). Associates and Counsel who become active partners will commence participation as of the date of their election to the Partnership. Lateral partners will start to participate as of the completion of one year of service after the date of their election to the Partnership.

### Q-4: What is my benefit under the plan?

Your benefit under the plan is the value of your hypothetical account. The plan is designed such that your benefit ultimately equals the Firm's contributions made on your behalf, plus the plan's actual investment earnings.

### Q-5: What is the amount of the Firm's contributions to the plan on my behalf?

Once you are a participant, the Firm will make contributions to the plan for each year that they remain in effect (see Q-12) and for which you remain with the Firm.[2] The amount of the Firm's contribution on your behalf will be based on a Target Contribution (as described) and will be modified, after the first year, by an Earnings Adjustment (see Q-6).

The Target Contribution applicable to you will be determined based on your compensation for the plan year and your age on the last day of the plan year. The Executive Committee is recommending the schedule shown below. However, before discussing the recommended schedule, it is instructive to discuss the maximum opportunity that could be provided under the plan.

The maximum accrual that is available with respect to any partner is governed by various IRS rules and regulations. The IRS Maximum Amounts (at five-year age intervals) that will apply for the plan year ending September 30, 2003 are set forth on the following page:

---

[2] This includes service as a partner (including a partner on leave). It does not include former partners who have attained Senior Counsel status or are consultants.

3

B00036

| Partner's Age | IRS Maximum Amount for 2002/03 Plan Year |
|---|---|
| 35 | $ 43,763 |
| 40 | 56,554 |
| 45 | 73,214 |
| 50 | 94,949 |
| 55 | 123,336 |
| 60 | 160,428 |
| 65 | 168,278 |

The IRS Maximum Amount for each age is shown on Appendix A.

While it is anticipated that some partners would like to defer at this maximum level, this level is probably not practical for many partners. Accordingly, the Target Contribution attempts to come up with a contribution that is "appropriate" for partners throughout the partnership. Obviously, it is based on assumptions made with respect to the group as a whole, and not individual circumstances.

The plan will consist of four alternate schedules that can apply to each partner. Prior to the adoption of the plan each partner will be given the opportunity to designate which schedule would be their preference. All Partners joining the plan after September 30, 2003 will participant under Schedule A. The four schedules are as follows, subject to the IRS Maximum Amount (the definition of each group is defined immediately after this table):

Schedule A

| Age | Group 1 | Group 2 | Group 3 | Group 4 | Group 5 |
|---|---|---|---|---|---|
| Below 35 | 10,000 | 15,000 | 30,000 | 35,000 | 40,000 |
| 35-39 | 10,000 | 15,000 | 30,000 | 40,000 | 48,000 |
| 40-44 | 10,000 | 20,000 | 40,000 | 45,000 | 55,000 |
| 45-49 | 10,000 | 20,000 | 40,000 | 50,000 | 60,000 |
| 50-54 | 10,000 | 25,000 | 45,000 | 60,000 | 70,000 |
| 55-59 | 10,000 | 25,000 | 45,000 | 70,000 | 90,000 |
| 60+ | 10,000 | 30,000 | 50,000 | 80,000 | 100,000 |

4

For purposes of the plan, you will participate in the group be based on your partner income for the year as follows:

|         | Partner Income |
|---------|----------------|
| Group 1 | below $400,000 |
| Group 2 | $400,001 - $500,000 |
| Group 3 | $500,001 - $750,000 |
| Group 4 | $750,001 - $1,000,000 |
| Group 5 | Over $1,000,000 |

Schedule B
(one-half of Schedule A)

| Age | Group 1 | Group 2 | Group 3 | Group 4 | Group 5 |
|---|---|---|---|---|---|
| Below 35 | 5,000 | 7,500 | 15,000 | 17,500 | 20,000 |
| 35-39 | 5,000 | 7,500 | 15,000 | 20,000 | 24,000 |
| 40-44 | 5,000 | 10,000 | 20,000 | 22,500 | 27,500 |
| 45-49 | 5,000 | 10,000 | 20,000 | 25,000 | 30,000 |
| 50-54 | 5,000 | 12,500 | 22,500 | 30,000 | 35,000 |
| 55-59 | 5,000 | 12,500 | 22,500 | 35,000 | 45,000 |
| 60+ | 5,000 | 15,000 | 25,000 | 40,000 | 50,000 |

Schedule C         Schedule D

| Age | Groups 1-5 | Groups 1-5 |
|---|---|---|
| Below 35 | 2,000 | Max e.g. 32 = 37,000 |
| 35-39 | 2,400 | Max e.g. 37 = 48,000 |
| 40-44 | 3,200 | Max e.g. 42 = 62,000 |
| 45-49 | 4,300 | Max e.g. 47 = 81,000 |
| 50-54 | 5,700 | Max e.g. 52 = 105,000 |
| 55-59 | 7,500 | Max e.g. 57 = 136,000 |
| 60+ | 9,500 | Max e.g. 65 = 168,000 |

5

Schedules A & B take into consideration compensation for the plan year and age at the end of the plan year, as your compensation and age changes from year to year your Target Contribution amount will change as well. The target contribution under Schedule C reasonably equates the accrual under the Current DB Plan. The target contribution under Schedule D is the IRS maximum. Please note that an additional limitation will apply to those cases in these schedules since the target contribution will not exceed 25% of income.

Should your net earnings from self-employment fall below the maximum IRS qualified plan compensation limit (currently $200,000), your Target Contribution will be multiplied by the ratio of your net income to the IRS limit (e.g., if your net earnings from self-employment is $150,000, your contribution will be 75% of the Target Contribution for your compensation and age).

With this Q & A you also should have received an individualized statement that sets forth your Target Contribution, after reflecting the IRS Maximum Amount, for the 2002/03 plan year. This statement also sets forth your projected hypothetical account balance in five years, and the cost (i.e., the sum of the Firm's contributions made on your behalf) assuming different investment returns are realized during the five-year period and that your Target Contribution remains at the existing level.

Please note that the voluntary contribution to the 401(k) plan is $11,000 for 2003. Therefore, each partner will have discretion with respect to this amount of contribution and can decide whether or not to make the voluntary 401(k) contribution or use those funds to meet the additional cash flow demand imposed by the proposed plan and the required contribution under the Retirement Savings Plan.

**Q-6: How do the plan's actual investment returns affect the Firm's contribution obligation on my behalf?**

To comply with IRS rules, your hypothetical account is deemed to increase each year by the rate of return on 30-year Treasury Bonds ("Treasury Rate"). However, the assets will, in all likelihood, earn something other than the Treasury Rate. So, what is the impact on the Firm's contribution to be made on your behalf?

**In simple terms, each year the increase in your hypothetical account will need to be funded through either cash contributions or investment returns. To the extent the overall investment returns on the plan's assets exceeds the Treasury Rate, the excess earnings will reduce the amount the Firm will need to contribute on your behalf for which you are ultimately responsible. Conversely, to the extent that the investment returns are less than the Treasury Rate, the Firm's contribution to be made on your behalf will increase.**

6

The Firm will have the option to amortize (over a five-year period) the amount of any investment loss (i.e., the amount by which the actual return is less than the Treasury Rate). In that situation, although you will have allocated to you a share of the entire investment loss, the Firm's contribution made on your behalf will only be increased by the amortized portion of such amount. The unamortized portion will be carried over to future plan years. If in a subsequent year the plan experiences an investment gain, the gain will first be applied to reduce any outstanding loss.

**Example:**

For the 2002/03 plan year, assume a partner in Group 3 is age 55. The Target Contribution would be $45,000. Since this is the first plan year, the Firm's contribution to be made on behalf of the partner is that amount, or $45,000.

For the 2003/04 plan year, assume the partner is still in Group 3. The Target Contribution would remain at $45,000. If the Treasury Rate for 2003/04 was 5% but the actual trust return was 7%, the Firm's contribution to be made on behalf of the partner for the 2003/04 plan year would be determined as follows:

| | | |
|---|---|---|
| Target Contribution | | $ 45,000 |
| Earnings Adjustment: | | |
| Expected Return (5%) | $ 2,250 | |
| Actual Return (7%) | 3,150 | |
| Excess Return (Gain) | | (900) |
| Cash Contribution for 2003/04 plan year | | $ 44,100 |

For the 2004/05 plan year, the partner moves into Group 4 and the Target Contribution increases to $70,000. If the Treasury Rate is still 5% but the actual trust return was only 3%, the Firm's contribution to be made on behalf of the partner for the 2004/05 plan year would be determined as follows:

| | | |
|---|---|---|
| Target Contribution | | $ 70,000 |
| Earnings Adjustment: | | |
| Expected Return (5%) | $ 4,613 | |
| Actual Return (3%) | 2,768 | |
| Shortfall (Loss) | $ (1,845) | |
| Portion of loss recognized[3] | | 406 |
| Portion of loss not recognized and carried over to next year | $ (1,439) | |
| Cash Contribution for 2004/05 plan year | | $ 70,406 |

---

[3] The tax law requires that, at a minimum, the loss be amortized over 5 years. This represents the amortization payment. The remaining loss would be carried over and recognized in future years.

7

B00040

In this example, the partner would be responsible for the entire "investment loss" of $1,845. While only $406 is recognized currently and included in the Firm's contribution on behalf of the partner, the partner will be responsible for making up the entire deficiency if he terminates from the Firm. The Firm has the discretion to fully fund the investment loss in the year it is incurred.

While the Firm will be making contributions on behalf of partners, each partner will be responsible for the contribution made on his or her behalf. Even after a partner leaves the Firm, he or she will be responsible for any contributions that the Firm makes on his or her behalf due to investment losses. This responsibility will continue until the partner elects a distribution from the plan or an annuity contract is purchased.

**Q-7: How will the plan's assets be invested?**

Because the plan is a defined benefit plan, you will not be able to direct the investment of your hypothetical account (as is done under the Retirement Savings Plan). Instead, the plan's assets will be pooled and invested at the direction of the Firm's Retirement Program Investment Committee.

It is expected that the philosophy that will be followed for the plan will be to seek a return greater than the Treasury Rate but consistent with the risk of not materially under performing the Treasury Rate for an extended period. While the assets remain in the plan, you may wish to think of the funds in your hypothetical account as a conservatively invested portion of your overall investment portfolio. When you leave the Firm or, if earlier, the plan is terminated, your hypothetical account balances can be rolled over to an IRA or another qualified plan. This will permit you to continue to defer taxes and individually direct the investment of these assets.

**Q-8: When may I withdraw my benefit from the plan?**

You will be able to withdraw your benefit under the plan on the earliest of (a) leaving the Firm, (b) termination of the plan, or (c) attaining Normal Retirement [Age/Date] under the plan. We expect that most partners will want to take their distribution in the form of a lump sum, but the plan will also permit distribution in the form of an annuity.

A Lump sum distribution may be rolled over tax-free to an IRA or other eligible tax-sheltered vehicle (thus continuing to postpone taxation of the distribution and allowing continued tax-deferral of earnings). Most such vehicles allow individual investment direction. The Code requires spousal consent for an election to take a lump-sum distribution. An annuity distribution will not be eligible for rollover. A distribution that is not rolled over is subject to income tax at ordinary income rates. In addition, a distribution that is made before age 59-½ and is not rolled over will be subject to an additional 10% tax unless one of several exceptions applies. You may also be responsible for additional costs if you elect an annuity form of distribution.

B00041

You will not have access to your benefit under the plan other than as described above. You will also not be able to borrow from, or pledge your benefit under the plan.

**Q-9: What happens if I don't want to take a lump sum distribution?**

When you leave the Firm you will be given the option of receiving a lump sum distribution, an annual annuity benefit or leaving your hypothetical account in the plan. If you elect to receive an annuity benefit, an annuity contract will be purchased. Any additional cost associated with such purchase will be your responsibility.

If you elect to leave your hypothetical account in the plan, an annuity contract may be purchased. Such annuity contract will allow you to take a lump sum payment equal to your hypothetical account, with interest accumulated at the Treasury Rate, at any future date. If an annuity contract is purchased, your hypothetical account will not be adjusted for the actual investment performance of the plan (i.e., you will not receive any of the gains, nor be responsible for losses).

The "additional cost" associated with the purchase of the annuity contract will be equal to the difference between the cost of such contract and your hypothetical account. If the annuity contract should cost less than your hypothetical account, the "savings" would go toward reducing you final contribution.

If an annuity contract is not purchased for your benefit, your hypothetical account will continue to be credited annually with the interest crediting rate until distributed. You will be responsible for any contributions that the Firm makes on your behalf should the plan's actual investment returns be less than the interest crediting rate.

**Q-10: When will contributions be made to the plan?**

Your share of the Firm's contribution made on your behalf for the 2002/03 plan years will be withheld from your final distribution for 2002/03. (If these sources are insufficient, you will be asked to write a check to the Firm for the difference.)

**Q-11: When will the plan be effective?**

The plan will be effective beginning as of September 30, 2003.

9

B00042

## Q-12: How long will the plan remain in effect?

It is the intention of the Firm that the plan be permanent. However, it is possible that the plan could be terminated when there are changes in applicable tax law or other factors that make continuation of the plan undesirable. We expect that the maximum distribution limitations will not generally affect the plan for at least eight years, but may affect the plan on or before ten years. If the plan is terminated because it appears that these limitations may start to affect partners, it is possible that the Firm would adopt a new plan covering partners who would still have room left under the limitations. (This could include, for example, partners whose benefit have been limited by the plan and partners who, by reason of their tenure as partners have not, up to that time, fully participated.)

## Q-13: What amendments to the Partnership Agreement are necessary to implement the plan?

There are at least two amendments that may be needed. The first, necessitated by a Code provision, provides that the Firm's tax deduction for contributions to the plan will be specifically allocated to the partners in proportion to the amount of their Target Contribution (as limited by law).

The second protects the Firm from any loss with respect to the plan, for example, in the event that a partner elects an annuity distribution or leaves at a time when the value of his or her benefit under the plan are greater than the amount of the Firm's contributions made on his or her behalf plus actual earnings. For example, as described in Q-6, if the plan's actual earnings in a year are less than the Treasury Rate, this difference is made up from increased contributions by the partner over up to five years. If the partner leaves the Firm before this deficit is made up, the Partnership Agreement will provide that the departing partner will be obligated to make the Firm whole for this difference.

10

B00043

Appendix A

### IRS Maximum Amounts by Age for the 2002/03 Plan Year

| Age | IRS Maximum Amount 2002/03 |
|---|---|
| 35 | 43,763 |
| 36 | 46,060 |
| 37 | 48,479 |
| 38 | 51,030 |
| 39 | 53,719 |
| 40 | 56,554 |
| 41 | 59,542 |
| 42 | 62,693 |
| 43 | 66,015 |
| 44 | 69,518 |
| 45 | 73,214 |
| 46 | 77,109 |
| 47 | 81,220 |
| 48 | 85,554 |
| 49 | 90,126 |
| 50 | 94,949 |
| 51 | 100,036 |
| 52 | 105,402 |
| 53 | 111,064 |
| 54 | 117,036 |
| 55 | 123,336 |
| 56 | 129,983 |
| 57 | 136,995 |
| 58 | 144,392 |
| 59 | 152,196 |
| 60 | 160,428 |
| 61 | 169,111 |
| 62 | 178,273 |
| 63 | 175,005 |
| 64 | 171,673 |
| 65 | 168,278 |

B00044