# EXHIBIT F




To: Kenyon & Kenyon Partners
From: Kenyon & Kenyon Pension Committee
Date: 7/11/2005
Re: Kenyon & Kenyon Pension Plan – Proposed Funding Policy

Due to various factors (plan freeze, low lump sum rates, current funding policy), CCA has been asked to review the current state of underfunding of the Pension Plan. Below, in Q&A format, is a review of the current funding policy and CCA's proposed changes.

**Q1.) What is the current funding policy?**

The current funding policy of the Firm is to contribute the ERISA Required Minimum Contribution (the "Minimum") under Code section 412.

**Q2.) How are the contributions currently allocated?**

The contributions are allocated by first determining which portion of the contribution is attributable to the staff participants and which portion is attributable to the partners. The contribution is allocated to the staff or partners in proportion to each group's total Present Value of Accrued Benefits (the "PVAB"). The PVAB is calculated using the lump sum payout assumptions of the Plan.

Example:
Minimum = $100,000
PVAB staff = $35,000
Total PVAB = $80,000

Staff share of Minimum: $100,000 x 35,000 / 80,000 = $43,750
Total partner share of Minimum = $100,000 – 43,750 = $56,250

The staff share of the Minimum is then taken as a Firm expense.

**Q3.) How is the partners' share of the contribution allocated back to the individual partners?**

Under the current allocation policy, the partner share of the Minimum is allocated back to individual partners based on the underfunding of their own benefit. The underfunding is calculated by taking the difference between the Hypothetical Asset Account and the PVAB.

The Hypothetical Asset Account is a notional account equal to the sum of past contribution credits and interest credits. The contribution credits are equal to each partner's share of the allocated contributions for each plan year. The interest credits are calculated using the valuation interest rate of the Plan and compound interest. The valuation interest rate of the plan was 8.00% up through the October 1, 2002 valuation and 6.00% thereafter.

216 South Jefferson Street, Suite 600, Chicago, IL 60661
Phone: 312.454.3222 Fax 312.454.1213
www.ChicagoConsultingActuaries.com

*Where numbers become ideas*
Boston | Chicago | Dallas | Denver | Jacksonville | San Francisco

B00045



Re: Kenyon & Kenyon Pension Plan
7/11/05
Page 2.

**Q4.) What happens when a partner leaves the Firm?**

If a partner leaves the firm with an underfunded benefit, the amount of underfunding is allocated back to remaining partners. Currently, a terminating partner does not make up his or her underfunding either at termination or at distribution.

**Q5.) What are the proposed changes to the current funding policy?**

The overall funding policy of the firm will not change. Due primarily to interest rates being at historically low levels, the cost to terminate the plan today is around $4 million. The current annual Minimum funding is around $700,000. The Firm will continue to contribute the Minimum until such time it is in the Firm's best interest to terminate the plan. The Firm, in conjunction with CCA, will monitor the funding level of the plan on an annual basis.

The proposed change will affect partners that terminate with an underfunded. As mentioned in Q4, the current policy allows partners who terminate to receive their full benefit even if they have not fully funded their benefit. Unlike the current policy, terminating partners will now be required to make up their own underfunding upon termination. If the partner does not take a lump sum distribution (or start to receive an annuity) upon termination, there will be an additional final underfunding true-up calculation upon benefit distribution (or commencement if the annuity option is chosen). The terminated partner will be required to pay the Firm the true-up amount in order to complete the distribution process.

Any money recouped from terminating partners will be paid to the trust as additional contributions.

**Q7.) What will allow the Firm to recoup the underfunding from terminating partners?**

CCA has many law firm clients that have amended their partnership agreement in order to insure that terminating partners pay all outstanding pension plan related underfunding before they receive any distributions from their defined benefit plans. The underfunding calculated for a partner upon termination of employment with the firm will be held back from their capital account.

An amendment to the partnership agreement can also include language for partners who become of counsel (or directly in the of counsel agreement) and for post-65 underfunding.

**Q8.) Given that interest rates and market returns can change rapidly, what can be done to prevent the contributing of too much money?**

CCA, as part of the annual valuation process, will communicate the funded status on a termination basis to the Firm. After a few years, it may well be the case that the underfunding is small enough that the Firm would wish to terminate the plan. All would welcome this result.

216 South Jefferson Street, Suite 600, Chicago, IL 60661
Phone: 312.454.3222  Fax 312.454.1213
www.ChicagoConsultingActuaries.com



Re: Kenyon & Kenyon Pension Plan
7/11/05
Page 3.

**Q9.) What happens to partners who remain active in the Firm past age 65 and do not take an in-service distribution?**

They will be treated the same as terminated partners in that they will be required to pay any underfunding that results from post-65 actuarial increases and fluctuations in the lump sum interest rate. This underfunding amount will be paid on an annual basis, not as a one-time expense upon distribution.

One concern is that as the lump sum interest rate fluctuates, the value of a partner's lump sum could be worth less than the Hypothetical Asset Account upon distribution. Question 10 below addresses this concern.

**Q10.) What happens on the flip side – interest rates increase significantly causing the lump sums to decrease?**

First, as mentioned above it is our intention to monitor the funded status of the plan as a whole, so it is our expectation that this issue should not arise as it is our hope that the plan will be terminated before any partner would leave in an overfunded state.

However, in the unlikely event that the above occurs and a partner's lump sum at termination is worth less than his or her Hypothetical Asset Account, the Firm would pay the partner the amount of the overfunding as income. The amount that the Firm pays to the terminated partner would be allocated back to the partners that remain in the plan. The overfunding of assets in the trust would be allocated back to the remaining partners in the plan as gains in the pension trust.

This procedure would also be followed for partners who are over 65 and have not taken a distribution (or have not started to receive an annuity).

CCA has many law firm clients who incorporate this into their partnership agreement as well.

**Q12.) What does CCA propose in the situation that the partner dies?**

Other CCA clients treat a death as a termination. A termination underfunding would be calculated upon death and paid for by the partner's capital account. Other CCA clients do not perform a further true-up calculation upon distribution if significantly later than the date of death.

216 South Jefferson Street, Suite 600, Chicago, IL 60661
Phone: 312.454.3222  Fax 312.454.1213
www.ChicagoConsultingActuaries.com




Re: Kenyon & Kenyon Pension Plan
7/11/05
Page 4.

### Example of Partner's Current Contribution Allocation / Existing Funding Method

Partner A's Hypothetical Asset Account as of 10/1/2002 = $100,000
Partner A's allocated contribution made on 10/1/2003 = $10,000
PVAB at 10/1/2004 = $165,080

A's Hypothetical Asset Account as of 10/1/04 = $100,000(1.08)(1.06) + 10,000(1.06) = $125,080
Partner A's underfunding = $165,080 - 125,080 = $40,000
Each individual partner's share of the Minimum is then calculated by multiplying the ratio of their underfunding to the total partner underfunding by the total partner share of the Minimum.

Total partner share of Minimum = $56,250 (from Q2.)
Partner A's underfunding = $40,000
Total partner underfunding = $1,000,000

Partner A's allocated Expense = $56,250 x 40,000 / 1,000,000 = $2,250

The termination underfunding would be calculated as the difference between the Hypothetical Asset Account and the lump sum that could have been paid as of the first of the month after termination.

The underfunding for a terminated partner at commencement is equal to the difference between the Hypothetical Asset Account and the lump sum paid (or in the case of an annuity the lump sum that would have been paid).

216 South Jefferson Street, Suite 600, Chicago, IL 60661
Phone: 312.454.3222  Fax 312.454.1213
www.ChicagoConsultingActuaries.com

B00048