## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF NEW YORK

CHARLES BRAINARD,

        *Plaintiff,*

v.

KENYON & KENYON LLP, the KENYON &
KENYON PENSION PLAN, and GEORGE
BADENOCH, MICHAEL LOUGHNANE, and
ROBERT TOBIN (all individuals),

        *Defendants.*

Case No. 07 CIV 8535 (LBS)

## DEFENDANTS' REPLY MEMORANDUM
## IN SUPPORT OF THEIR MOTION TO
## (1) DISMISS COUNTS I & II OF THE COMPLAINT OR,
## IN THE ALTERNATIVE,
## (2) STAY COUNT I AND REFER COUNT II TO ARBITRATION

Kay Kyungsun Yu (KY 7807)
PEPPER HAMILTON LLP
The New York Times Building
37th Floor
620 Eighth Avenue
New York, NY 10018-1405
Tel.: 215.981.4188
Fax: 215.689.4515
E-mail: yukay@pepperlaw.com

*Counsel for Defendants, Kenyon & Kenyon
LLP; the Kenyon & Kenyon Pension Plan;
George Badenoch; Michael Loughnane; and
Robert Tobin*

# TABLE OF CONTENTS

I.    ARGUMENT ............................................................................................. 1

    A.    Motion to Dismiss ......................................................................... 3

        1.    Count I:  Brainard's ERISA Claims........................................ 3

            a.    Section 502(a)(1)(B)........................................... 3

            b.    Standing Under ERISA....................................... 5

            c.    Section 502(a)(3) ............................................... 6

            d.    Brainard's Use of Extrinsic Documents ............. 6

        2.    Count II:  Brainard's State Law Claims .................................. 8

            a.    Supplemental Jurisdiction................................... 8

    B.    Motion to Stay Count I and Refer Count II to Arbitration ........... 8

II.   CONCLUSION........................................................................................ 10

## I.    ARGUMENT

Plaintiff Charles Brainard ("Brainard") was a partner at Kenyon & Kenyon LLP ("Kenyon & Kenyon" or the "Firm") for thirty-eight years. As a result, Brainard was eligible to and did in fact participate in the Kenyon & Kenyon Pension Plan (the "Plan"). As well, Brainard, by virtue of his position as a partner, was one of the owners of the Firm which, in turn, was the sponsor of the Plan. Brainard thus wore two hats with respect to the Plan. First, Brainard was a participant of the Plan entitled to certain benefits as prescribed by the Plan's terms. Second, Brainard shared in the responsibility of the Plan sponsor to properly fund the Plan and pay for Plan benefits.

Like Brainard, Kenyon & Kenyon also wore two hats vis-à-vis the Plan. The Firm was and is responsible for administering the Plan both as its Administrator and as its named fiduciary. In addition, the Firm has separate funding obligations in its settlor capacity as the sponsor of the Plan. *See, e.g., Hunter v. Caliber System, Inc.*, 220 F.3d 702, 718 (6th Cir. 2000) (recognizing that "employers who are also plan sponsors wear two hats: one as a fiduciary in administering or managing the plan for the benefit of participants and the other as employer in performing settlor functions such as establishing, *funding*, amending, and terminating the trust") (emphasis added).

Brainard has taken this unusual circumstance, where both he and the Firm act in dual capacities, to conflate improperly two aspects of this ERISA Plan that otherwise would be obviously separate and distinct. These are: (1) determining the benefits due Brainard under the terms and the Plan; and (2) the extent of Brainard's funding obligation under the Plan as a former partner and of counsel of Kenyon & Kenyon. The first aspect requires an examination of the Plan's terms and, therefore,

constitutes a fiduciary matter involving an interpretation of the Plan, which is governed by ERISA. On the other hand, the second aspect cannot be determined by reference to the Plan, and is a matter that involves the Firm's settlor function, which is governed by state law.[1]

There is absolutely no dispute between the parties as to the first question. Brainard admits that, "[o]n June 30, 2005, the Plan paid Brainard his accrued benefit in the form of a single lump sum distribution of $1,019,817.66." Complaint ¶20. *See also* Plaintiff's Memorandum of Law in Opposition to Defendants' Motion ("Opposition") at 1 ("In 2005, [the Plan] made a lump sum distribution to Brainard of approximately $1 million, a figure that, under the Plan formula, reflected his significant tenure and the level of compensation that he had earned as a partner.") (footnote omitted). Neither in his Complaint, nor in his Opposition to Defendants' Motion, does Brainard challenge that this lump sum payment was less than the full amount, which he was entitled to receive under such form of payment and, therefore, that payment of $1,019,817.66 gave Brainard all of the benefits to which he was entitled under the terms of the Plan.

To the contrary, the focal point of Brainard's dispute is centered upon whether the Firm has the right to withhold monies from his distribution of profits, his memo account, and his of counsel compensation. The answer to this can be ascertained only by analyzing the partnership and of counsel arrangements between Brainard and the Firm. Accordingly, Brainard's ERISA claims relate not at all to Plan benefits, but rather to Plan funding, and must be dismissed.

---

[1]    Brainard conceded this in his Complaint by acknowledging that this Court has only supplemental jurisdiction over his Count II.

Because Brainard has conceded to having been paid his entire Plan benefit, there remains only one question:  to what extent is Brainard responsible for funding the Plan.  The answer to this question lies, not with the terms of the Plan, but with the terms of the partnership and of counsel arrangement between Brainard and the Firm, which question should be referred to arbitration for adjudication.

**A.    Motion to Dismiss**

**1.    Count I:  Brainard's ERISA Claims**

**a.    Section 502(a)(1)(B)**

ERISA Section 502(a)(1)(B) provides that a participant may bring a civil action:

> to recover benefits due to him under the terms of his plan,
> to enforce his rights under the terms of the plan, or to
> clarify his rights to future benefits under the terms of the
> plan. . . .

29 U.S.C. §1132(a)(1)(B).  Simply put, plan benefits, or a declaration of entitlement to plan benefits, are the only remedies available under 502(a)(1)(B).  *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 10 (2d Cir. 1992).

Brainard's so-called claim for benefits under Section 502(a)(1)(B) is fatally flawed.  Because he has conceded that he has received his Plan benefit under the Plan, Brainard has been paid all of the benefits to which he is entitled under the terms of the Plan and there is no additional remedy available to him pursuant to Section 502(a)(1)(B).

Brainard has admitted that:

> On June 30, 2005, *the Plan paid Brainard his accrued
> benefit in the form of a single lump sum distribution of
> $1,019,817.66*.  This distribution was nonforfeitable within

the meaning of Section 3(19) of ERISA, 29 U.S.C.
§1002(19).

Complaint ¶20 (emphasis added).

In light of this admission and despite his claims otherwise, Count I plainly cannot be construed as seeking the recovery of any benefits due him under the terms of the Plan. A close reading of the allegations of the Complaint and the Opposition reveal that Brainard's dispute relates to the question of funding, not Plan benefits, which is the only remedy available to him under Section 502(a)(1)(B).

For example, Brainard alleges that "the Firm unilaterally withheld plaintiff's *compensation as an 'of counsel'* between April 1, 2006 to September 30, 2006, an amount equal to $105,625." Complaint ¶24 (emphasis added). Brainard alleges further that the Firm intended to:

> withhold unilaterally an additional *$191,739 from plaintiff's memorandum account* commencing October 1, 2006. (*The memorandum account represents plaintiff's share of Firm profits* that are scheduled to be distributed to him in two equal payments each month between October 1, 2003 and September 30, 2008.) To that end, the Firm has been since October 1, 2006 and is now deducting $3,994.56 twice a month *from his distributions*. . . .

Complaint ¶24 (emphasis added). *See also* Opposition at 1-2 (Brainard admits that deductions were taken from his distributions and "of counsel" compensation); *id.* at 3 (Brainard seeks to enjoin the deduction of "any more monies from [his] distributions under the Withdrawal Agreement").

Thus, Brainard's own allegations make clear that he seeks the recovery of amounts withheld by the Firm from his compensation, from his memorandum account, and from his distribution of Firm profits, *not the recovery of benefits under the Plan*. Accordingly, Brainard has failed to state a legally cognizable claim under ERISA

-4-

Section 502(a)(1)(B). *See, e.g., Zimmerman v. Sloss Equip., Inc.,* 72 F.3d 822, 828 (10th Cir. 1995) ("nothing in section 502(a)(1)(B) supports damages beyond that section's language authorizing recovery of benefits due under the terms of the plan") (internal quotations and ellipses omitted).

The Court should, therefore, dismiss Brainard's claim for benefits brought pursuant to Section 502(a)(1)(B) in Count I of the Complaint.

### b.     Standing Under ERISA

That Brainard received his Plan benefit, which constitutes everything to which he is entitled under the Plan, strips him of standing under ERISA. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) ("A former employee who has neither a reasonable expectation of returning to covered employment nor a colorable claim to vested benefits, however, simply does not fit within the [phrase] 'may become eligible.'" quoting *Saladino v. I.L.G.W.U. National Retirement Fund,* 754 F.2d 473, 476 (2d Cir. 1985)). *See also In re J.P. Morgan Chase Cash Balance Litigation*, 242 F.R.D. 265, 271 (S.D.N.Y. 2007) ("former employees that have received their lump sum payment do not have standing to sue under ERISA"). *Accord Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986), *abrogated in part on other grounds, Kayes v. Pacific Lumber Co.*, 51 F.3d 1449 (9th Cir. 1995); *Mitchell v. Mobil Oil Corp.,* 896 F.2d 463, 474 (10th Cir. 1990); *Raymond v. Mobil Oil Corp.*, 983 F.2d 1528, 1535-36 (10th Cir. 1993); *Teagardener v. Republic-Franklin Inc. Pension Plan*, 909 F.2d 947, 952 (6th Cir. 1990).

Brainard attempts to distinguish *In re J.P. Morgan Chase Cash Balance Litigation* by stating that "former employees may still be eligible to receive benefits and therefore have standing where, as here, the 'calculation of benefits under the terms of the plan [i]s challenged, not the plan itself." Opposition at 12. Brainard's Complaint,

however, presents no such challenge. Rather, Brainard (1) admits that the Plan paid him his entire Plan benefit, Complaint ¶20; (2) makes no claim that the lump sum calculation was erroneous in any way; and (3) seeks only to recover withholdings made from his compensation, memorandum account, and distribution of profits, Complaint ¶24. Because Brainard received everything to which he was entitled from the Plan, he lacks standing to pursue any claim under ERISA, and Count I should be dismissed for failure to state a claim upon which relief may be granted.

### c.    Section 502(a)(3)

The Court also should dismiss Brainard's claim under Section 502(a)(3), 29 U.S.C. §1132(a)(3), because the relief he seeks – the repayment of $142,635.16 – takes the form of money damages, which is a legal remedy that the United States Supreme Court has deemed to be unavailable under this provision of ERISA. *See Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209-10 (2002); *Mertens v. Hewitt Associates*, 508 U.S. 248, 251, 255 (1993).

Moreover, because Brainard has already been paid his entire Plan benefit, any injunctive relief that Brainard seeks cannot relate to his ERISA benefits under the Plan. Accordingly, there is no forward-looking injunctive relief for the Court to impose *upon the Plan*. Consequently, the Court should dismiss Brainard's claim under Section 502(a)(3) in Count I on this basis as well.

### d.    Brainard's Use of Extrinsic Documents

Brainard attaches several documents to his Opposition in a further attempt to merge the question of Brainard's funding obligation under the Plan with the question of what Plan benefits are due him. In point of fact, Brainard's selective use of these documents, which are extrinsic to his Complaint, illustrates that what lies at the heart of

-6-

this dispute is the extent to which he shares in the Firm's responsibility for funding the Plan in its settlor capacity. *See* Background Sections C ("The Funding of the Plan") and D ("The Disputed Interpretation of the Plan") in Opposition at 5-9 and Exhibits D, F and G attached thereto.

In describing the funding of the Plan, Brainard refers, as he must, to documents other than the actual Plan document, as it is clear from the terms of the Plan that Brainard, as a Plan participant, was precluded from making any contribution to the Plan. *See* Plan Section 7.04 (precluding all participants from making contributions to the Plan). DBP208; *see also* Exhibit D (a compilation of documents Brainard labels the "September 1990 Agreement") and Exhibit F (a memo dated July 11, 2005 from the Kenyon & Kenyon Pension Committee to the partners of the Firm).

Brainard then purports to describe two e-mails from the "Joint Committees of the D[efined] B[enefit] P[lan]." Opposition at 8 (brackets in original). Although this term appears within quotation marks in Brainard's Opposition, the quoted term exists nowhere in the e-mails attached as Exhibit G. Rather, the "joint Committees" referenced in Exhibit G are the four standing committees of the Firm – the Management, Percentage, Executive, and Pension Committees – that responded jointly to Brainard's dispute over what he owed in funding for the Plan. *See* Exhibit G, B49.

Because none of these documents pertain to the question of what benefits are due Brainard under the Plan, the Court should not consider them in determining

Defendants' motion to dismiss Count I[2] and Brainard's ERISA claims should be dismissed in their entirety.

### 2.    Count II:  Brainard's State Law Claims

#### a.    Supplemental Jurisdiction

Because all that remains after dismissal of Brainard's ERISA claims are state law claims, this Court should decline to exercise supplemental jurisdiction and Count II should be dismissed along with Count I.  *See Pitchell v. Callan*, 13 F.3d 545, 549 (2d Cir. 1994) (citing *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)); *see also United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well").

### B.    Motion to Stay Count I and Refer Count II to Arbitration

Even if the Court were to entertain jurisdiction over Count II, notwithstanding Brainard's arguments to the contrary, these state law claims should be referred to binding arbitration pursuant to the arbitration clause of the Firm Agreement. *See* Defendants' Memorandum of Law at 12-16.  In an effort to avoid the application of the arbitration clause, however, Brainard asserts that his state law claims are based only on his Withdrawal Agreement, the two of counsel agreements, and the "September 1990 Agreement."  Opposition at 16.

---

[2]    The extrinsic documents Brainard cites all relate only to his funding obligation for the Plan, which (as explained infra p. 9-10) is an issue that should be arbitrated.  In the event that the Court is inclined to consider these extrinsic documents, Defendants respectfully request that the Court treat the motion to dismiss as a motion for summary judgment after the parties have had the opportunity to present all material pertinent to this issue. *See* Fed. R. Civ. P. 12(d).

-8-

Quoting paragraph 1(a), Brainard argues that the Withdrawal Agreement contained a release that abrogates the arbitration clause of the Firm Agreement. *Id.* Brainard fails, however, to quote the release language itself, which provides:

> Subject to the terms and conditions set forth in this Agreement, and in consideration of entering into this Agreement, THE FIRM releases BRAINARD and his estate and BRAINARD and his estate release THE FIRM and any of its predecessor firms from all obligations owed by one to the other of any kind or nature ***except for those relating to b[r]eaches of the Continuing Firm Agreement or any prior firm Agreements***, breach of this Agreement and any claims of malpractice against any firm of which BRAINARD was a member.

Withdrawal Agreement, ¶3, Exhibit A to Opposition (emphasis added).

The language of the release in the Withdrawal Agreement expressly excludes from the release claims relating to the Firm Agreement and, therefore, the arbitration provision survives as well. As is clear from the allegations of the Complaint and the relief he requests, Brainard seeks the recovery of monies withheld by the Firm from his memo accounts, distributions of Firm profits, and of counsel compensation. As such, this dispute arises out of the Firm Agreement and should be referred to arbitration.

II.    **CONCLUSION**

For the foregoing reasons, Brainard's ERISA claims are legally deficient. This Court should dismiss Count I for failing to state a claim upon which relief may be granted and then decline to exercise supplemental jurisdiction of the related state law claims, allowing those matters instead to proceed to arbitration.  In the alternative, this Court should stay all proceedings in this case while the parties proceed with mandatory arbitration as required under the terms of the Firm Partnership Agreement.

Respectfully submitted,

Dated:  February 15, 2008

  /s/ Kay Kyungsun Yu
Kay Kyungsun Yu (KY 7807)
PEPPER HAMILTON LLP
The New York Times Building
37th Floor
620 Eighth Avenue
New York, NY 10018-1405
Tel.:  215.981.4188
Fax:  215.689.4515
E-mail:  yukay@pepperlaw.com

*Counsel for Defendants, Kenyon & Kenyon LLP; the Kenyon & Kenyon Pension Plan; George Badenoch; Michael Loughnane; and Robert Tobin*